VINCENT A. HARRINGTON, JR., Bar No. 071119
DAVID A. ROSENFELD, Bar No. 058163
ERIC M. BORGERSON, Bar No.
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Telephone 510.337.1001
Fax 510.337.1023

Attorneys for Plaintiff
Service Employees International Union, Local 790

**RECEIVED**
MAY 25 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH P. NORELLI, Individually, and in his capacity as Regional Director, NATIONAL LABOR RELATIONS BOARD, REGION 20; ROBERT J. BATTISTA, Individually and in his Capacity as Chairman and Member of the NATIONAL LABOR RELATIONS BOARD; PETER N. KIRSANOW, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD; DENNIS P. WALSH, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD; WILMA B. LIEBMAN, Individually, and in her Capacity as a Member of the NATIONAL LABOR RELATIONS BOARD; PETER CARY CHAUMBER, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD,<br><br>Defendants. | No. C07-02766 JL<br><br>**PROPOSED ORDER AND PRELIMINARY INJUNCTION** |

This matter came before the Court by a noticed motion filed by the Service Employees International Union, Local 790 ("Local 790"). This Court issued an Order to Show Cause Why Preliminary Injunction Should Not Issue on _____. After reviewing the Plaintiff's

---
PROPOSED ORDER AND PRELIMINARY INJUNCTION

Verified Complaint for Declaratory and Injunctive Relief; the Notice of Motion and Motion for Preliminary Injunction; the supporting Memorandum of Points and Authorities; the Declaration of David Rosenfeld; the Declaration of Jamie Thompson; and responsive papers filed by the National Labor Relations Board ("NLRB") and reply papers filed by Plaintiff Local 790; and after hearing oral arguments by attorneys for Plaintiff and the Defendants, the Court makes the following FINDINGS:

1. This case involves a challenge by Local 790 to a Decision and Order of the NLRB, ordering a secret-ballot election based on a petition to de-authorize a Union security clause ("de-authorization petition") contained within a Collective Bargaining Agreement ("CBA") between Local 790 and Covenant Aviation Security, LLC ("Covenant"), covering a bargaining unit composed of airport security personnel employed by Covenant and working at the San Francisco International Airport.

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1337(a), because Plaintiff has filed a Complaint in equity, challenging an action of the NLRB under the National Labor Relations Act, 29 U.S.C. § 141, *et seq.* ("NLRA"), an Act of Congress affecting commerce among and between the several states, on grounds that the NLRB exceeded its statutory jurisdiction by violating a clear statutory prohibition set forth at NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1). (See *National Association of Agriculture Employees v. Federal Labor Relations Authority*, 473 F.3d 983, 988, fn 5 (9th Cir. 2007); *Bays v. Miller*, 524 F.2d 631 (9th Cir. 1975); *Leedom v. Kyne*, 358 U.S. 184 (1958).)

3. Venue is properly in this Court because the de-authorization petition at issue herein, bearing Case No. 20-UD-445, was filed with the NLRB, Region 20 office in San Francisco; the contract containing the Union Security Clause which is the subject matter of the pending de-authorization petition was entered into, and intended to be performed, at the San Francisco International Airport, within this judicial district; Local 790 has its primary office in the City and County of San Francisco; and the workforce covered by the Collective Bargaining Agreement containing the Union Security Clause which is the subject matter of the de-authorization petition is employed at the San Francisco International Airport, within this judicial district.

4. Plaintiff provided the attorney representing the Defendants in the above-captioned action with actual and sufficient notice of its Motion for Preliminary Injunction, properly served the Order to Show Cause on Defendants, and provided actual and sufficient notice of Defendants' opportunity to be heard regarding such Motion.

5. Counsel for Plaintiff and Defendants appeared before the Court on _____ and were afforded a full and fair opportunity to present oral argument regarding whether a Preliminary Injunction should issue.

6. The NLRB and the individually named Board Members issued a Decision and Order, dated March 30, 2007, published as *Covenant Aviation Security, LCC and Stephen J. Burke, Petitioner and SEIU Local 790*, 349 NLRB No. 67, ordering a secret-ballot election based on a petition to de-authorize a union security clause contained in a CBA between Local 790 and Covenant that went into effect on January 13, 2006, when Covenant, the last party to sign the agreement, executed it.

