1   VINCENT A. HARRINGTON, JR., Bar No. 071119
    DAVID A. ROSENFELD, Bar No. 058163
2   ERIC M. BORGERSON, Bar No.
    WEINBERG, ROGER & ROSENFELD
3   A Professional Corporation
    1001 Marina Village Parkway, Suite 200
4   Alameda, California 94501-1091
    Telephone 510.337.1001
5   Fax 510.337.1023

6   Attorneys for Plaintiff
    Service Employees International Union, Local 790

7

ORIGINAL
FILED
MAY 2 5 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  SERVICE EMPLOYEES INTERNATIONAL      ) No. 007-02766   JL
    UNION, LOCAL 790                     )
12                                       )
             Plaintiff,                  )
13                                       )
         v.                              )
14                                       )
    JOSEPH P. NORELLI, Individually, and in his )  **MEMORANDUM OF POINTS AND**
15  capacity as Regional Director, NATIONAL )  **AUTHORITIES IN SUPPORT OF**
    LABOR RELATIONS BOARD, REGION 20; )  **MOTION FOR PRELIMINARY**
16  ROBERT J. BATTISTA, Individually and in )  **INJUNCTION**
    his Capacity as Chairman and Member of the )
17  NATIONAL LABOR RELATIONS BOARD; )  Date:
    PETER N. KIRSANOW, Individually, and in )
18  his Capacity as a Member, NATIONAL )  Time:
    LABOR RELATIONS BOARD; DENNIS P. )
19  WALSH, Individually, and in his Capacity as a )  Judge:
    Member, NATIONAL LABOR RELATIONS )
20  BOARD; WILMA B. LIEBMAN, Individually, )  Courtroom:
    and in her Capacity as a Member of the )
21  NATIONAL LABOR RELATIONS BOARD; )
    PETER CARY CHAUMBER, Individually, and )
22  in his Capacity as a Member, NATIONAL )
    LABOR RELATIONS BOARD, )
23                                       )
                                         )
24           Defendants.                 )
                                         )
25

26

27

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

**TABLE OF CONTENTS**

2

I.   INTRODUCTION AND SUMMARY ....................................................................1

II.  FACTS .........................................................................................................2

III. ARGUMENT ................................................................................................6

     A.   Exercise of the Court's General Jurisdiction in Equity is Proper
          Where the NLRB Has Exceeded its Jurisdiction by Violating a
          Clear Statutory Command to the Harm of the Plaintiff and There
          Is No Other Means Available to Obtain Judicial Review............................7

     B.   The NLRB Violated a Clear Statutory Mandate by Ordering a De-
          Authorization Election Based on a Petition That was Signed and
          Filed When No Collective Agreement Containing a Union
          Security Clause Was in Effect. ...............................................................9

     C.   Plaintiff Has No Means by Which to Seek Redress for the
          NLRB's Violation of a Clear Statutory Mandate Other Than by
          Way of an Original Suit in Equity. .........................................................16

     D.   Plaintiff Will Suffer Imminent and Irreparable Harm if the Court
          Does Not Enjoin the De-Authorization Election Unlawfully
          Ordered By the NLRB. .........................................................................18

IV.  CONCLUSION ............................................................................................20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
10 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
(510) 337-1001

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bays v. Miller,*
  524 F.2d 631 (9th Cir. 1975) ............................................................................. 1

*Boire v. Greyhound Corp.,*
  376 U.S. 473 (1964) ......................................................................................... 8

*Boire v. Miami Herald Publishing Co.,*
  343 F.2d 17 (5th Cir. 1965) cert. denied, 382 U.S. 824 .................................. 8

*Leedom v. Kyne,*
  358 U.S. 184 (1958) ................................................................................. passim

*Metal & Steel Chauffeurs, Warehousemen, Handlers, Helpers, Alloy Fabricators,*
  *Theatrical, Exposition, Convention and Trade Show Employees, Local Union No.*
  *714, International Brotherhood of Teamsters v. Madden,*
  343 F.2d 497 (7th Cir. 1965) ............................................................. 9, 10, 11

*National Association of Agriculture Employees v. Federal Labor Relations Authority,*
  473 F.3d 983 (9th Cir. 2007) .......................................................................... 1, 8

*Teamsters, Chauffeurs, Helpers and Delivery Drivers, Local 690 v. NLRB,*
  375 F.2d 966 (9th Cir. 1967) ........................................................................... 8

## FEDERAL STATUTES

28 U.S.C. § 1337 ...................................................................................... 7, 8

29 U.S.C. § 152 ............................................................................................ 3

29 U.S.C. § 159 ................................................................................... passim

29 U.S.C. § 160 ................................................................................ 7, 8, 16

## NLRB CASES

*Decision and Order of the NLRB,*
  349 NLRB No. 67 (dated March 30, 2007) .................................................... 2

*Great Atlantic & Pacific Tea Company,*
  100 NLRB 1494 (1952) ..................................................... 11, 13, 15, 16

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
[illegible address lines]

1    **LEGISLATIVE HISTORY**

2    Section 9(e)(1), Labor Management Relations Act, 1947,
     Chapter 120, Public Law 101, *United States Code Congressional and Administrative Service*,
3    8th Congress, First Session, 1947 .................................................................................. 13

4    *United States Code Congressional and Administrative Service*,
     82nd Congress, First Session, 1951,
5    House Report No. 1082 at pp. 2379-2381 ...................................................................... 5, 14

6    *United States Code Congressional and Administrative Service*,
     80th Congress, First Session, 1947,
7    Congressional Comments at pp. 1156-1157 ........................................................................ 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation

MEMORANDUM OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## I.   **INTRODUCTION AND SUMMARY**

Plaintiff Service Employees International Union, Local 790 (hereinafter "Local 790" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Preliminary Injunction, filed concurrently herewith.

Plaintiff's invocation of this Court's original jurisdiction in equity is proper because, as argued herein, the National Labor Relations Board (hereinafter "NLRB" or "Board") and each of the named Defendants (collectively referred to hereinafter as "Defendants") have violated a clear statutory prohibition and Plaintiff has no other means by which to obtain relief for resulting harm it has suffered and continues to suffer.  (See *National Association of Agriculture Employees v. Federal Labor Relations Authority*, 473 F.3d 983, 988, fn 5 (9th Cir. 2007) (hereinafter "*National Association of Agricultural Employees*"); *Bays v. Miller*, 524 F.2d 631 (9th Cir. 1975) (hereinafter "*Bays*"); *Leedom v. Kyne*, 358 U.S. 184 (1958) (hereinafter "*Leedom*".)

