ERIC G. MOSKOWITZ
NANCY E. KESSLER PLATT
DAWN L. GOLDSTEIN
National Labor Relations Board
1099 14th Street, NW, Suite 8600
Washington, DC 20570
Telephone: 202 273-2930
Facsimile: 202 273-1799
Email: Eric.Moskowitz@nlrb.gov
Email: Nancy.Platt@nlrb.gov
Email: Dawn.Goldstein@nlrb.gov

OLIVIA GARCIA
KATHLEEN C. SCHNEIDER, Bar No. 174058
NLRB, Region 20
901 Market Street, Suite 400
San Francisco, CA 94103-1735
Telephone: 415 356-5130
Facsimile: 415 356-5156
Email: Olivia.Garcia@nlrb.gov
Email: Kathleen.Schneider@nlrb.gov

Counsel for Defendants Norelli, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, Local 790, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH NORELLI, Regional Director of National Labor Relations Board, Region 20, et al., <br><br> Defendants. | RESPONSE OF NATIONAL LABOR RELATIONS BOARD TO PLAINTIFF'S REQUEST FOR ORDER TO SHOW CAUSE AND IN OPPOSITION TO PRELIMINARY INJUNCTION <br><br> No. 07-cv-02766-PJH <br><br> Date: <br><br> Time: <br><br> Judge: Hon. Phyllis J. Hamilton <br><br> Courtroom: |

i

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ...................................................................................................1

RELEVANT STATUTORY PROVISIONS ............................................................1

FACTUAL BACKGROUND .................................................................................2

ARGUMENT ..........................................................................................................6

I.   STANDARD FOR A PRELIMINARY INJUNCTION.....................................6

II.  THE UNION HAS NO LIKELIHOOD OF SUCCESS BECAUSE THIS COURT
     LACKS SUBJECT MATTER JURISDICTION TO REVIEW THE BOARD'S
     EXERCISE OF DISCRETION TO CONDUCT A DEAUTHORIZATION
     ELECTION ....................................................................................................6

     A.  Board Representation Proceedings are Not Subject to Direct Judicial Review ...............7

     B.  This Case Does Not Fall Within Any Exception to the Prohibition of District Court
         Review of Board Representation Proceedings ..................................................9

         1.  The Leedom Exception to Nonreviewability is Exceedingly Narrow........................9

         2.  There is no Jurisdiction Under Leedom Because the Board Here Did Not
             Violate Any Clear and Mandatory Statutory Provision ...............................11

III. THE UNION CANNOT SHOW IRREPARABLE INJURY OR THAT ITS ALLEGED
     INJURY OUTWEIGHS THE HARM TO THE BOARD AND PUBLIC INTEREST IN
     PERMITTING EMPLOYEES TO RESCIND A UNION-SECURITY AGREEMENT....17

CONCLUSION........................................................................................................19

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

American Federation of Labor v. NLRB, 308 U.S. 401 (1940) .................................................7,8

Andor Co., 119 N.L.R.B. 925 (1957) ......................................................................................14

Associated General Contractors of Calif. v. Coalition for Economic Equity,
    950 F.2d 1401 (9th Cir. 1991)............................................................................................6

Bakersfield City School District v. Boyer, 610 F.2d 621 (9th Cir. 1979) .................................18

Bays v. Miller, 524 F.2d 631 (9th Cir. 1975) .........................................................................9,11

Bishop v. NLRB, 502 F.2d 1024 (5th Cir. 1974) ...................................................................7,8,10

Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.,
    502 U.S. 32 (1991)...........................................................................................................11

Board of Trustees of Memorial Hospital of Fremont County v. NLRB, 523 F.2d 845
    (10th Cir. 1975) ...............................................................................................................9

Boire v. Greyhound Corp., 376 U.S. 473 (1964).............................................................1,7,8,10

Chicago Truck Drivers v. NLRB, 599 F.2d 816 (7th Cir. 1979).............................................9,11

Cihacek v. NLRB, 464 F. Supp. 940 (D. Neb. 1979) ...............................................................11

Covenant Aviation Security, LLC, 349 NLRB No. 67 (March 30, 2007)..........................passim

Eisinger v. Federal Labor Relations Authority, 218 F.3d 1097 (9th Cir. 2000)........................11

FTC v. Standard Oil Co., 449 U.S. 232 (1980) ......................................................................16

Great Atlantic & Pacific Tea Co., 100 N.L.R.B. 1494 (1952)..............................................13,14

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
    456 U.S. 694 (1982)..........................................................................................................6

International Ass'n of Tool Craftsmen v. Leedom, 276 F.2d 514 (D.C. Cir. 1960)..................17

Leedom v. Kyne, 358 U.S. 184 (1958) ...............................................................................1,9,10

**Cases--Cont'd:**                                                                                      **Page(s)**

Local 130, International Union of Electrical, Radio and Machine Workers v. McCulloch,
    345 F.2d 90 (D.C. Cir. 1965) ................................................................................ 11

Local Union No. 714, International Brotherhood of Teamsters v. Madden, 343 F.2d 497
    (7th Cir. 1965).................................................................................................... passim

Lockerty v. Phillips, 319 U.S. 182 (1943) ................................................................. 8

McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10 (1963) .................. 10

Minn-Dak Farmers Co-op., Employees Organization v. Minn-Dak Farmers Co-op.,
    3 F.3d 1199 (8th Cir. 1993) ............................................................................. 7

