W. JAMES YOUNG, Esq.
GLENN M. TAUBMAN, Esq. (*Pro Hac Vice*)
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia  22160
(703) 321-8510
FACSIMILE — (703) 321-9319

SCOTT A. WILSON, Esq.
California Bar No. 073187
711 8th Avenue, Suite C
San Diego, California 92101
(619) 234-9011
Facsimile — (619) 234-5853

ATTORNEYS FOR PROSPECTIVE DEFENDANT-INTERVENOR

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH P. NORELLI, Individually, and in his capacity as REGIONAL DIRECTOR, NATIONAL LABOR RELATIONS BOARD, REGION 20; *et al.*,<br><br>    Defendants. | CASE NO. 3:07-cv-2766 PJH<br><br>**PROSPECTIVE DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S REQUEST FOR AN ORDER TO SHOW CAUSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>HEARING DATE:<br>TIME:<br>COURTROOM OF JUDGE HAMILTON, COURTROOM 3, 17TH FLOOR |

COMES NOW Prospective Defendant-Intervenor Stephen J. Burke, Jr. ("Burke"), by his undersigned counsel, and, pursuant to Local Rule 7-3, N.D.CAL., hereby opposes Plaintiff's Motion for a Preliminary Injunction (Clerk's Docket No. 2) and Request for Order to Show Cause (Clerk's Docket No. 6), as follows:

**I.    INTRODUCTION**

Plaintiff Service Employees International Union, Local 790's ("Local 790") Motion for a

1  Preliminary Injunction (Clerk's Docket No. 2) and Request for Order to Show Cause (Clerk's Docket
2  No. 6) must be denied under the Ninth Circuit's traditional standards for granting preliminary
3  injunctions.  **See**, *e.g.*, *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-
4  40 (9TH CIR. 2001); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9TH CIR. 1998); *United States v. Nutri-*
5  *cology, Inc.*, 982 F.2d 1374, 1376 (9TH CIR. 1985).  This is so because Local 790's attack upon the
6  holding of a National Labor Relations Board ("NLRB" or "Board") election has **no** possibility of
7  success on the merits, let alone the "probability" required by the Ninth Circuit.  Moreover, even if the
8  lawsuit had any merit, Local 790 has barely shown that it will suffer an administrative burden from the
9  holding of the requested election, let alone the "possibility of irreparable harm" that the Ninth Circuit
10 requires.  To the contrary, Local 790's lawsuit is frivolous and vexatious, is based upon
11 misrepresentations of fact, and must be expeditiously dismissed as a matter of law so that the NLRB
12 can resume the proper business of proceeding to conduct the requested deauthorization election.

14 **II.   STATEMENT OF FACTS**
15       This case arises out of Local 790's desperate effort to stop the Board from conducting a
16 deauthorization election pursuant to § 9(e) of the National Labor Relations Act ("NLRA").  29 U.S.C.
17 § 159(e).  Under § 9(e), Congress expressly authorizes employees to render unenforceable any forced-
18 unionism or "union security" clause — purporting to require employees to join the union or pay a
19 portion of dues as a condition of continued employment — imposed upon them by the contract
20 negotiated by their collective bargaining representative.  Burke and over 30% of his co-workers at
21 Covenant Aviation Security ("Covenant") petitioned for such an election, now about to be scheduled
22 by the Board, but Local 790 has filed this lawsuit to frustrate those efforts.
23       Burke is one among approximately nine hundred (900) private security screeners employed by
24 Covenant at San Francisco International Airport (SFO).  In early October 2005, Burke and his fellow
25 employees found themselves represented by Local 790 based upon a "card check" and Covenant's
26 "voluntary recognition" of Local 790, without the protection of a secret ballot election.  Burke and at
27 least several hundred Covenant employees do not want to be subject to Local 790's representation,
28

favoring a different union, United Security Screeners Local One ("Local One"), or no union at all.[1]

Faced with Covenant's "voluntary recognition" of a union that Burke and many of his co-workers do not support, these employees exercised their statutory rights under the NLRA by organizing to deauthorize the inevitable compulsory-unionism clause that Local 790 would negotiate with Covenant. Indeed, it was inevitable and obvious that Burke and his colleagues would soon be governed by a contract with a compulsory dues provision.[2]

Burke and his co-workers acted with alacrity to secure their deauthorization election once Local 790 became their representative, beginning to collect signatures for Burke's petition soon after Covenant agreed to "voluntarily recognize" Local 790. It surprised no one in this bargaining unit that Local 790 was demanding from Covenant, and would soon receive, a forced-unionism clause. Thus, the petitions collected in this case clearly stated that the signing employees wish to deauthorize the "*proposed* union security clause." (Complaint, Ex. 2: *Covenant Aviation Security*, 349 NLRB No. 67 (30 March 2007), at 2). The showing of interest petitions were phrased this way precisely so that it would be clear to the NLRB and the employees what was sought, and what was at stake. Indeed, **because** Burke and his fellow employees knew that the forced-unionism clause was not yet in effect, they used this language precisely so that no petition signers would be misled.