7. It is undisputed that:

   a. The de-authorization petition was filed on January 11, 2006, two days before the CBA between Local 790 and Covenant was executed;

   b. Nearly 70 percent of the signatures submitted in support of the petition were dated in October 2005, and were, therefore, collected over a month before contract negotiations had begun and two or more months before terms of the tentative agreement were disclosed to affected employees for a ratification vote;

   c. Approximately 92 percent of the signatures submitted in support of the petition pre-dated ratification of the agreement by affected employees, and every signature pre-dated execution of the CBA on January 13, 2006;

   d. The tally of the contract ratification vote conducted by Local 790 between December 28 and December 31, 2005, established that 378 employees voted in favor of the agreement, including the Union security clause at issue herein, and 229 voted against it.

8. Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1), states,

> Upon the filing with the Board, by 30 per centum or more of the *employees in a bargaining unit covered by an agreement between their employer and a*

- 3 -
PROPOSED ORDER AND PRELIMINARY INJUNCTION

> *labor organization made pursuant to Section 8(a)(3)*, of a petition alleging the desire that such authority be *rescinded*, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(emphasis added.)

9. In accordance with the plain meaning of § 9(e)(1), decisions of the courts and the NLRB that have construed its language, and the legislative history of the provision, the Court finds that the de-authorization petition procedure authorized and defined by § 9(e)(1) can only be invoked by employees covered by a CBA containing a union security agreement. The statute presumes that such an agreement is in effect at the time signatures are gathered in support of the petition and at the time the petition is filed. The procedure cannot be used "prospectively" by employees who are not covered by a CBA to prevent their bargaining agent from negotiating a union security clause within a CBA negotiated between the employees' bargaining agent and their employer.

10. Thus, in order for a de-authorization petition to be valid under NLRA § 9(e)(1), signatures submitted in support of the petition must be gathered at a time when the union security agreement the petitioner seeks to rescind is in effect.

11. It is undisputed that there was no union security agreement and, in fact, no CBA in effect covering the bargaining unit represented by Local 790 at the time the signatures in support of the de-authorization petition at issue herein were gathered.

12. Therefore, by ordering an election based on the de-authorization petition at issue herein, the Board violated a clear statutory command set forth in NLRA § 9(e)(1), 29 U.S.C. §159(e)(1), prohibiting such an election except upon a petition signed by at least 30 percent of the members of a bargaining unit at a time when they are covered by a CBA containing the union security clause they are petitioning to rescind.

13. Plaintiff therefore has a substantial likelihood of prevailing on the merits of its claim that the NLRB order mandating an election on the de-authorization petition in this case was issued in excess of the Board's jurisdiction because it violated a clear statutory prohibition contained in NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1).

14. In or about May 2007, Defendant NLRB Region 20 Regional Director Joseph P. Norelli

issued a notice that the election ordered by the NLRB on the de-authorization petition at issue herein will commence June 4, 2007, at which time ballots will be mailed to members of the bargaining unit so that they may vote on whether to de-authorize the union security provision contained in the CBA between Local 790 and Covenant.

15. The election was subsequently suspended briefly due to the fact that Covenant representatives were unable to produce an "Excelsior" list of bargaining unit members to the NLRB because TSA opposed production of that list by Covenant on national security grounds.

16. Resolution of the Excelsior list issue is expected to take place quickly and the election is expected promptly to proceed forthwith upon such resolution.

17. Plaintiff and Defendants' counsel agreed to bring this matter before the Court on an Order to Show Cause Why Preliminary Injunction Should Not Issue.