Specifically, Defendants have improperly ordered a secret-ballot election regarding whether to "de-authorize" a union security clause contained within a collective bargaining agreement between Local 790 and Covenant Aviation Security, LLC (hereinafter "Employer" or "Covenant"), based on a de-authorization petition that was prematurely filed, and the showing of support for which was improperly and prematurely gathered, before any collective bargaining agreement containing a union security clause was in effect.

The Board's Decision and Order setting forth Defendants' rationale for requiring the disputed election violates a clear Congressional prohibition, codified in National Labor Relations Act (hereinafter "NLRA") § 9(e)(1), 29 U.S.C. § 159(e)(1), which disallows such an election except upon the production of a petition signed by at least 30 percent of a bargaining unit at a time when the members of the unit are covered by a collective bargaining agreement containing a union security clause.

The Board improperly ordered an election based on a petition that was signed by employees who were neither covered by a collective bargaining agreement nor a union security clause.  As discussed herein, the plain language of § 9(e)(1), cases that have construed its language and effect, and the legislative history of that provision make clear that Congress did not approve prospective

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda CA 94501-1091
510 337-1001

1

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   use of the de-authorization process to preclude a Union from negotiating a union security clause.

2   To the contrary, the plain language of the statute and its legislative history demonstrate that only

3   when a union security agreement is *in effect* does § 9(e)(1) confer authority upon bargaining unit

4   members to initiate a proceeding to "rescind" the agreement and upon the Board to order an

5   election based on such a petition.

6          Sound labor policy considerations, involving both administrative economy and preservation

7   of meaningful employee choice regarding union membership and support, underlie this clear

8   statutory command, as discussed *infra*.  It is respectfully submitted that this Court should adopt the

9   rationale articulated by both NLRB Regional Director Joseph P. Norelli (hereinafter "Norelli"),

10  whose decision the NLRB majority overturned, and the well-reasoned dissent authored by NLRB

11  Member Dennis P.Walsh (hereinafter "Walsh").

12         The NLRA provides no procedure by which to seek judicial review of Board

13  determinations on de-authorization issues arising under NLRA § 9(e)(1).  Nor, as discussed below,

14  is there any indirect means by which to secure judicial review, as exists for Board orders regarding

15  bargaining unit determinations.  Moreover, Plaintiff herein does not seek review of the Board's

16  exercise of discretion granted to it by statute.  Rather, Plaintiff asks this court to strike down an

17  action of the Board undertaken in excess of its jurisdiction and in violation of a clear statutory

18  prohibition.  Thus, under settled law, as discussed herein, even were there a mechanism by which

19  to obtain judicial review of the Board's exercise of its discretion over a de-authorization petition,

20  invocation of this court's jurisdiction to review the Board's extra-jurisdictional action would be

21  proper.  Granting such review is even more strongly proper and necessary where, as here, no such

22  ordinary means by which to seek review of the Board's action is available.

23                              **II.   FACTS**

24         The material facts at issue herein are undisputed.[1]  Local 790 is a labor organization within

25

26  _____

27  [1]    All facts recited herein are taken from the factual allegations in Plaintiff's verified Complaint,
        which, in turn, are taken from the Decision of NLRB Regional Director Joseph P. Norelli
        (authenticated and attached to the Complaint as Exhibit 1) or from the Decision and Order of
28      the NLRB, dated March 30, 2007, reported at 349 NLRB No. 67 (authenticated and attached to
        the Complaint as Exhibit 2).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

2

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

the meaning of the NLRA, 29 U.S.C. § 152(5). Covenant is a corporation which, under contract with the federal Transportation Security Administration ("TSA"), employs security personnel who work, as relevant here, at the San Francisco International Airport.

On September 30, 2005, a panel of neutrals jointly selected by Local 790 and Covenant conducted a check of written employee authorizations and determined that a majority of Covenant employees at the San Francisco International Airport in an appropriate bargaining unit had selected Local 790 as their collective bargaining representative.

Based on that "card check", Covenant recognized Local 790 as its employees' collective bargaining agent on October 3, 2005, and began negotiations with Local 790 on or about November 18, 2005. Those negotiations resulted in a tentative collective bargaining agreement, the terms of which Local 790 was first able to share with bargaining unit members on December 28, 2005. Thereafter, Local 790 conducted a ratification vote among bargaining unit employees between December 28 and December 31, 2005.

The bargaining unit members ratified the agreement by a vote of 378 to 229. Local 790 did not sign the contract until January 12, 2006, and Covenant did not sign the agreement until January 13, 2006.

On January 11, 2006, prior to either party signing the tentative agreement, Stephen J. Burke (hereinafter "Burke"), an employee of Covenant, filed a petition with NLRB Region 20, seeking a "de-authorization" vote among Covenant bargaining unit members, pursuant to NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1).

NLRB Regional Director Norelli conducted an investigation of the de-authorization petition and ultimately dismissed it on March 23, 2006, based on several grounds, summarized as follows:

a.  The petition was filed on January 11, 2006, two days before the Collective Bargaining Agreement between Local 790 and Covenant was executed;

b.  Nearly 70 percent of the signatures submitted in support of the petition were dated in October 2005, and were, therefore, collected over a month before contract negotiations had begun and two or more months before terms of the tentative agreement were disclosed to affected employees for a ratification vote;

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510-337-1001

3

c.  Approximately 92 percent of the signatures submitted in support of the petition pre-dated the ratification vote, and every signature pre-dated execution of the Collective Bargaining Agreement on January 13, 2006;

d.  The tally of the contract ratification vote conducted by Local 790 between December 28 and December 31, 2005, established that 378 employees voted in favor of the agreement, including the Union security clause at issue herein, and 229 voted against it.

Based on the language of NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1), the legislative history of that provision, and the language of the relevant NLRB petition form, Norelli concluded that the statute "contemplates that a condition precedent to this type of petition is the existence of a Union Security Clause to which employees are subject." (Complaint ¶¶ 22-23 and Ex. 1 at p. 2.)