NLRB v. A.J. Tower Co., 329 U.S. 324 (1946).......................................................... 15

NLRB v. Berryfast, Inc., 741 F.2d 1161 (9th Cir. 1984)............................................ 15

NLRB v. Best Products Co., Inc., 765 F.2d 903 (9th Cir. 1985)................................. 15

NLRB v. California Horse Racing Board, 940 F.2d 536 (9th Cir. 1991)...................... 9

NLRB v. General Motors Corp., 373 U.S. 734 (1963)............................................... 2

NLRB v. Gissel Packing Co., 395 U.S. 575 (1969).................................................... 3

NLRB v. IBEW, 308 U.S. 413 (1940)........................................................................ 7

NTEU v. FLRA, 112 F.3d 402 (9th Cir. 1997) ......................................................... 6

National Maritime Union v. NLRB, 375 F. Supp. 421 (E.D. Pa.), aff'd, 506 F.2d 1052
    (3d Cir. 1974)................................................................................................. 11,17

Renegotiation Board v. Bannercraft Clothing Co., Inc., 415 U.S. 1 (1974)............................. 17

State of California v. Federal Trade Commission, 549 F.2d 1321 (9th Cir. 1977) .................. 18

Switchmen's Union of N. America v. NMB, 320 U.S. 297 (1943) ............................... 8

Teamsters Local 25 (Tech Weld Corp.), 220 N.L.R.B. 76 (1975) ............................... 3

Teamsters, Local 690 v. NLRB, 375 F.2d 966 (9th Cir. 1967) .................................. 10

UFCW, Local 400 v. NLRB, 694 F.2d 276 (D.C. Cir. 1982)...................................... 7

**Cases--Cont'd:**                                                                    **Page(s)**

United Association of Journeymen and Apprentices of the Plumbing and Pipefitting
    Industry, Local 342 v. Valley Engineers, 975 F.2d 611 (9th Cir. 1992) ...............................7

Whitney Bank v. New Orleans Bank, 379 U.S. 411 (1965) ........................................................9

**Statutes:**

National Labor Relations Act, as amended (29 U.S.C. § 151, *et seq.*):
    § 8(a)(3) (29 U.S.C. § 158(a)(3))................................................................1,2,17
    § 9 (29 U.S.C. § 159) .....................................................................................7
    § 9(b)(1) (29 U.S.C. § 159(b)(1)) .................................................................9,10
    § 9(e)(1) (29 U.S.C. § 159(e)(1))...............................................................passim
    § 10(e) (29 U.S.C. § 160(e)) ......................................................................7,8
    § 10(f) (29 U.S.C. § 160(f)) .......................................................................7,8

**Legislative Materials:**

    H.R. 3020, 80th Cong., 1st Sess. (1947)...............................................................8
    H.R. Rep. No. 510, 80th Cong., 1st Sess. at 56-57 (1947) .................................8

**Administrative Materials:**

  National Labor Relations Board Rules and Regulations
        29 C.F.R. §102.85 .................................................................................3

  NLRB Casehandling Manual Representation Proceedings (Part Two)
  (GPO 1989):
        §11506.5    ............................................................................................3

NLRB'S RESPONSE TO REQUEST FOR ORDER TO SHOW CAUSE AND OPPOSITION TO
PRELIMINARY INJUNCTION – NO. 07-cv-02766-PJH

**INTRODUCTION**

Defendants Joseph Norelli, Regional Director for Region 20 of the National Labor Relations Board and the individual Members of the National Labor Relations Board (collectively, "the Board") respectfully submit this Response opposing both the Request by Plaintiff Service Employees International Union, Local 790 ("the Union" or "SEIU Local 790") for an Order to Show Cause and the Union's Motion for Injunctive Relief. As demonstrated below, this Court lacks subject matter jurisdiction to review or enjoin the Board's exercise of its discretion pursuant to Section 9(e)(1) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 159(e)(1) (1998), to conduct an election for employees to consider deauthorizing a union-security agreement. This case is no exception to the general rule barring judicial review of NLRA representation proceedings. Thus, the Union cannot show, as it must, that the Board violated a clear and mandatory provision of the NLRA. Accordingly, the injunction should be denied. See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 481 (1964); Leedom v. Kyne, 358 U.S. 184, 190 (1958). Injunctive relief should be denied for the additional reason that the Union has failed to demonstrate that the Board's election procedure has resulted in an irreparable injury to the Union, or that the Union's interest in enjoining the anticipated deauthorization election outweighs the harm to the Board and public interest in permitting employees to exercise their choice whether to participate in a union-security arrangement.

**RELEVANT STATUTORY PROVISIONS**

A "union-security" agreement is permitted under the first proviso to Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3) (1998). This statutory provision generally allows employers and unions to enter into agreements requiring employees in a bargaining unit to obtain and retain "membership" in the union beginning on or after the thirtieth day following entry on duty. Such

union "membership" requires only the payment of initiation fees and periodic dues.  NLRB v. General Motors Corp., 373 U.S. 734, 742 (1963).  Significantly, Section 8(a)(3) also provides that this permission to enter into union-security agreements is revoked if, following an election conducted pursuant to Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1) (1998), the Board certifies that a majority of the unit of employees voted to rescind the authority to make such an agreement.  Section 9(e)(1) in turn provides:

> Upon the filing with the Board, by 30 per centum or more of the employees in a bargaining unit covered by an agreement between their employer and labor organization made pursuant to section 8(a)(3), of a petition alleging they desire that such authorization be rescinded, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

As set forth below, the instant case concerns the Board's exercise of discretion to conduct a "deauthorization" election pursuant to this provision.