Finally, as Regional Director Norelli observed in his 23 March 2006 letter, "the bargaining unit identified in the Petition is large, and the nature of the work requires that employees work 24 hours a day, seven days a week." (349 NLRB No. 67 at 4). The Regional Director thus recognized that it is a logistical nightmare to collect signatures from the employees in this widely diverse unit, who work odd hours in multiple locations throughout SFO. It is for this reason that Burke and his colleagues needed

---

[1] Regional Director Norelli's 23 March 2006, letter dismissing Burke's petition (Complaint, Ex. 1, page 1) mentions that two recent certification elections have occurred in this unit concerning Local One, a rival to Local 790.

[2] As its name indicates, Local 790 is affiliated with Service Employees International Union, an aggressive national union well known for demanding and enforcing forced-unionism clauses, under which employees can and do get fired for refusing to comply with union demands. **See generally** *St. John's Mercy Health System*, 344 NLRB No. 44 (2005), **review denied**, *St. John's Mercy Health Systems v. NLRB*, 436 F.3d 843 (8TH CIR. 2006).

to begin collecting a deauthorization "showing of interest" immediately after the "voluntary recognition" of Local 790 was decreed, in order to make sure that their petition would be ready to be filed on the first possible day after the forced-unionism clause was imposed.

Since Congress enacted § 9(e) of the Act to allow employees to free themselves from forced-dues requirements, employees in such a large and diverse unit cannot wait until **after** the ink on the contract is dry to begin collecting signatures. There exists major logistical difficulties in collecting many hundreds of signatures in this diverse unit. Thus, if employees must wait for the ink to dry on the contract in order to begin collecting signatures, the unpopular forced-unionism clause will inevitably come into effect before employees have the opportunity to file for deauthorization. This is not what Congress intended in enacting § 9(e) of the NLRA. 29 U.S.C. § 159 (e).

## III. STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

To obtain a preliminary injunction in the Ninth Circuit, the movant must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *Mayo v. United States Gov't Printing Office*, 839 F.Supp. 697, 700 (N.D.CAL. 1992), **aff'd**, 9 F.3d 1450 (9TH CIR. 1993); *Senate of State of California v. Mosbacher*, 968 F.2d 974, 977 (9TH CIR. 1992) (preliminary injunction standard); **see also** *Patterson v. Anchorage School District*, 145 LRRM (BNA) 2932 (D.AK. 1994) (granting a temporary restraining order prohibiting termination of non-paying non-members because "fair share fee" procedures were likely to be held unlawful); *cf. Prescott v. County of El Dorado*, 915 F.Supp. 1080, 1084-92 (E.D.CAL. 1996) (preliminary injunction granted against likely unlawful procedures regarding "fair share fee" seizures); *Lucid v. City of San Francisco*, 136 LRRM (BNA) 2877, 2879-81 (N.D.CAL. 1991) (same). Local 790's request is notable for the fact that it demonstrates **none** of the requirements for entry of preliminary injunctive relief.

## IV. STATEMENT OF THE ISSUE PRESENTED

Because of certain factual misrepresentations in Local 790's Complaint (Clerk's Docket No. 1), Motion (Clerk's Docket No. 3), and Request (Clerk's Docket No. 6), it is important that the single

legal issue herein be framed properly.  As the Board's opinion (349 NLRB No. 67 at 1) makes clear, the sole legal issue **in this case** is whether the 30% "showing of interest" needed to support a deauthorization election under 29 U.S.C. § 159(e) may predate the execution of the contract containing a forced-unionism provision.

Conversely, this case has nothing to do with the question of whether the original petition filed by Burke was improperly filed prior to the execution of the contract containing a forced-unionism provision.[3]  In its Motion, Local 790 frequently insinuates that the petition was filed prematurely under § 159(e).  However, what Local 790 studiously omits to state is that the original Petition — filed on 11 January 2006 in Case No. 20-UD-445 — has been voluntarily dismissed, and the actual election on which the Board is proceeding is designated as Case No. 20-UD-447, which was filed on 6 April 2007, well after the forced–unionism clause came into effect.  **See** Exhibit 1 hereto.  On 9 May 2007, Regional Director Norelli directed an election in Case No. 20-UD-447, the timely-filed petition, and on 11 May 2007, he accepted the withdrawal of Case No. 20-UD-445, the arguably premature petition.