18. Plaintiff will suffer immediate and irreparable harm if the Court does not issue a Preliminary Injunction enjoining Defendants from proceeding with the scheduled de-authorization election. Specifically, the following irreparable harm will result:

   a. Local 1877[1] will be forced to divert substantial resources and personnel to immediately conduct a campaign against de-authorization in time for the invalid election. Up to ten Local 1877 staff employees will be forced to work full-time for likely upwards of two weeks in order to conduct a campaign relative to the imminent election.

   b. The diversion of resources that would be necessitated by the unlawful election in this case would have a profound impact on the operations of Local 1877 and employees it represents at the airport. Negotiations are underway between Local 1877 and other employers at the airport regarding two Collective Bargaining Agreements, one of which is expired. The staff that would be required to conduct a campaign against de-authorization are already fully engaged in collective bargaining with these other employers. The diversion of those employees to the election campaign would have a

---

[1] SEIU Local 790 is the local union that represents the employees affected by this case and which litigated the issues herein before the NLRB. However, Local 1877 is the entity that is servicing the employees at the airport who would be affected by the election in this case.

substantial, irremediable negative impact on hundreds of employees whose terms and conditions of employment are being forged through the pending negotiations.

c. There would be no means by which to recover the tremendous expense, nor to secure compensation for the severe administrative burdens resulting from having to assign a large number of Local 1877 staff to an election campaign. Nor would there be any means by which to recover the losses in representation of Local 1877 members that would result from the diversion of the Union's staff to grapple with the unlawful election at issue herein.

d. Serious disruption will result if this election is allowed to proceed, resulting, *inter alia*, from the unavoidable occurrence of campaigning at employee work places at the airport. There is a small but resolute group pursuing the de-authorization initiative, and they will undoubtedly campaign at various areas within the airport. Local 1877 staff will be forced to campaign in the airport against de-authorization. It will unavoidably be the case that such campaigning will be disruptive of the workforce and that employees will carry on arguments regarding the election not only in non-work areas, but at their workstations.

e. Such disruption will be particularly problematic for this workforce because airport security officers are not allowed to talk about anything at their work posts other than their job duties while using security equipment at security checkpoints. If the contentious issues surrounding an unlawful election arise, it will naturally cause employees to discuss those issues at their work stations, which is not permitted, and which could result in widespread disruption and disciplinary action against such employees. It would be unjust and irremediable if employees were placed in such jeopardy and incurred such injuries based on the ordering of an election which was beyond the jurisdiction of the NLRB and prohibited by the NLRA.

f. The pendency of this potential, unlawful election has caused workers to be uncertain regarding their union-security obligations under the collective bargaining agreement that now governs their employment. Unless this court promptly resolves this issue,

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

- 6 -
PROPOSED ORDER AND PRELIMINARY INJUNCTION

1. these questions will continue to arise. Employees will thus increasingly have questions regarding whether they are required to comply with the union security obligations set forth in the CBA between Local 790 and Covenant. Under the terms of that agreement and the NLRA, if the employees do not comply, they are subject to being discharged.

    g. This is precisely the kind of confusion and jeopardy that Congress intended to avoid by eliminating the union security authorization petition and election procedure, thereby creating a presumptive right to negotiate a union security clause into a CBA, subject to the de-authorization procedure available to employees who are subject to such a procedure and who wish to rescind it.

19. The equities favor granting of the Preliminary Injunction herein because substantial immediate and irreparable harm will be avoided and no harm will be caused by issuance of such an order because if 30 percent or more of the employees who are now covered by a CBA containing a Union security clause wish to rescind it, they have the authority under NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1), to petition for an election to rescind the clause.

WHEREFORE, the Court ORDERS the following:

Let a PRELIMINARY INJUNCTION issue, effective _____ restraining and enjoining Defendants and their officers, agents, servants, employees and attorneys and those in active concert or participation with them pending trial of this action from: taking any action to conduct a de-authorization election among security employees in the bargaining unit represented by PLAINTIFF SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790 and employed by Covenant Aviation Security LLC, pursuant to the Decision and Order of the

///
///
///
///
///
///
///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation

- 7 -
PROPOSED ORDER AND PRELIMINARY INJUNCTION

1  NLRB dated March 20, 2007, in NLRB Case No. 20-UD-445, reported as *Covenant Aviation Security, LCC and Stephen J. Burke, Petitioner and SEIU Local 790*, 349 NLRB No. 67.

This PRELIMINARY INJUNCTION will remain in effect until _____ _____.

It is SO ORDERED, this ____ day of _____, 2007.

By: _____
Judge, U.S. District Court,
Northern District of California

_____

116046/458514