As the de-authorization petition was filed on January 11, 2006 and the collective bargaining agreement between Covenant and Local 790, including the Union security clause, did not become effective until January 13, 2006, Norelli concluded that the petition was prematurely filed because there was no security clause in effect at that time.

Further, Norelli concluded that the petition was defective for the additional and more fundamental reason that NLRA § 9(e)(1) requires that such a petition be supported by at least 30 percent of employees covered by an agreement containing the Union security clause, such that the showing of support "must occur in the context of an existing, rather than a prospective and potential, Union Security Clause." (Complaint Ex. 1, p. 3.)

Norelli summarized his analysis as follows:

> Thus, like the Petition, the showing of interest was premature, collected before the Union Security Clause had taken effect and before employees knew what benefits the Collective Bargaining Agreement would provide. This showing of interest does not comport with the plain language of the Act, with the history that led to the Amendment that led to the de-authorization procedure now codified in Section 9(e)(1), or the duty responsibly to budget the agency's resources. Accordingly, the deficiency of the showing of interest also compels dismissal of the instant Petition.

(Complaint Ex. 1, p. 4.)

Burke requested NLRB review of Norelli's decision on April 6, 2006. On March 30, 2007, two Members of the three-Member NLRB panel, Robert J. Battista and Peter N. Kirsanow, issued a Decision and Order reversing dismissal of the petition, reinstating the de-authorization petition,

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

4

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  and remanding the matter to Norelli for further action.  The Board accepted every material fact

2  found by Norelli concerning the timing of the gathering of signatures in support of the petition, the

3  date of filing of the petition, and the effective date of the agreement between Local 790 and

4  Covenant, including its Union security clause.  The majority characterized the issue presented as

5  being one of "first impression: Whether the showing of interest supporting a de-authorization

6  petition may predate the execution of a contract containing a union-security provision."  The

7  majority concluded that the showing of interest could lawfully precede the effective date of the

8  agreement containing the union security clause.

9      Member Walsh dissented from the majority's holding and analysis, reasoning, *inter alia*, as

10  follows:

11      The plain meaning of Section 9(e)(1) is that the showing of interest for a
        deauthorization petition must be gathered at a time when the employees are
12      actually subject to a union-security provision.  The statute explicitly says
        that a deauthorization petition must be supported by 30 percent or more of
13      the employees "*in a bargaining unit covered by an agreement between their
        employer and a labor organization made pursuant to Section 8(a)(3).*"

14

15  (Complaint Ex. 1, p. 6, emphasis in original.)  Walsh further observed that employees are ill-

16  equipped to decide whether to financially support their union when they have yet to witness what

17  the union is capable of achieving on their behalf.  (*Ibid.*)

18      Walsh also reviewed the legislative history of § 9(e)(1) (discussed *infra*), and observed that

19  in 1951, Congress eliminated a requirement that Union security clauses, to be effective, must be

20  authorized by a majority vote of the bargaining unit.  Walsh observed,

21      In eliminating authorization elections and devising the current statutory
        scheme, Congress explicitly aimed to avoid the unnecessary and inefficient
22      expenses involved in the authorization process, while simultaneously
        protecting the right of employees to choose to free themselves of an
23      unwanted union-security clause.

24  (*Id.* at p. 7, citing H.R. Rep. No. 1082, 82d Cong., 1st Sess., at 2-3 (1951).)

25      Walsh reasoned that "[u]sing Board resources to conduct an election when the majority of

26  the signatures supporting the petition were collected before the parties even began negotiating a

27  contract exemplifies the kind of inefficiency that Congress sought to eliminate by doing away with

28  authorization elections."  (*Ibid.*)  At the same time, Walsh noted, "dismissing the petition leaves

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
[illegible address lines]

5

1    intact the right of employees to promptly deauthorize the union-security clause if they desire to do

2    so." (*Id.*)

3        Walsh took issue with the majority for ignoring the plain meaning of § 9(e)(1), stating that

4    the majority "strains to find an ambiguity in the statutory language that simply is not there." (*Id.*)

5    Nothing in the statutory language suggests that employees need only be covered by a union

6    security clause when a de-authorization petition is filed, as opposed to when the signatures are

7    gathered, the dissent maintained. "The plain language of the Act dictates that the signatures

8    supporting a deauthorization petition must be signatures of employees who are already subject to

9    an effective union-security provision," contended Walsh.

10        Pursuant to the NLRB majority's Decision and Order, on April 5, 2007, Norelli issued an

11    "Order Scheduling Hearing" reinstating the January 2006 de-authorization petition for the apparent

12    purpose of processing it for a de-authorization election.  In or about May 2007, Norelli issued a

13    notice informing the Employer and the employees represented by Local 790 that an election would

14    take place beginning June 4, 2007, at which time ballots would be mailed to members of the

15    bargaining unit.  (See Declaration of David Rosenfeld, filed concurrently herewith ("Rosenfeld

16    Dec."), at ¶ 4.)  The election was subsequently suspended briefly due to the fact that Covenant

17    representatives were unable to produce an "Excelsior" list of bargaining unit members to the

18    NLRB because TSA opposed production of that list by Covenant on national security grounds. (*Id.*

19    at ¶ 5.)  Nevertheless, the Excelsior list issue is expected to be resolved quickly and the election is

20    expected promptly to commence forthwith.  (*Id.* at ¶ 6.)

21        Local 790 has filed with this Court concurrently herewith a Complaint for Declaratory and

22    Injunctive Relief and submits this memorandum in support of its Motion for Preliminary Injunction

23    for the reasons that follow.

24                    **III.  ARGUMENT**

25        As argued in the following sections, injunctive and declaratory relief is the only means by

26    which Plaintiff can secure a remedy for the NLRB's *ultra vires* ruling in this case.  As further

27    argued, Regional Director Norelli and dissenting Board Member Walsh have set forth an analysis

28    that comports with the plain meaning and legislative history of § 9(e)(1), while the NLRB majority

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510-337-1001

6

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

decision violates the clear statutory prohibition codified in that provision.  Consequently, this court should strike down the Board's ruling in this case and enjoin the de-authorization election the Board ordered in excess of its statutory jurisdiction.