## FACTUAL BACKGROUND

In 2005, the Union and Covenant Aviation Security, LLC ("the Employer") entered into a collective-bargaining relationship for employees working at the San Francisco Airport.  More specifically, on September 30, 2005, a "card check" conducted by a panel of neutrals determined that a majority of the employees of the Employer had designated the Union as their representative for collective bargaining (Verified Complaint for Declaratory and Injunctive Relief ("Complaint") ¶ 12).  Accordingly, the Employer recognized the Union as the bargaining representative (Complaint ¶ 13).[1]  After negotiations, the Union and the Employer reached

_____

[1] A "card check" is a voluntary process by which an employer agrees to recognize a union based upon the majority of its employees signing "authorization cards."  "Authorization cards" are signed and dated by the employees, and explicitly authorize the union to represent the signer in collective bargaining.  If an employer agrees to such a process, a union can lawfully gain

2

tentative agreement on the terms of a collective-bargaining agreement, including a provision for union-security (Complaint Exh. 2 at 1-2). The Union disclosed those proposed terms to employees on December 28, 2005, and shortly thereafter, employees voted to ratify the agreement (Complaint Exh. 2 at 1-2). The Union signed the contract on January 12, 2006, and the Employer signed it the next day. By its terms, the contract is effective from January 1, 2006, until December 31, 2008. (Complaint Exh. 1 at 2.) However, under the NLRA, a union-security clause cannot be made retroactive. See Teamsters Local 25 (Tech Weld Corp.), 220 NLRB 76, 77 (1975). Thus, that term did not take effect until the Employer signed the contract on January 13, 2006 (Complaint Exh. 1 at 2).

Two days before the collective-bargaining agreement was fully executed, employee Stephen J. Burke, Jr. filed with Region 20 of the Board, pursuant to Section 9(e)(1) of the Act, a petition to rescind the authorization of the Union and Employer to make a union-security agreement (Board Case No. 20-UD-445). (Complaint ¶ 17.)

On March 23, 2006, the Regional Director for Region 20 issued an order dismissing the deauthorization petition, because both the filing of the actual petition and the petitioner's securing of the required employee signatures demonstrating the thirty percent "showing of interest" pre-dated the effective date of the union-security agreement (Exh. 1 to Complaint at 2).[2]

---

recognition without a formal NLRB election. See NLRB v. Gissel Packing Co., 395 U.S. 575, 595-600 (1969).

[2] The "showing of interest" in this case was the submission of employee signatures to the Regional Director in support of the deauthorization petition. Under Board procedure, after such signatures are submitted, the Region investigates the signatures' authenticity and relevance. See Board's Rules and Regulations § 102.85, 29 C.F.R. § 102.85 (1961); NLRB Casehandling Manual Part Two-Representation Proceedings, §11506.5 (available at http://www.nlrb.gov/publications/).

The Region's investigation disclosed that almost all of the signatures were gathered prior to the contract ratification vote, and all of them pre-dated the execution of the contract on January 13, 2006.  (Id.)  In the Regional Director's view, under Section 9(e)(1), the showing of interest in favor of deauthorization had to be secured from the employees in the context of an existing, rather than a prospective, contract containing a union-security clause.  Significantly, as to the separate premature filing of the actual petition, the Regional Director noted that such deficiency, standing alone, could easily be remedied by filing a second timely petition.  (Exh. 1 to Complaint at 2-3.)

Petitioner Stephen Burke filed a Request for Review of the Regional Director's decision with the Board.  The Petitioner argued that the Act contains no restrictions relating to the timing of the signatures supporting the requisite showing of interest and that, as a matter of policy, employees should not have to wait until after a contract's execution to begin the lengthy deauthorization process.  (Exh. 2 to Complaint at 1.)

On March 30, 2007, the Board (Chairman Battista and Member Kirsanow, Member Walsh dissenting) issued its Decision on Review and Order, reinstating the deauthorization petition and remanding the case to the Regional Director for further appropriate action.  (Covenant Aviation Security, LLC, 349 NLRB No. 67, p. 1 (March 30, 2007)(Exh. 2 to Complaint)).  The Board found that the timing of the employee signatures supporting the showing of interest did not render the deauthorization petition invalid.  The Board reasoned that "[r]equiring the Petitioner to have waited until after a contract containing a union-security provision came into effect before obtaining signatures . . . impermissibly delayed the effectuation of employees' statutory right to rescind the effect of a union-security clause."  (Exh. 2 to Complaint at 2.)  Although the Board agreed with the Regional Director that the deauthorization

petition should have been filed only after the union-security provision became effective, the Board also noted that the Regional Director found that such infirmity could be remedied by refilling the petition and that no party requested review of this issue.  (Exh. 2 to Complaint at 1 n.1, 2-3.)

Subsequently, on April 6, 2007, the petitioner filed a new deauthorization petition with Region 20 of the Board, Board Case No. 20-UD-447, seeking an election to rescind the current union-security agreement.  (See attached Board Exh. 1.)  On May 1, 2007, the Regional Director issued and served on the parties an Order to Show Cause regarding conducting an election by mail, also enclosing the new deauthorization petition, which had been amended to reflect the proper local union.  The amended petition was served on all parties, including the Union (see attached Board Exhs. 2 and 3).  The Union responded to the Order to Show Cause on May 8, alleging that the Board proceeding was unlawful and in excess of the Board's authority (see attached Board Exh. 4).  The next day, the Regional Director issued a Direction of Election upon this new petition, ordering that a deauthorization election be held by mail, with ballots to be mailed to employees on June 4, 2007 (see attached Board Exh. 5).  Subsequently, the parties were advised that the Transportation Security Administration had raised concerns, delaying the mailing of ballots for the election.  However, the Board expects that problem to be resolved shortly.  (Complaint ¶¶ 28-29.)