Thus, contrary to Local 790's misrepresentation of fact, Clerk's Docket No. 6 at 2, there is no issue in this case about the Board proceeding to an election on a premature petition.  That issue has been rectified by the subsequent filing of an indisputably timely petition.  Local 790 is well aware of these facts, but persists in falsely insinuating to the Court that the NLRB is proceeding to process unlawfully a premature petition.  **See** Exs. 1-4.

---

[3] In Regional Director Norelli's 23 March 2006, letter dismissing Burke's deauthorization petition (Complaint, Ex. 1 at 2-3 and n.7), it was pointed out that the Deauthorization Petition filed on 11 January 2006, in Case No. 20-UD-445, was arguably premature by two days, but that this flaw could easily be remedied by filing a new petition.  Burke relied upon the Board's decision, 349 NLRB No. 67 at page 1, n.1, to procure this simple fix.  Burke filed a new petition on 6 April 2007, and the Board is now proceeding to an election on **that** indisputably timely petition in Case No. 20-UD-447.  **See** Exs. 1-3, attached hereto.  Burke is unsure why Local 790 persists in misrepresenting the factual record by seeking a preliminary injunction against the holding of a deauthorization in Case No. 20-UD-445, as that case no longer exists.  **See** Ex. 4; **compare** Clerk's Docket No. 6 at 2 ("It is undisputed that **the petition at issue** was filed on January 11, 2006....") (emphasis added).

## V. ARGUMENT

### A. Plaintiff Cannot Demonstrate A Probability Of Success On The Merits.

In this action, Local 790 seeks to overturn and enjoin a Board decision in favor of Burke, who with his fellow employees seeks to "deauthorize" an unpopular forced-unionism clause in their collective bargaining agreement. *Covenant Aviation Security, LLC*, 349 NLRB No. 67 (30 March 2007); **see also** 29 U.S.C. § 159(e). In *Covenant Aviation Security*, the Board agreed that the signatures on Burke's "30% showing of interest" petition were valid, and ordered Region 20 in San Francisco to process the petition and hold the requested election. Local 790 is dissatisfied with the Board's decision and/or fears the outcome of an election, and seeks to enjoin the election which the Board duly ordered on Burke's deauthorization petition. In order to prevail on its claim, Local 790 must prove that the NLRB acted *ultra vires*, in clear violation of its statutory authority, by ordering Burke's deauthorization election to proceed. *Leedom v. Kyne*, 358 U.S. 184 (1958); **see also** *Metal & Steel Chauffeurs, Teamsters Local 714 v. Madden*, 343 F.2d 497 (7TH CIR. 1965) (federal court has no jurisdiction to enjoin a deauthorization election); *Bays v. Miller*, 524 F.2d 631 (9TH CIR. 1975) (request for injunction to bar holding of an NLRB election denied). Local 790 cannot possibly meet this burden under the controlling decisions.

For all practical purposes, the game is "up" for Local 790 on the question of its probability of success on the merits by virtue of its own Complaint, which confesses that "this is a matter of 'first impression' involving statutory interpretation of a significant provision of the [NLRA], 29 U.S.C. § 159(e)(1)...." Clerk's Docket No. 1, ¶ 38. Local 790 fails to explain how it is possible to satisfy this Circuit's required showing of "probable success on the merits" or "that serious questions are raised" in a question of first impression. Moreover, it is black-letter law that, even where a question of interpretation of the NLRA is legitimately before a court, the court must defer to the Board's reasonable interpretation of the statutory text. *American Hospital Ass'n v. NLRB*, 499 U.S. 606, 614 (1991); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council*, 485 U.S. 568, 574 (1988); **see also** *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

As the Board explained in its carefully reasoned decision, 349 NLRB No. 67 at 1, its

1 construction of § 9(e) of the NLRA, 29 U.S.C. § 159(e), is eminently fair and reasonable.  In no way
2 can that construction of the statute's "30% showing of interest" requirement be considered to be
3 "flouting of a clear statutory command." *Teamsters Local 690 v. NLRB*, 375 F.2d 966, 971 (9TH CIR.
4 1967); *Madden*, 343 F.2d at 499-500.