**A.    EXERCISE OF THE COURT'S GENERAL JURISDICTION IN EQUITY IS PROPER WHERE THE NLRB HAS EXCEEDED ITS JURISDICTION BY VIOLATING A CLEAR STATUTORY COMMAND TO THE HARM OF THE PLAINTIFF AND THERE IS NO OTHER MEANS AVAILABLE TO OBTAIN JUDICIAL REVIEW.**

This court possesses jurisdiction under 28 U.S.C. § 1337 to review actions by the NLRB taken in excess of the Board's statutory jurisdiction, particularly where, as here, Congress did not create a procedure in the NLRA for review of the type of Board action at issue.  (*Leedom*, *supra*, 358 U.S. at 190.)  When Congress has created a statutory right but has provided no procedure for judicially enforcing it, and the agency charged with administering and enforcing that right has violated it through an act beyond the agency's jurisdiction, "the inference is strong that Congress intended the statutory provision governing the general jurisdiction of [the] courts to control." (*Ibid.*)

In *Leedom*, *supra*, the NLRB improperly certified as appropriate a bargaining unit that contained both professional and non-professional employees without affording the professional employees an opportunity to vote on whether they wished the non-professional employees to be included in their bargaining unit.  It was undisputed that the Board's ruling violated a prohibition in NLRA § 9(b)(1), 29 U.S.C. § 159(b)(1), against commingling of professional and non-professional employees without the approval of the professional employees.  (*Id.* at 187.)

Ordinarily, a Board ruling defining an appropriate bargaining unit cannot be judicially reviewed except in a proceeding to enforce the Board's order or through review of an order made under NLRA § 10(c), 29 U.S.C. § 160(c), restraining an unfair labor practice.  (*Id.*)  The latter avenue of review is traditionally secured through a "technical refusal to bargain", triggering the filing of an unfair labor practice charge.  In the course of adjudication of such a charge, the Board's exercise of its discretion regarding the unit-determination issue can be addressed.

However, the Supreme Court found that where, as in *Leedom*, the Board's ruling was violative of a clear statutory command, a request for judicial scrutiny of the Board's action was not

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
(510) 337-1001

7

1    a petition for judicial "review" as that term is used in the NLRA, of an act within the Board's

2    jurisdiction. "Rather, it is one to strike down an order of the Board made in excess of its delegated

3    powers and contrary to a specific prohibition in the Act." (*Id.*)

4          Finding that the Board's ruling in *Leedom* was "an attempted exercise of power that had

5    been specifically withheld" which "deprived the professional employees of a 'right' assured to

6    them by Congress," the Supreme Court held that the federal courts possessed authority under the

7    general grant of jurisdiction in 28 U.S.C. § 1337 to scrutinize and overrule the Board's action. (*Id.*

8    at pp. 189-190.)

9          Thus, in *Leedom*, although the NLRA contained a procedure through which the Board's

10   ruling could be reviewed, the Court found that direct judicial review could be sought without resort

11   to the ordinary procedure because the Board's action was challenged on grounds that it was in

12   excess of the Board's lawful powers.

13         The Ninth Circuit has faithfully followed the Supreme Court's analysis in *Leedom*. (See,

14   e.g., *National Association of Agriculture Employees*, *supra*, 473 F.3d at 988, fn 5 (9th Cir. 2007)

15   (where federal agency violates clear statutory prohibition, its action can be challenged in U.S.

16   District Court under *Leedom* doctrine).) In *Teamsters, Chauffeurs, Helpers and Delivery Drivers,*

17   *Local 690 v. NLRB*, 375 F.2d 966 (9th Cir. 1967) the Ninth Circuit emphasized that the *Leedom*

18   exception to limitations on judicial review of NLRB rulings is narrow. It is not to "be extended to

19   permit plenary district court review of Board orders" in situations where "it can be said that an

20   erroneous assessment of the particular facts before the Board has led it to a conclusion which does

21   not comport with the law." (*Id.* at 969.) Rather, as the Court in *Leedom* itself said, direct judicial

22   review under the court's equity authority exercised pursuant to its general jurisdiction is

23   appropriate only where the Board's action was beyond its statutorily conferred discretion and

24   constituted violation of a statutory command. (*Id.*, citing *Boire v. Greyhound Corp.*, 376 U.S. 473

25   (1964) and *Leedom*, *supra*.) The Ninth Circuit reviewed cases that have applied *Leedom* and

26   quoted with approval the observation that "[the *Leedom*] exception has been applied to an

27   affirmative requirement of the Act as well as a statutory prohibition." (*Id.* at 970, quoting *Boire v.*

28   *Miami Herald Publishing Co.*, 343 U.S. 17, 20 (5th Cir. 1965) *cert. denied*, 382 U.S. 824.)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337-1001

8

1      Very few cases have addressed issues involving de-authorization petitions under NLRA §

2   9(e)(1) under the *Leedom* doctrine.  Those that have, however, have recognized that the court

3   possesses jurisdiction to entertain an original suit in equity, as long as the Board's action at issue

4   violated a statutory requirement.  (See, e.g., *Machinery, Scrap Iron, Metal & Steel Chauffeurs,*

5   *Warehousemen, Handlers, Helpers, Alloy Fabricators, Theatrical, Exposition, Convention and*

6   *Trade Show Employees, Local Union No. 714, International Brotherhood of Teamsters v. Madden,*

7   343 F.2d 497, 499 (7th Cir. 1965) (hereinafter "*Madden*") (District Court's assertion of jurisdiction

8   proper where Board's order in § 9(e) case constituted a "violation of a clear and mandatory

9   provision of the Act.")

10      Where, as here, there is no procedure to obtain review of the Board's action even when the

11   challenge is to the Board's exercise of its discretion, there is even more reason than in *Leedom* for

12   the court to exercise its jurisdiction in equity to review an allegation that the Board has acted

13   beyond its jurisdiction.  Even more strongly than in unit certification cases, the exercise of the

14   court's general jurisdiction is crucial here because, without it, Plaintiff's opportunity to argue that

15   its rights under the NLRA have been violated will not only be delayed, it will be precluded

16   altogether.