The Union filed the instant Complaint for Declaratory and Injunctive Relief against the Regional Director and the Members of the Board, along with a Request for an Order to Show Cause Why Injunctive Relief Should Not Issue, and a Motion seeking to have this Court enjoin the deauthorization election.  The Board respectfully submits that review of the Board's proceeding and any injunction against the deauthorization election is precluded by well-

established precedent that district courts lack subject matter jurisdiction over such Board

proceedings.

## ARGUMENT

### I.     STANDARD FOR A PRELIMINARY INJUNCTION

"To obtain a preliminary injunction, the moving party must demonstrate either a

combination of probable success on the merits and the possibility of irreparable injury or that

serious questions are raised and the balance of hardships tips sharply in his favor."  Associated

Gen. Contractors of Calif., Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir.

1991).  "Under either formulation of the test, the party seeking the injunction must demonstrate

that it will be exposed to some significant risk of irreparable injury."  Id.  The party seeking the

injunction "must do more than merely allege imminent harm sufficient to establish standing, he

or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive

relief."  Id.

### II.     THE UNION HAS NO LIKELIHOOD OF SUCCESS BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW THE BOARD'S EXERCISE OF DISCRETION TO CONDUCT A DEAUTHORIZATION ELECTION

The Union has no likelihood of success in this case because the Court lacks jurisdiction

over the Union's claims.  The jurisdiction of federal district courts is limited, extending only to

those subjects over which Congress has granted jurisdiction by statute.  Insurance Corp. of

Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982).  Unless a grant of

jurisdiction over a particular case affirmatively appears, a court is presumed to lack jurisdiction.

NTEU v. FLRA, 112 F.3d 402, 404 (9th Cir. 1997).  As shown below, Congress intended to

withhold from the district courts the power to review representation proceedings, including

deauthorization elections, conducted by the Board under Section 9 of the NLRA, 29 U.S.C. § 159 (1998).

### A.  Board Representation Proceedings Are Not Subject to Direct Judicial Review

The Board is vested with primary (if not exclusive) jurisdiction over representation issues arising under Section 9 of the Act, 29 U.S.C. § 159 (1998).  See United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 342 v. Valley Engineers, 975 F.2d 611, 613 (9th Cir. 1992); Minn-Dak Farmers Coop., Employees Org. v. Minn-Dak Farmers Coop., 3 F.3d 1199, 1201 (8th Cir. 1993); Bishop v. NLRB, 502 F.2d 1024, 1027 (5th Cir. 1974).

It is well settled that such representation cases are not subject to district court review or direct appellate review.  See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 481 (1964); NLRB v. IBEW, 308 U.S. 413, 414-15 (1940); American Fed'n of Labor v. NLRB, 308 U.S. 401, 409, 411 (1940); Bishop, 502 F.2d at 1027; Local Union No. 714, Int'l Bhd. of Teamsters v. Madden, 343 F.2d 497, 499 (7th Cir. 1965)(precluding union's claims for district court review of a Section 9(e)(1) determination by the Board).  This is so because proceedings under Section 9 are nonadversarial in nature and do not result in the issuance of "final orders" subject to judicial review under Sections 10(e) and (f) the NLRA, 29 U.S.C. § 160 (e) and (f) (1998).  American Fed'n of Labor, 308 U.S. at 409; UFCW, Local 400 v. NLRB, 694 F.2d 276, 278 (D.C. Cir. 1982) (per curiam); Bishop, 502 F.2d at 1027; Herald Co. v. Vincent, 392 F.2d 354, 356 (2d Cir. 1968).  As the Fifth Circuit has explained:

> Nowhere in the statutory scheme does Congress mention district court review of
> NLRB orders in representation cases, and there is a reason for that profound
> silence.  The underlying purpose of the Act is to maintain industrial peace,
> (citation omitted) and to allow employers and unions to rush into federal district
> court at will to prevent or nullify certification elections would encourage dilatory
> tactics by dissatisfied parties and lead to industrial unrest.  (citation omitted).

7

Such a rule would not only cause the federal courts to set the dockets of the NLRB, but time-consuming review in such cases would strike a blow at the foundations of our finely-tuned system of collective bargaining. For these reasons, Congress has determined that the NLRB, and not the courts, is to be the umpire in representation disputes.

Bishop, 502 F.2d at 1027.

Instead, the NLRA provides limited indirect appellate court review of representation determinations. Such review is provided if and when those determinations serve as the underlying predicate for a final order subsequently issued in a related unfair labor practice proceeding. 29 U.S.C. § 160(e), (f) (1998); see Boire, 376 U.S. at 476-77; American Fed'n of Labor, 308 U.S. at 409.