As the Board's opinion makes clear (349 NLRB No. 67 at 1), the sole legal issue in this case is whether the 30% "showing of interest" needed to support a deauthorization election under 29 U.S.C. § 159(e) may predate the execution of the contract containing the "union security" provision.  Since the statute is silent about that specific question, the Board is free to interpret the statute as it sees fit, and it violates no "clear statutory mandate" by simply construing the silent statute in a way that effectuates employees' right to hold a secret ballot election.

### B. Plaintiff Cannot Demonstrate The Possibility Of Irreparable Harm.

Interestingly, Local 790 leaves for last, Clerk's Docket No. 3 at 18-20, its argument addressing the question of irreparable harm, as well it might, since the "harm" alleged by the union is not "irreparable" by any stretch of the imagination, and makes almost no pretense at an obligation to try to be irreparable harm.  Indeed, Local 790's suggestion that what it faces — an election — is "irreparable" only in the sense that Congress intended it to be, *i.e.*, that the Board itself is the final authority as to the timing of the showing of interest necessary for the conduct of elections.

Local 790's suggestion of irreparable harm is, of course, absurd.  To that end, it suggests only that it will — unless enjoined — be forced to expend money, time, and resources to persuade employees that it should retain the authority to compel their financial support of its activities. Specifically, according to the papers filed by Local 790, a different union, "Local 1877 will be forced to divert substantial resources and personnel," and such expenditures "would have a profound impact on the operations of Local 1877 and employees it represents at [SFO]." Clerk's Docket No. 3 at 18. According to Local 790, "There would be no means by which to recover the tremendous expense, nor to secure compensation for the severe administrative burdens resulting from having to assign a large

1. number of Local 1877 staff to an election campaign."[4]

In short, Local 790 — or Local 1877 — complains because it would have to spend money and time to campaign in an election. How this economic harm and choice among competing resources is "irreparable" harm, or much harm at all,[5] is unsupported by any citation to any authority whatsoever, and merely demonstrates the absurdity of Local 790's instant efforts. It is, however, contradicted by numerous authorities. *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (cost of participating in administrative hearing does not constitute irreparable harm necessary to sustain preliminary injunction); *Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Bakersfield City School Dist. v. Boyer*, 610 F.2d 621, 626 (9TH CIR. 1979); *State of California v. Federal Trade Commission*, 549 F.2d 1321, 1323 (9TH CIR. 1977); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9TH CIR. 1991) ("economic injury alone does not support a finding of irreparable harm ..."); *Acierno v. New Castle County*, 40 F.3d 645, 653 (3D CIR. 1994) 653 (economic loss, without more, does not constitute irreparable harm). Indeed, it is **Burke** and other bargaining unit employees who will suffer irreparable harm if the injunction is granted, since their exercise of their statutorily protected rights will be frustrated by entry of the requested relief. *NLRB v. Albert Luit & Co.*, 597 F.2d 681, 686 (9TH CIR. 1979) (deauthorization is only effective when the NLRB certifies the result of the election; before then, employees must continue to pay dues); *cf. Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 925, 938 (9TH CIR. 1987)

---

[4] Indeed, the fact that it is another SEIU local which will "be forced to divert substantial resources and personnel" raises serious questions as to whether Local 790 is even the proper party to raise this argument, **see** Clerk's Docket No. 14 at 18, and/or whether its claims fail for failure to join an indispensable party. Rule 19, FED.R.CIV.P.

[5] In essence, Local 790 complains because of the economic decisionmaking that business, and labor unions, for that matter, must make among competing priorities on a daily basis. What Local 790 doesn't mention is that it has enormous affiliate resources upon which it might rely for assistance. As the Supreme Court recognized in *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 523 (1991), unions can charge nonmembers for monies paid to affiliates even though no benefit was derived by the nonmember's bargaining unit, because the "essence of the affiliation relationship is the notion that the parent will bring to bear its often considerable economic, political, and informational resources when the local is in need of them."

(in Title VII action, allegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss).

### C. No "Serious Questions" Are Raised, As Plaintiff's Claim Borders On The Frivolous.

Neither does Local 790 manage to raise even serious questions as to the merits of its claim. Indeed, one searches Local 790's legal argument in vain for citation to even a single case in which a court has enjoined the Board from conducting an election. To the contrary, though, virtually all of the post-*Leedom* cases cited in Local 790's Memorandum are cases in which such relief was denied, *Bays*, 524 F.2d at 634 (affirming dismissal for want of jurisdiction); *Madden*, 343 F.2d at 500 (same); *Teamsters Local 690*, 375 F.2d at 977 (same), or where the grant of such relief was reversed on appeal. *Boire v. Greyhound*, 376 U.S. 473, 481-82 (1964) (reversing grant of injunction); *Boire v. Miami Herald Publishing Co.*, 343 F.2d 17, 25 (5TH CIR. 1965) (same).