17   **B.    THE NLRB VIOLATED A CLEAR STATUTORY MANDATE BY ORDERING A**
18   **DE-AUTHORIZATION ELECTION BASED ON A PETITION THAT WAS**
     **SIGNED AND FILED WHEN NO COLLECTIVE AGREEMENT CONTAINING A**
19   **UNION SECURITY CLAUSE WAS IN EFFECT.**

20      Under the plain terms of NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1), the Board lacked

21   discretion to order an election based on the de-authorization petition in this case because it was

22   premature and the signatures were not collected at a time when there was a contract containing a

23   union security clause in effect.  Moreover, although the statutory language is unambiguous and the

24   Board erred in looking to legislative history to interpret it, the legislative history corroborates this

25   plain reading of the statute.  Plaintiff has found no judicial decision that directly rules on whether

26   the de-authorization procedure set forth in § 9(e)(1) may be used prospectively.  However,

27   consistent with the plain language of the provision and its legislative history, the cases that have

28   construed the language of § 9(e)(1) have recognized that the de-authorization procedure presumes

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

9

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  the existence of a Union security clause before it can be invoked.

2       It is undisputed that nearly 70 percent of the signatures submitted in support of the de-

3  authorization petition were collected in October 2005, over a month before contract negotiations

4  had begun and at least two months before terms of the tentative agreement were disclosed to

5  affected employees for a ratification vote.  It is also undisputed that approximately 92 percent of

6  the signatures submitted in support of the petition pre-dated the ratification vote, and that every

7  signature pre-dated execution of the Collective Bargaining Agreement on January 13, 2006.

8  Further, it is undisputed that the de-authorization petition was filed two days before the contract

9  went into effect upon the signature of Covenant.

10      Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1), states,

11           Upon the filing with the Board, by 30 per centum or more *of the employees
             in a bargaining unit covered by an agreement between their employer and a*
12           *labor organization made pursuant to Section 8(a)(3)*, of a petition alleging
             the desire that such authority be *rescinded*, the Board shall take a secret
13           ballot of the employees in such unit and certify the results thereof to such
             labor organization and to the employer.
14

15  (Emphasis added.)

16      It is clear from the plain meaning of the statutory language that the de-authorization

17  procedure only comes into play in the context of an existing union security clause.  The statute

18  states that a petition may be submitted by "30 per centum or more of the employees in a bargaining

19  unit *covered by an agreement between their employer and a labor organization made pursuant to*

20  *Section 8(a)(3)*."  Section 8(a)(3) authorizes the negotiation of a Union security clause.  Thus, the

21  employees who are empowered by § 9(e)(1) to sign and file a de-authorization petition are those

22  who "are covered" by an agreement containing a union security clause.  The statute could hardly

23  be more plain on this point.

24      Cases that have applied § 9(e)(1) have recognized that the statute presumes such an

25  agreement is in effect.  For example, in *Madden*, *supra*, the court stated,

26           We are in full agreement with the District Court that Section 9(e)(1)
             contemplates that the parties *are subject to a union security agreement at the*
27           *time the deauthorization petition is filed*.  It refers to a petition filed by 30%
             or more of the employees in a bargaining unit covered by an agreement
28           between their employer and a labor organization entered into pursuant to

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
(510) 337-1001

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Section 8(a)(3). We must conclude that *Congress intended to provide relief from an existing union security clause*....

(343 F.2d at 500, emphasis added.) Similarly, in a case cited by the NLRB in the instant case (D.&O. at 4), the Board stated,

> Only by holding that an affirmative deauthorization vote immediately relieves employees of the obligations imposed by *an existing union-security agreement* can this Board give effect to the basic congressional objective, unchanged by amendments directed solely at procedural relief, of not imposing a union-security agreement upon an unwilling majority.

(*Great Atlantic & Pacific Tea Company*, 100 NLRB 1494, 1497 (1952) ("*Atlantic*"; Accord, *NLRB v. Van Luitt & Co.*, 597 F.2d 681, 684 (9th Cir. 1979) (citing *Atlantic*).)[2]

Those analyses are in accord with the plain meaning of § 9(e)(1). The statute provides that employees covered by a union security agreement may submit a petition in order to "rescind" "such authority", referring to the union security agreement. The provision does not state that employees can "preclude" a union security agreement, "prohibit", "preempt", or otherwise prospectively divest the Union of its authority to negotiate such an agreement. The statute states that if at least 30 percent of the employees who are *covered* by a union security agreement negotiated pursuant to NLRA § 8(a)(3) sign a petition, they can request an election to "*rescind*" the authority contained in the agreement.

Thus, Board Member Walsh was correct when arguing in dissent in the instant case that the

---

[2]    In *Atlantic*, the Board found that employees who exercised the authority under § 9(e)(1) to petition for and vote by a majority in favor of de-authorizing an *existing* union security clause should not be required to wait until expiration of the agreement containing the clause to have their will implemented. (100 NLRB at 1497.) From that holding, the majority in the instant case unreasonably infers that preventing employees from filing a de-authorization petition until after a clause is in effect would "unjustly postpone employees' expression in much the same way as would allowing a union-security clause to remain valid through the contract's term notwithstanding a deauthorization vote." (D. & O. at p. 4) The problem with the Board's analysis (in addition to ignoring the context within which the quoted language from *Atlantic* was taken, as discussed *infra*) is that the language of § 9(e)(1) speaks of a petition filed by individuals covered by an agreement containing a union security clause who wish to "rescind" it, while, in this case, there was nothing in effect to rescind.

It is respectfully submitted that the Board majority misses the significance of the fact that *Atlantic* viewed the de-authorization procedure as relating to "an *existing* union security clause." Indeed, the analysis in *Atlantic* presumed the opposite of the Board's ruling in the instant case. Nothing in the analysis in *Atlantic* compels or justifies administrative or judicial creation of a preemptive de-authorization procedure that has no support in the language or history of the statutory provision on which the Board majority herein wishes to base it.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510-337-1001

11

Board "strain[ed] to find an ambiguity in the statutory language that simply is not there." (D.&O. at 7.) The plain meaning of the statute clearly precluded entertainment of the petition in this case and there was no statutory authority for the election ordered by the Board. As noted by Member Walsh,

> The Board is not free to speculate as to Congressional intent where – as here – the text of the statute clearly addresses the question at hand. The plain language of the Act dictates that the signatures supporting a deauthorization petition must be signatures of employees who are already subject to an effective union-security provision.

(D.&O. at 7.)