The Supreme Court has recognized that Congress may so withhold jurisdiction from the federal courts "in the exact degrees and character which to Congress may seem proper for the public good," Lockerty v. Phillips, 319 U.S. 182, 187 (1943) (quotation omitted), and may prescribe an administrative remedy to the exclusion of a judicial one. See Switchmen's Union of N. Am. v. NMB, 320 U.S. 297, 301 (1943). The same 1947 Congress that first enacted the Section 9(e) union-security deauthorization procedure (see infra, p. 12-13), considered and ultimately rejected granting direct judicial review of Section 9 proceedings. See H.R. 3020, 80th Cong., 1st Sess. at 34-36, 42-43 (1947), I. Leg. Hist. LMRA 64-66, 72-73; H.R. Rep. No. 510, 80th Cong., 1st Sess. at 56-57 (1947), I. Leg. Hist. LMRA 560-61. Indeed, the Supreme Court in American Fed'n of Labor recognized that the NLRA's scheme may well fail to provide judicial review for parties affected by a Board representation proceeding. 308 U.S. at 411-12. Nevertheless, the Court expressly noted that any problems posed by this scheme should be raised before Congress and not the courts. Id. at 411.

The Union's attempt to obtain review here impermissibly seeks to bypass this judicially-recognized Congressional intent.  See Bays v. Miller, 524 F.2d 631, 633 (9th Cir. 1975); Chicago Truck Drivers v. NLRB, 599 F.2d 816, 818 (7th Cir. 1979).[3]  For the reasons set forth below, moreover, this matter does not fit within the narrow exceptions to the rule of non-reviewability.

**B.    This Case Does Not Fall Within Any Exception to the Prohibition of District Court Review of Board Representation Proceedings**

1.   The *Leedom* Exception to Nonreviewability is Exceedingly Narrow

The Supreme Court has recognized a very narrow exception to the general rule of nonreviewability of Board representation determinations.  In Leedom v. Kyne, 358 U.S. 184 (1958), the Board directed an election in what it conceded was a mixed bargaining unit of professional and non-professional employees, without first having "a majority of such professional employees vote for inclusion in such unit," as was expressly required by Section 9(b)(1) of the NLRA, 29 U.S.C. § 159(b)(1) (1998).  The Board did not contest that it had acted in excess of its statutory authority; it only argued that, in any event, the district court lacked jurisdiction to entertain the suit.  Leedom, 358 U.S. at 187.

The Supreme Court there ruled that an exception to the rule of no district court jurisdiction arises where the

> suit is not one to "review," in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction.  Rather [the suit] is one

---

[3] Although the Union relied on a general jurisdictional statute, 28 U.S.C. § 1337(a) (Complaint ¶10), that statute is qualified by the more specific jurisdictional limitation contained in the NLRA.  See Whitney Bank v. New Orleans Bank, 379 U.S. 411, 422 (1965); NLRB v. California Horse Racing Board, 940 F.2d 536, 540 n.3 (9th Cir. 1991)("CHRB").  Section 1337 does not provide jurisdiction where, as here, the applicable regulatory statute precludes it.  Board of Trustees of Memorial Hospital of Fremont County v. NLRB, 523 F.2d 845, 846 (10th Cir. 1975).  Thus, Section 1337 will provide the necessary jurisdiction only if Leedom v. Kyne, as discussed below, is found applicable.  See Leedom v. Kyne, 358 U.S. 184, 188 (1958).

> to strike down an order of the Board made in excess of its delegated
> powers and contrary to a specific prohibition in the Act.

Id. at 188.  The Court concluded that, since the professional employee provision of Section 9(b)(1) imposed a "clear and mandatory" statutory obligation on the Board, 358 U.S. at 188, the district court had jurisdiction to set aside the Board's exercise of a power that had been specifically withheld from it by Congress.  Id. at 189.

The Supreme Court subsequently clarified that the Leedom exception to nonreviewability is extremely narrow.  In Boire v. Greyhound, 376 U.S. 473 (1964), the Court refused to find district court jurisdiction to review the Board's joint employer determination made in a representation proceeding.  In so finding, the Supreme Court explained that

> [t]he [Leedom] exception is a narrow one, not to be extended to permit
> plenary district court review of Board orders in certification proceedings
> whenever it can be said that an erroneous assessment of the particular facts
> before the Board has led it to a conclusion which does not comport with
> the law.

Id. at 481; see also Teamsters, Local 690 v. NLRB, 375 F.2d 966, 976 (9th Cir. 1967)(Leedom applies only in "extraordinary circumstance"); CHRB, 940 F.2d at 540 (review of non-final Board orders permitted only in "narrowest" of exceptions); Madden, 343 F.2d at 500 (Section 9(e)(1) determination by the Board did not violate "clear and mandatory provision" of the NLRA); Bishop, 502 F.2d at 1030.[4]

---

[4]  Two other very narrow exceptions to the rule of no review are clearly inapplicable in this case. Here there is no issue "particularly high in the scale of our national interest because of [its] international complexion," McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17 (1963), or a clear and strong showing of a violation of constitutional rights, Teamsters, Local 690 v. NLRB, 375 F.2d 966, 976 (9th Cir. 1967)(potential exception noted in dicta).