### D. The Balance Of Hardships Tips Decisively Against Local 790, And Decisively In Favor Of The Employees Whose Right To Free Choice Will Be Denied By Entry Of The Requested Relief.

Another element of the Ninth Circuit's standards that Local 790 does not even approach satisfying is whether "the balancing of the hardships favors entry of the requested relief." Indeed, Local 790's Memorandum makes clear that the protection of the rights of third parties — *i.e.*, Burke and other employees of Covenant who will be denied their statutory right to free choice — decidedly tips in their favor. As opposed to these employees' clear statutory right to hold an election under § 159(e), Local 790 offers little more than its mere economic interests in extracting forced dues from employees who want to have nothing to do with it. Moreover, while for the employees their right to free expression is implicated by the agency shop, *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 305 (1986), the union possesses no interest in the arrangement of comparable import. For the union, in fact, it is "only money." *Acierno*, 40 F.3d at 653 (economic loss, without more, does not constitute irreparable harm). No matter what happens in the deauthorization election, Local 790 will remain free to collect funds for its operations from its voluntary members. Entry of the requested injunctive relief

is therefore inappropriate.[6]

### E. The Public Interest Favors Denial Of The Requested Relief.

The Supreme Court has long made clear that the underlying policy of the NLRA is one favoring voluntary unionism. *Pattern Makers League v. NLRB*, 473 U.S. 95, 104 (1985). With this policy in mind, it strains credulity for Local 790 to suggest that there is any public interest which is served by denying employees their free choice to conduct an election over the fate of the forced-unionism clause adopted by Local 790 and the employer in their collective bargaining agreement.

### F. If The Requested Relief Is Granted, Plaintiff Should Post Security Equal To All Union Dues And/Or Agency Fees Collected During The Life Of The Injunction.

Rule 65(c), FED.R.CIV.P., imposes an unambiguous requirement that "security" be posted before an injunction may be entered. In the Ninth Circuit, the trial court has discretion to determine the amount of the bond. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9TH CIR. 1999).

Here, since Local 790 seeks an injunction in order to delay a deauthorization election and keep its forced-dues spigot open, the union should have to deposit into the Court's registry all dues collected during the life of the injunction. Thus, if the injunction is dissolved, the union will not be unjustly enriched by dues and/or fee collections which would have been deauthorized but for the injunction.

## IV. CONCLUSION

Local 790's request for an injunction under these circumstances is not unprecedented, but obtaining one would be unprecedented, for not a single authority cited by the union stands for the proposition that an injunction may be entered in these circumstances. Therefore, for the reasons stated herein and at oral argument, Defendant-Intervenor respectfully submits that Plaintiff's Motion for a Preliminary Injunction be DENIED.

---

[6] Based upon the Supreme Court's discussion of "the essence of the affiliation relationship," *Lehnert*, 500 U.S. at 523; **see** fn. 6, *supra*, Local 790's protestations about the "poor, put-upon little local union" are empty, at best.

DATED: 1 June 2007

Respectfully submitted,

/s/ W. James Young

W. JAMES YOUNG, Esq.
GLENN M. TAUBMAN, Esq. (*Pro Hac Vice*)
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia  22160
(703) 321-8510
FACSIMILE — (703) 321-9319

SCOTT A. WILSON, Esq.
California Bar No. 073187
711 8th Avenue, Suite C
San Diego, California 92101
(619) 234-9011
Facsimile — (619) 234-5853

ATTORNEYS FOR PROSPECTIVE DEFENDANT-INTERVENOR

H:\WP\California Cases\Burke.CA\Preliminary Injunction\Opposition.wpd
Friday, 1 June  2007, 13:43:32 PM

### CERTIFICATE OF SERVICE

I, W. James Young, counsel for Prospective Defendant-Intervenor, hereby certify that I electronically filed with the Clerk of Court the foregoing **Defendant-Intervenor's Response to Plaintiff's Request for an Order to Show Cause and Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction,** using the CM/ECF system which will send notification of such filing to Defendants' counsel, this 1st day of June, 2007.

                                                   /s/ W. James Young
                                                   W. JAMES YOUNG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28