Nonetheless, even when legislative history is consulted, the foregoing interpretation of § 9(e)(1) is compelled. Through the Taft Hartley amendments to the Wagner Act in 1947, Congress enacted the precursor to current § 9(e)(1). In its original form, § 9(e) set forth two procedures with regard to union security agreements. The original § 9(e)(1) required that, before a union security clause could go into effect, it must be ratified or authorized by a majority vote of affected bargaining unit members in a secret ballot election. Section 9(e)(1) of the Labor Management Relations Act of 1947 ("LMRA") provided:

> Upon the filing with the Board by a labor organization, which is the representative of employees as provided in section 9(a), of a petition alleging that 30 per centum or more of the employees within a unit claimed to be appropriate for such purposes with the employer of such employees requiring membership in such labor organization as a condition of employment in such unit, upon an appropriate showing thereof the Board shall, if no question of representation exists, take a secret ballot of such employees, and shall certify the results thereof to such labor organization and to the employer.

(Section 9(e)(1), LMRA, 1947, Chapter 120, Public Law 101, *United States Code Congressional and Administrative Service*, 8th Congress, First Session, 1947.)

It is undisputed that, under § 9(e)(1) of the LMRA in its original form in 1947, once a union had been certified as an exclusive bargaining agent and had negotiated with the employer a collective bargaining agreement containing a union security clause, it remained necessary for parties who supported the union security clause to petition for an election regarding the clause. Only after a majority of the bargaining unit members approved giving the union the authority to "make" such a union security agreement could the provision go into effect.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
(510) 337-1001

12

MEMORANDUM OF P & A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   Section 9(e)(2) was worded nearly exactly as current Section 9(e)(1) (with the exception of

2   its reference to former Section 8(a)(3)(ii), which is not at issue herein), thereby granting employees

3   in a unit covered by a Union security clause which had previously been approved through an

4   election the ability to petition for its recission. (*Id.* at § 9(e)(2).)

5   The Congressional comments concerning the Taft Hartley amendments to the Wagner Act

6   specifically address the resolution of differences between the House and Senate versions of the

7   procedures codified at LMRA § 9(e). (*United States Code Congressional and Administrative*

8   *Service*, 80th Congress, First Session, 1947, Congressional Comments at pp. 1156-1157.) Under

9   the House version of the bill, the employer had to agree to a union shop provision in a contract

10  before an election was held to authorize the provision, thereby making it effective. Other language

11  in the House Bill provided that any petition for an election on the union security clause (after the

12  contract was negotiated) had to specify that the employer's agreement to the clause was not

13  secured directly or indirectly by means of a strike or threat thereof. A majority of the employees in

14  the bargaining unit had to vote in favor of the clause for it to become effective and then it remained

15  in force through the duration of the collective bargaining agreement or for two years, whichever

16  was shorter. (*Ibid.*)

17  The Senate version of the Bill provided that an election was to be held "for the purpose of

18  authorizing the labor organization to make a union shop or maintenance of membership agreement

19  with the employer and did not have the effect of preventing strikes to secure such an agreement."

20  (*Id.* at 1157.) Under the Senate amendment, once employees voted in favor of authorizing the

21  union security agreement, the authorization remained in effect until a de-authorization petition was

22  filed and a secret ballot election held in which a majority voted to rescind the authority they had

23  granted. (*Ibid.*)

24  The conference agreement that became LMRA § 9(e)(1) and (2) followed the Senate

25  approach with two "clarifying changes." First, a petition, specifically including a de-authorization

26  petition, had to be supported by at least 30 percent of the bargaining unit. Second, the Board was

27  permitted to order an election only if no question of representation existed, i.e., if there was a

28  certified bargaining representative in place. As explained in the conference report, this latter

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
Alameda Village Parkway
Suite 200
Alameda, CA 94501-7004
510-337-1001

13

1   requirement ensured that "only certified bargaining agents could make union shop agreements and

2   *petition for elections to authorize their execution.*" (*Id.* at 1157, emphasis added.)

3   Section 9(e) was amended again in 1951. The most significant of the changes, as recounted

4   by House Report No. 1082, was to "…dispense with the requirement of existing law that an

5   election be held before a labor organization and an employer may make a union-shop agreement."

6   (*United States Code Congressional and Administrative Service*, 82nd Congress, First Session, 1951,

7   House Report No. 1082 at pp. 2379-2381 ("H.R. Rep. No. 1082"), p. 2380.) To implement this

8   change, the Bill eliminated the requirement for an election to authorize a union shop agreement by

9   deleting § 9(e)(1). The Bill then re-codified the text of § 9(e)(2) to its current location at § 9(e)(1),

10  thereby leaving in place the procedure for employees in a bargaining unit covered by a union

11  security agreement to petition for an election regarding whether to de-authorize the union security

12  clause.

13  As correctly observed by the NLRB majority in the instant case,

14  In amending the statute in 1951, Congress' stated goal was to avoid the
    waste of Board resources inherent in authorization elections, while
15  simultaneously maintaining employees' ability to free themselves from a
    union-security arrangement if they so desired.
16

17  (D.&O. at 3.)

18  The 1951 House of Representatives Report stated that it was necessary to dispense with the

19  union security authorization elections because they "have imposed a heavy administrative burden

20  on the Board, have involved a large expenditure of funds, and have almost always resulted in a

21  vote favoring the union shop." (H.R. Rep. No. 1082, at 2381.) In order to accommodate the

22  NLRB's administrative interest in avoiding unnecessary, time-consuming, and expensive elections

23  when the result was nearly always a foregone conclusion, on the one hand, and employees' interest

24  in being able to choose not to remain subject to a union security clause, on the other, Congress

25  eliminated the authorization election requirement and retained the de-authorization procedure for

26  employees covered by an agreement with a union security clause.

27  There is nothing in the legislative history to suggest that Congress intended to create a *new*

28  procedure through which employees could be organized to prospectively hamstring their

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation

1   representative from negotiating for a union security clause.  To the contrary, the retention of the

2   identical de-authorization language from old § 9(e)(2) and simultaneous elimination of the

3   authorization election requirement from old § 9(e)(1), particularly in light of the rationale for the

4   change – namely that authorization elections were in essence mere formalities, strongly indicates

5   that Congress intended the de-authorization procedure to apply, as the statute states on its face,

6   only to employees covered by an agreement containing a union security provision.

7           The Board in *Atlantic*, *supra*, understood this point clearly:

8              That fundamental protection was accorded employees under the amended
               procedure by providing a method, negative instead of affirmative, and
9              *subsequent instead of precedent*, for determining their desires.  Thus,
               Congress by the 1951 amendments, accomplished its purpose of eliminating
10             the prior costly authorization elections but retaining the earlier safeguard.
               This was done by giving labor organizations a *presumptive authority to*
11             *enter into union-shop agreements and at the same time providing an* <u>*escape*</u>
               <u>*for any unwilling majority covered by such an agreement*</u>, through the
12             opportunity afforded by Section 9(e)(1) for an affirmative deauthorization
               vote.