Consistent with <u>Boire</u>, the courts have refused to extend their jurisdictional reach to review the Board's representation determinations alleged to have resulted in an error of law, where the Board did not act in violation of a specific statutory command. <u>Physicians Nat'l House Staff Ass'n</u>, 642 F.2d 492 at 496 (quoting <u>Chicago Truck Drivers v. NLRB</u>, 599 F.2d 816, 819 (7th Cir. 1979)). Similarly, jurisdiction does not exist for consideration of alleged arbitrary agency action or an abuse of discretion. <u>See Eisinger v. Federal Labor Relations Authority</u>, 218 F.3d 1097, 1103 n.5 (9th Cir. 2000); <u>Bays</u>, 524 F.2d at 633; <u>Physicians Nat'l House Staff Ass'n</u>, 642 F.2d at 496 (quoting <u>Local 130, Int'l Union of Electrical, Radio and Machine Workers v. McCulloch</u>, 345 F.2d 90, 95 (D.C. Cir. 1965)). Accordingly, "jurisdiction is not conferred on the district courts to consider 'the wisdom of a particular Board policy'" when there is a "'disagreement with the Board on a matter of policy or statutory interpretation.'" <u>Cihacek</u>, 464 F. Supp. at 943 (quoting <u>National Maritime Union v. NLRB</u>, 375 F. Supp. 421, 434 (E.D. Pa.), <u>aff'd</u>, 506 F.2d 1052 (3d Cir. 1974)). Rather, district court jurisdiction can only exist where the Board has violated a clear and mandatory provision of the NLRA.[5]

### 2. There Is No Jurisdiction Under *Leedom* Because The Board Here Did Not Violate Any Clear and Mandatory Statutory Provision

In this case, the Union cannot show that the Board violated a clear and mandatory requirement of the Act. Section 9(e)(1) provides that upon the filing of a petition by "30 per centum or more of the employees in a bargaining unit covered by an agreement between their employer and labor organization made pursuant to section 8(a)(3)" alleging a desire that

---

[5] Contrary to the Union's assertion (<u>see</u> Memorandum at 2), the availability of an alternative statutory review procedure would separately bar direct district court review under <u>Leedom.</u> <u>See Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.</u>, 502 U.S. 32, 43 (1991). In any event, where as here, there is no violation of a clear and mandatory statutory provision, the jurisdictional inquiry ends. <u>See Bays</u>, 524 F.2d at 632-33.

authority to make a union-security agreement be rescinded, the Board "shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer." 29 U.S.C. § 159(e)(1) (1998). Although the Union has failed to state this fact in its papers, the Board's Regional Director is proceeding on a second authorization petition filed after the effective date of the union-security agreement. Moreover, contrary to the Union's argument, the statute places no explicit time limitation upon when the signatures of the thirty percent of employees must be gathered for such a petition. In other words, Section 9(e)(1) does not state in clear and mandatory terms that the showing of interest signatures must be gathered only after a union-security provision goes into effect.

The Board here reasonably found that the language of Section 9(e)(1) is "unclear" on this point and "does not squarely answer the question presented by this case." The Board explained:

> Although it is clear from the statutory language that, <u>when filed</u>, a deauthorization petition must be supported by at least 30 percent of employees "covered by" a contract containing a union-security provision, Section 9(e)(1) is devoid of language as to <u>when</u> the showing of interest must be gathered. The employees in the instant case are "covered by an agreement" containing a union-security clause, and 30 percent of the employees so covered have supported a petition to get rid of that clause. The fact that the 30 percent expressed their desire prior to the coverage does not clearly invalidate their desire.
> . . .
> It is possible either that Congress did not contemplate the question of whether the signatures supporting a showing of interest in a deauthorization petition may predate an effective contract containing a union-security clause, or that Congress did consider the question but left it to the Board to regulate. Either way, the fact of the matter is that the statutory language is inconclusive, and thus it falls to the Board as the agency charged with administering the Act to fill in the statutory gap. In doing so, we are guided by the Act itself, its legislative history, and applicable policy considerations.

(Exh. 2 to Complaint at 2 (citation omitted)).

As the Board noted, in 1947, the Act was amended to add a requirement, designated as Section 9(e)(1), that employees first had to vote to authorize the union to make a union-security

agreement with the employer before the union could do so.  The 1947 amendments also added a

deauthorization procedure, then set out at Section 9(e)(2).  (Exh. 2 to Complaint at 2); see United

States Code, Congressional and Administrative Service, 80th Congress, First Session, 1947,

Congressional Comments at pp. 1156-1157.  Four years later, the Act was amended again to

remove the affirmative authorization requirement at Section 9(e)(1), reword the deauthorization

provision at 9(e)(2), and designate that section as the new Section 9(e)(1).  The Board explained:

> Significantly, in enacting the 1951 amendments, Congress did not express a
> preference for union-security arrangements.  Neither did it choose to return to the
> pre-1947 status, under which there was no Board-mandated deauthorization
> process and the issue of rescinding a union-security provision was left to private
> parties to handle.  Rather, Congress sought to eliminate what it viewed as the
> administrative inefficiencies occasioned by former 9(e)(1)'s authorization
> requirement, while at the same time preserving the right of employees to
> deauthorize an unwanted union-security arrangement.

(Exh. 2 to Complaint at 3).  Although finding this "inconclusive" regarding any requirement for

the timing of securing employee support, the Board reasonably viewed the history as

underscoring "Congress' intent to safeguard the right of employees to deauthorize union

security."  Id.