13

14   (100 NLRB at 1497, emphasis added.)  The majority in the instant case quotes language adjacent to

15   the above-quoted passage (D.&O. at 4) but neglects to grapple with the obvious import of the

16   *Atlantic* Board's analysis:  Congress intended what it said on the face of § 9(e)(1), namely to afford

17   employees who were dissatisfied with a union security clause in an existing agreement to organize

18   for its de-authorization.  The Board's analysis in *Atlantic* is true to the plain meaning and

19   legislative history of § 9(e)(1).  In contrast, the Board majority's attempt in the instant case to cite

20   *Atlantic* as authority for creating a new, preemptive procedure that has no support in the language

21   or history of § 9(e)(1) is ironic at best.

22           As observed by both Regional Director Norelli and Board Member Walsh writing in

23   dissent, the existing statutory scheme, granting unions presumptive authority to negotiate a union

24   security agreement and retaining employees' ability to petition for its removal if they so choose,

25   advances the Board's administrative interests and protects employees' ability to make an informed

26   decision regarding union security.  Only after employees have an opportunity to assess what their

27   chosen representative has accomplished can employees meaningfully decide the extent to which

28   they want to financially support the union.  "That fundamental protection" as the Board in *Atlantic*

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

15

noted, "was accorded employees by providing a method, negative instead of affirmative, and subsequent instead of precedent, for determining their desires." (100 NLRB at 1497.)

In effect, the Board's ruling herein nullifies Congress's repeal of the authorization-election prerequisite to execution of union security provisions. The Board majority's claimed goal in the instant case of avoiding delay in implementing employee will with regard to recission of the union security clause does not warrant overriding the procedural scheme established by Congress through enactment of § 9(e)(1). There is no indication in the language or history of that provision that Congress intended to silently grant a new preemptive de-authorization power, nor that Congress intended to prevent employees from living with a union security clause long enough to utilize the de-authorization process.[3]

Section 9(e)(1) represents the approach Congress chose to reconcile the Board's interest in administrative economy and employees' interest in having a meaningful and informed choice as to whether they want to be subject to a union security agreement. The Board was bound by that legislative enactment. Ordering an election in the instant case constitutes administrative lawmaking, well beyond the jurisdiction of the Board.

## C.    PLAINTIFF HAS NO MEANS BY WHICH TO SEEK REDRESS FOR THE NLRB'S VIOLATION OF A CLEAR STATUTORY MANDATE OTHER THAN BY WAY OF AN ORIGINAL SUIT IN EQUITY.

The NLRA entitles parties to seek direct judicial review of NLRB decisions in unfair labor practice cases. (NLRA § 10(c); 29 U.S.C. § 160(c).) No such direct review is available regarding NLRB rulings on union-election-related issues such as definition of an appropriate bargaining unit. However, in those situations, an aggrieved party can secure judicial review by refusing to bargain with the other party, thereby triggering the filing of an unfair practice charge. This is traditionally

---

[3]    Thus, the Board majority's asserted concern (D.&O. at 4) with the "delay" that would result from requiring employees, consistent with the plain meaning of § 9(e)(1), to live with a union security provision until they validly petitioned for its removal, is misplaced. The delay that is clearly required by the statute in order to balance the concerns discussed above is not equivalent to the delay, remedied in *Atlantic*, *supra*, occasioned by failure to implement the will of employees after they exercised their rights under § 9(e)(1) to petition for and vote by a majority in favor of, recission of an *existing* union security agreement. One "delay" is required by the statute; the other is prohibited. Moreover, the Supreme Court in *Leedom* expressly placed a higher priority on remedying acts of the Board beyond its jurisdiction than on avoiding "delay" in conducting an election that was unlawful under the Act.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

16

1    known as a "technical refusal to bargain", through which review of a Board ruling on a unit-

2    determination issue can be brought before the courts indirectly by seeking review of the Board's

3    resolution of the unfair labor practice allegations. (*Leedom*, *supra*, 358 U.S. at 187.)

4        The Supreme Court in *Leedom*, *supra*, found that allowing an original district court suit in

5    equity to remedy the NLRB's action in excess of its jurisdiction with regard to a bargaining-unit-

6    determination issue was warranted even though the Board's action was otherwise reviewable for

7    abuse of discretion by raising it in the context of a related unfair labor practice proceeding.

8        The reason for the Court's ruling was that a suit in equity to request that the court strike

9    down an *ultra vires* action by the Board is not a petition for "review" of the Board's exercise of its

10   discretion within the meaning of the NLRA's provisions granting the right to review of certain

11   Board actions.  It is, rather, a request that the court remedy the Board's unlawful exercise of power

12   beyond its jurisdictional authority. (358 U.S at 188.)

13       Thus, even where, as with unit-determination rulings, there is a procedure by which to seek

14   review of NLRB rulings for abuse of discretion and there is no statutory right to direct judicial

15   review, direct review is available in equity to vindicate statutory rights that are violated by a Board

16   order in excess of its jurisdiction.

17       In contrast to the unit determination context, there is no bargaining duty attendant to the de-

18   authorization of a union security clause.  Consequently, in cases such as the instant matter, there is

19   no mechanism akin to the so-called "technical refusal to bargain" by which the union could trigger

20   filing of an unfair practice charge and thereby secure an NLRB ruling that would be subject to

21   judicial review for abuse of discretion.

22       Consequently, in the instant case, there are two reasons that the Union is entitled to this

23   Court's exercise of its general jurisdiction to scrutinize the Board's ruling: (1) the Board acted in

24   violation of a clear statutory mandate as discussed *supra*, warranting this court's exercise of its

25   original jurisdiction under the *Leedom* analysis; and (2) the union is not simply restricted to a less

26   timely means by which to secure some sort of judicial review, as in the unit-determination context,

27   but it is bereft of *any* means through which to bring the Board's ruling before the court, other than

28   through an original suit in equity. Thus, *a fortiori*, it is appropriate and necessary for the court to

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
(to 18* floor)

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  exercise its general jurisdiction in this case and review the Board's ruling to determine if it was in

2  excess of the jurisdiction conferred upon the NLRB by Congress through the NLRA.