Moreover, contrary to the Union's argument (Plaintiff's Memorandum at 15), the Board's

refusal to invalidate the showing of interest in this case is consistent with its precedent

construing the requirements of Section 9(e)(1).  In Great Atlantic & Pacific Tea Co., 100 NLRB

1494 (1952), the Board rejected a union's contention that a deauthorization vote should be

prospective only, i.e., that an existing union-security agreement must remain effective for the

remainder of a contract's term.  The Board there found that Congress did not aim to postpone the

employees' will regarding union security.  Id. at 1495.  "[O]nly by holding that an affirmative

deauthorization vote immediately relieves employees of the obligations imposed by an existing

union-security agreement" can the Board "give effect to the basic congressional objective . . . of

not imposing a union-security agreement upon an unwilling majority." Id. at 1497.  The Board

majority here also noted Andor Co., 119 NLRB 925 (1957), where, in refusing to dismiss a

deauthorization petition, the Board relied upon Congress's intent that the 1951 amendments

retain employees' "safety valve" to escape undesired union-security obligations.  Id. at 928.

Taken together, Great Atlantic & Pacific Tea, Andor, and this case, show a consistent

construction of Section 9(e)(1) to protect employees' ability to choose whether to rescind

authorization for a union-security agreement.  The Board here explained, "in the absence of more

specific guidance in either the language of the statute or the legislative history, we consider, as a

matter of policy, what resolution of the issue at hand best effectuates Congress' purpose of

protecting employee free choice," and found such purpose "best effectuated by processing the

instant petition."  (Exh. 2 to Complaint at 3).

  There is no merit to the Union's argument (Plaintiff's Memorandum at 13–15) that the

pending deauthorization election is contrary to Congress's 1951 elimination of the authorization

election, and to the Board's observation in Great Atlantic & Pacific Tea that Congress thereby

intended for unions to have presumptive authority to enter into union-security arrangements.

Here, the Union obviously has already entered into a union-security agreement that is currently

effective.  No election was required for that to occur.  The election soon to take place will be one

where the employees will be voting on whether to escape the agreement, and is premised upon a

petition filed on April 6, 2007, well after the union-security provision took effect.

  In such circumstances, the Board found that it did not make sense to require the Petitioner

to wait for a union-security clause to be in effect prior to gathering the required showing of

employee interest.  The Union had been recognized as the collective-bargaining representative,

and the Petitioner "reasonably believed that a union-security provision was imminent.  [W]aiting

for the parties to execute the contract [to collect the signatures] serves to needlessly - and, from

the perspective of many employees, arbitrarily – delay the employees' right to be relieved of a

union-security provision should the majority so will."  Id. at 4-5.  The Board further found that

the employee signatures here, while pre-dating the contract, nonetheless demonstrated the

employees' substantial desire to vote on the question of union security.

       The Board also reasonably found unconvincing the Regional Director's finding that only

post-contract signatures can be permitted because employees may change their mind about

deauthorization once they know what benefits have been negotiated by the Union.  As the Board

noted, the employees' signing statements made clear that they knew the union-security

agreement was only "proposed."   (Exh. 2 to Complaint at 5.)  "To presume that employees

cannot make an informed choice regarding the idea of a union-security clause before a contract

becomes effective robs employees of the ability to express the position that they do not desire a

union-security clause in any event."  Id.  Even assuming that the contract might affect

employees' views on union security, the actual deauthorization vote here will only be held after a

collective-bargaining agreement became effective, so any ultimate impact of the overall

agreement will be reflected in the deauthorization vote.  Id. at 5.  In short, the Board's decision

falls well within the broad confines of its Section 9 authority.  See NLRB v. Best Products Co.,

Inc., 765 F.2d 903, 908 (9th Cir. 1985) ("[t]he Board has wide discretion to determine

representation matters and questions arising during election proceedings");  NLRB v. Berryfast,

Inc., 741 F.2d 1161, 1163 (9th Cir. 1984); see also NLRB v. A.J. Tower Co., 329 U.S. 324, 330

(1946).

The difference of opinion between the Board majority and dissenting Member Walsh demonstrates that Section 9(e)(1) is hardly a clear and mandatory provision as to this point, and that reasonable minds differ as to its proper interpretation.  Member Walsh argued that the "plain meaning" of Section 9(e)(1) requires that "the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision." (Exh. 2 to Complaint at 6).  He considered the majority's interpretation "unreasonable" because he found "nothing . . . in the text or context of the provision which suggests that employees only need to be covered by a union-security provision at the time the petition is filed."  Id. at 7.  However, the Board majority noted that Member Walsh's "plain meaning" conclusion focused only on a part of the language of Section 9(e)(1) , while the majority examined the section as a whole, including the introductory clause referring to the filing of a petition with the Board.  "Bringing that clause into the analysis," the majority found "that the statutory language is unclear as to whether the showing of interest in support of that petition may be gathered in advance of an agreement containing a union-security clause."  Id. at 2.  Underscoring this lack of statutory clarity is the fact that both the majority and dissent cited the statute's legislative history and to policy concerns favoring their respective conclusions.

The Seventh Circuit's decision in Teamsters v. Madden, 343 F.2d at 500, further supports the conclusion that Section 9(e)(1) is not clear and mandatory as to the collection of employee signatures.  There, like here, a union asserted that the Board's interpretation of Section 9(e)(1) was incorrect.  However, unlike here, the Teamsters in Madden argued that Section 9(e)(1) granted employees the right to revoke the union's authority only as to future union-security provisions, and not to revoke current union-security arrangements (i.e., that Great Atlantic & Pacific Tea was wrong).  Contrary to the Union's contention here (see Plaintiff's Memorandum

---

16

at 13), the <u>Madden</u> court rejected this assertion and found that the district court had no subject

matter jurisdiction because the Board's interpretation of Section 9(e)(1) was not contrary to a

clear and mandatory provision.  343 F.2d at 500.  The Court here, like in <u>Madden</u>, should reject

the Union's request to enjoin the Board's permissible exercise of discretion.

In short, this disagreement over the proper interpretation of Section 9(e)(1) provides no

basis for subject matter jurisdiction in this case.  <u>See</u> <u>Nat'l Maritime Union</u>, 375 F. Supp. at 434.

As explained by the Ninth Circuit in <u>Teamsters, Local 690</u>, 375 F.2d at 971 (quoting

<u>International Ass'n of Tool Craftsmen v. Leedom</u>, 276 F.2d 514, 516 (D.C. Cir. 1960)):

> We need not decide whether we would sustain the Board's view if the question
> were presented to us in an appeal under the judicial review provisions of [Section]
> 10 of the Act. . . .  We need only decide, as we do, that the statutory language
> itself and the legislative history sufficiently support its position to eliminate the
> essential requirement for invoking the District Court's equity jurisdiction, namely,
> a showing that the Board violated a 'clear and mandatory' statutory
> prohibition . . . . (citations omitted)

Accordingly, as set forth above, any disagreement by the Union or this Court with the

Board's interpretation of Section 9(e)(1) does not permit the judicial review sought here.

III.    THE UNION CANNOT SHOW IRREPARABLE INJURY OR THAT ITS
        ALLEGED INJURY OUTWEIGHS THE HARM TO THE BOARD AND
        PUBLIC INTEREST IN PERMITTING EMPLOYEES TO RESCIND A
        UNION-SECURITY AGREEMENT

There is no merit to the Union's assertions of irreparable harm.  As a practical matter, if

the election goes forward and a majority of the eligible unit voters do not vote to rescind union-

security authority, all the employees will remain subject to that contractual requirement and the

only cost to the Union will have been that of participating in the administrative proceeding.

29 U.S.C. § 158(a)(3) (1998).  Such cost is not an injury that will support the grant of an

injunction.  <u>See</u>, <u>e.g.</u>, <u>FTC v. Standard Oil Co.</u>, 449 U.S. 232, 244 (1980); <u>Renegotiation Board

v. Bannercraft Clothing Co., Inc.</u>, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even

17

substantial and unrecoupable cost, does not constitute irreparable injury."); <u>Bakersfield City School Dist. v. Boyer</u>, 610 F.2d 621, 626 (9th Cir. 1979); <u>State of California v. Federal Trade Commission</u>, 549 F.2d 1321, 1323 (9th Cir. 1977).  If, on the other hand, a majority votes to rescind the union-security authority, that result would underscore the reasonableness of the Board's holding here that the 30 percent showing of interest was a sufficient gauge of employee sentiment to prompt an election on this question.

One of the Union's alleged harms rests on the assumption that, if the deauthorization election goes forward, employees will discuss these union-security issues at their work places at the airport in violation of work rules (Plaintiff's Memorandum at 19).  The election, of course, will not require employees to violate their employer's rules.  Indeed, the Union would have the Petitioner start all over again soliciting employee support and then file a new petition for an election, thus causing the same alleged injurious union-security debate the Union currently fears.  Thus, the grant of the Union's requested injunction would then just delay the same expression of employee sentiment and frustrate the Board's exercise of discretion.

It is notable that all of the alleged harms complained of by Plaintiff SEIU Local 790 will be suffered exclusively by a separate organization, SEIU Local 1877 (<u>see</u> Plaintiff's Memorandum at 18-19), which is not a party to this action.  The Plaintiff here has utterly failed to show why an injury to a separate local union, which is not the collective bargaining representative recognized by the Employer, should justify its own ability to obtain an injunction against the Board's proceeding.

The Union also has failed to show that its interest in not participating in the deauthorization election outweighs the harm to the employees who have expressed a desire to be permitted to vote on rescinding union-security authority.  As explained above, Congress intended

for unions to have presumptive authority to enter into union-security arrangements, but only while preserving an escape valve for an unwilling majority covered by such an agreement. An injunction here would clearly frustrate the Board's ability to fulfill Congressional intent and the employees' ability to vote on a petition filed by employees covered by an agreement containing a union-security provision. Thus, the Union's desire to prevent the anticipated election should yield to the substantial public interest expressed by Congress permitting employees to determine whether to rescind a union-security agreement.

Accordingly, in evaluating the "balance of hardships," the greatest hardship would be against the Board and the public interest in maintaining employees' statutory right to rescind a union-security provision.

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Union's request for injunctive relief be denied.


Respectfully submitted,

Dated: May 31, 2007


ERIC G. MOSKOWITZ
Assistant General Counsel
National Labor Relations Board
Special Litigation Branch
1099 14th Street, NW
Washington, DC 20570
Tel: (202) 273-2930
Fax: (202) 273-1799

s/Nancy E. Kessler Platt
NANCY E. KESSLER PLATT
Supervisory Attorney

- and -

19

DAWN L. GOLDSTEIN
Senior Attorney
Tel: (202) 273-2936

OLIVIA GARCIA
Regional Attorney
National Labor Relations Board – Region 20
901 Market Street, Suite 400
San Francisco, CA  94103
Tel:  (415) 356-5151
Fax:  (415) 356-5156

KATHLEEN C. SCHNEIDER No. 174058
Attorney – Region 20
Tel: (415) 356-5157

NLRB'S RESPONSE TO REQUEST FOR ORDER TO SHOW CAUSE AND OPPOSITION TO
PRELIMINARY INJUNCTION – NO. 07-cv-02766-PJH