3  **D.    PLAINTIFF WILL SUFFER IMMINENT AND IRREPARABLE HARM IF THE
        COURT DOES NOT ENJOIN THE DE-AUTHORIZATION ELECTION
4       UNLAWFULLY ORDERED BY THE NLRB.**

5         As noted *supra*, NLRB Regional Director Norelli, pursuant to the Board's Decision and

6  Order at issue herein, has ordered an election based on the invalid de-authorization petition to

7  commence June 4, 2007. (Rosenfeld Declaration at ¶ 4.) The election was subsequently suspended

8  briefly due to the fact that Covenant representatives were unable to produce an "Excelsior" list of

9  bargaining unit members to the NLRB because TSA opposed production of that list by Covenant

10  on national security grounds. (*Id.* at ¶ 5.)  Nevertheless, the Excelsior list issue is expected to be

11  resolved quickly and the election is expected promptly to commence forthwith. (*Id.* at ¶ 6.)  Time

12  is therefore of the essence.   The NLRB has agreed to the setting of a Show Cause hearing to

13  address the issues presented herein as soon as counsel may be heard and the appropriate papers

14  filed with this Court.

15         If the election based on the Board's *ultra vires* Order is not stopped immediately, Local

16  1877[4] will be forced to divert substantial resources and personnel to immediately conduct a

17  campaign against de-authorization in time for the invalid election. (See Declaration of Jamie

18  Thompson, filed concurrently herewith ("Thompson Dec.") at ¶ 2.)  Up to ten Local 1877 staff

19  employees will be forced to work full-time for likely upwards of two weeks in order to conduct a

20  campaign relative to the imminent election. (*Id.* at ¶¶ 2, 4.)

21         The diversion of resources that would be necessitated by the unlawful election in this case

22  would have a profound impact on the operations of Local 1877 and employees it represents at the

23  airport.  Negotiations are underway between Local 1877 and other employers at the airport

24  regarding two Collective Bargaining Agreements, one of which is expired. (*Id.* at ¶ 3.)  The staff

25  that would be required to conduct a campaign against de-authorization are already fully engaged in

26

27  [4]  SEIU Local 790 is the local union that represents the employees affected by this case and
      which litigated the issues herein before the NLRB.  However, Local 1877 is the entity that is
28    servicing the employees at the airport who would be affected by the election in this case.
      (Declaration of Jamie Thompson, filed concurrently herewith, at ¶ 1.)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
...

18

1    collective bargaining with these other employers.  The diversion of those employees to the election

2    campaign would have a substantial, irremediable negative impact on hundreds of employees whose

3    terms and conditions of employment are being forged through the pending negotiations. (*Ibid.*)

4         There would be no means by which to recover the tremendous expense, nor to secure

5    compensation for the severe administrative burdens resulting from having to assign a large number

6    of Local 1877 staff to an election campaign.  Nor would there be any means by which to recover

7    the losses in representation of Local 1877 members that would result from the diversion of the

8    Union's staff to grapple with the unlawful election at issue herein.  (*Id.* at ¶ 5.)

9         Serious disruption will result if this election is allowed to proceed, resulting, *inter alia*,

10   from the unavoidable occurrence of campaigning at employee work places at the airport.  (*Id.* at

11   ¶7.)  There is a small but resolute group pursuing the de-authorization initiative, and they will

12   undoubtedly campaign at various areas within the airport.  (*Ibid.*)  Local 1877 staff will be forced

13   to campaign in the airport against de-authorization.  (*Id.*)  It will unavoidably be the case that such

14   campaigning will be disruptive of the workforce and that employees will carry on arguments

15   regarding the election not only in non-work areas, but at their workstations.  (*Id.*)

16        Such disruption will be particularly problematic for this workforce because airport security

17   officers are not allowed to talk about anything at their work posts other than their job duties while

18   using security equipment at security checkpoints.  (*Id.* at ¶ 9.)  If the contentious issues

19   surrounding an unlawful election arise, it will naturally cause employees to discuss those issues at

20   their work stations, which is not permitted, and which could result in widespread disruption and

21   disciplinary action against such employees.  (*Ibid.*)  It would be unjust and irremediable if

22   employees were placed in such jeopardy and incurred such injuries based on the ordering of an

23   election which was beyond the jurisdiction of the NLRB and prohibited by the NLRA.

24        In addition, the pendency of this potential, unlawful election has caused workers to be

25   uncertain regarding their union-security obligations under the collective bargaining agreement that

26   now governs their employment.  (*Id.* at ¶ 8.)  Unless this court promptly resolves this issue, these

27   questions will continue to arise.  (*Ibid.*)  Employees will thus increasingly have questions regarding

28   whether they are required to comply with the union security obligations set forth in their Collective

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Bargaining Agreement. (*Id.*) Under the terms of that agreement and the NLRA, if the employees do not comply, they are subject to being discharged. (*Id.*) This is precisely the kind of confusion and jeopardy that Congress intended to avoid by eliminating the union security authorization petition and election procedure, creating a presumptive right to negotiate a union security clause into a Collective Bargaining Agreement. It is incumbent upon this court to undo the damage to that sensible statutory scheme caused and threatened by the NLRB's *ultra vires* ruling in this case.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully requested that:

1.  A declaratory order issue finding that the Board violated a clear statutory mandate by ordering the de-authorization election based on the premature petition filed in this case;

2.  A preliminary injunction issue prohibiting the Board from ordering a de-authorization election except upon a petition signed by 30 percent or more of the employees in a bargaining unit at a time when they are covered by a collective bargaining agreement containing a union security clause;

3.  A permanent injunction issue prohibiting the Board from ordering a de-authorization election except upon a petition signed by 30 percent or more of the employees in a bargaining unit at a time when they are covered by a collective bargaining agreement containing a union security clause;

4.  The court order any other remedy it deems just and proper; and

5.  The court award plaintiff attorneys' fees and costs of suit in this matter.

Dated: May 25, 2007

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
  Vincent A. Harrington, Jr.
  David A. Rosenfeld
  Eric M. Borgerson

By: _____
VINCENT A. HARRINGTON, JR.
Attorneys for Plaintiff
Service Employees International Union, Local 790

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation

116046/458528

MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION