

ERIC G. MOSKOWITZ
NANCY E. KESSLER PLATT
DAWN L. GOLDSTEIN
National Labor Relations Board
1099 14th Street, NW, Suite 8600
Washington, DC 20570
Telephone: 202 273-2930
Facsimile: 202 273-1799
Email: Eric.Moskowitz@nlrb.gov
Email: Nancy.Platt@nlrb.gov
Email: Dawn.Goldstein@nlrb.gov

OLIVIA GARCIA
KATHLEEN C. SCHNEIDER, Bar No. 174058
NLRB, Region 20
901 Market Street, Suite 400
San Francisco, CA 94103-1735
Telephone: 415 356-5130
Facsimile: 415 356-5156
Email: Olivia.Garcia@nlrb.gov
Email: Kathleen.Schneider@nlrb.gov

Counsel for Defendants Norelli, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, Local 790,<br><br>                    Plaintiff,<br><br>              v.<br><br>JOSEPH NORELLI, Regional Director of National Labor Relations Board, Region 20, et al.,<br><br>                    Defendants. | NATIONAL LABOR RELATIONS BOARD'S MOTION TO DISMISS COMPLAINT<br><br>No. 07-cv-02766-PJH<br><br>Date: June 27, 2007<br><br>Time: 9:00 a.m.<br><br>Judge: Hon. Phyllis J. Hamilton<br><br>Courtroom: #3, 17th Floor |

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ...................................................................................................1

RELEVANT STATUTORY PROVISIONS ............................................................1

FACTUAL BACKGROUND ..................................................................................2

ARGUMENT ...........................................................................................................6

    THIS COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW THE
    BOARD'S EXERCISE OF DISCRETION TO CONDUCT A DEAUTHORIZATION
    ELECTION ............................................................................................................6

  A.   Board Representation Proceedings are Not Subject to Direct Judicial Review ...............7

  B.  This Case Does Not Fall Within Any Exception to the Prohibition of District Court
      Review of Board Representation Proceedings ....................................................9

      1.  The Leedom Exception to Nonreviewability is Exceedingly Narrow........................9

      2.  There is no Jurisdiction Under Leedom Because the Board Here Did Not
           Violate Any Clear and Mandatory Statutory Provision ................................11

CONCLUSION.......................................................................................................17

1

2

# TABLE OF AUTHORITIES

3

**Cases:**                                                                                    **Page(s)**

4

<u>Albert Van Luit & Co.</u>, 234 NLRB 1087 (1978) ........................................................... 6

5

<u>American Federation of Labor v. NLRB</u>, 308 U.S. 401 (1940) .................................. 7,8

6

<u>Andor Co.</u>, 119 NLRB 925 (1957) ............................................................................. 14

7

<u>Bays v. Miller</u>, 524 F.2d 631 (9th Cir. 1975) ......................................................... 9,11

8

<u>Bishop v. NLRB</u>, 502 F.2d 1024 (5th Cir. 1974) ................................................... 7,10

9

<u>Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.</u>,
    502 U.S. 32 (1991) .............................................................................................. 11

10

<u>Board of Trustees of Memorial Hospital of Fremont County v. NLRB</u>, 523 F.2d 845
    (10th Cir. 1975) ................................................................................................... 9

11

12

<u>Boire v. Greyhound Corp.</u>, 376 U.S. 473 (1964) ............................................... passim

13

<u>Chicago Truck Drivers v. NLRB</u>, 599 F.2d 816 (7th Cir. 1979) ............................ 9,11

14

<u>Cihacek v. NLRB</u>, 464 F. Supp. 940 (D. Neb. 1979) .................................................. 11

15

<u>Covenant Aviation Security, LLC</u>, 349 NLRB No. 67 (March 30, 2007) .............. passim

16

<u>Eisinger v. Federal Labor Relations Authority</u>, 218 F.3d 1097 (9th Cir. 2000) ........ 11

17

<u>Great Atlantic & Pacific Tea Co.</u>, 100 N.L.R.B. 1494 (1952) ......................... 13,14,17

18

<u>Herald Co. v. Vincent</u>, 392 F.2d 354 (2d Cir. 1968) ................................................... 7

19

<u>Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>,
    456 U.S. 694 (1982) .............................................................................................. 6

20

21

<u>International Ass'n of Tool Craftsmen v. Leedom</u>, 276 F.2d 514 (D.C. Cir. 1960) .......... 17

22

<u>Lee v. City of Los Angeles</u>, 250 F.3d 668 (9th Cir. 2001) .......................................... 5

23

<u>Leedom v. Kyne</u>, 358 U.S. 184 (1958) ....................................................... 1,9,10,11

24

<u>Local 130, International Union of Electrical, Radio and Machine Workers v. McCulloch</u>,
    345 F.2d 90 (D.C. Cir. 1965) .............................................................................. 11

25

**Cases--Cont'd:**                                                                                            **Page(s)**

Local Union No. 714, International Brotherhood of Teamsters v. Madden, 343 F.2d 497
    (7th Cir. 1965)..........................................................................................................passim

Lockerty v. Phillips, 319 U.S. 182 (1943) ...........................................................................8

McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10 (1963) ..................10

Minn-Dak Farmers Co-op., Employees Organization v. Minn-Dak Farmers Co-op.,
    3 F.3d 1199 (8th Cir. 1993) ......................................................................................7

NLRB v. A.J. Tower Co., 329 U.S. 324 (1946).....................................................................16

NLRB v. Berryfast, Inc., 741 F.2d 1161 (9th Cir. 1984).......................................................15

NLRB v. Best Products Co., Inc., 765 F.2d 903 (9th Cir. 1985).............................................15

NLRB v. California Horse Racing Board, 940 F.2d 536 (9th Cir. 1991)...................................9,2
NLRB v. General Motors Corp., 373 U.S. 734 (1963) ............................................................1

NLRB v. Gissel Packing Co., 395 U.S. 575 (1969).................................................................3

NLRB v. IBEW, 308 U.S. 413 (1940)....................................................................................7

NTEU v. FLRA, 112 F.3d 402 (9th Cir. 1997) ......................................................................6

National Maritime Union v. NLRB, 375 F. Supp. 421 (E.D. Pa.), aff'd,
    506 F.2d 1052 (3d Cir. 1974).............................................................................11,17

Physicians Nat'l House Staff Ass'n v. Fanning, 642 F.2d 492 (D.C. Cir. 1980) .......................11

Switchmen's Union of N. America v. NMB, 320 U.S. 297 (1943) .............................................8

Teamsters Local 25 (Tech Weld Corp.), 220 N.L.R.B. 76 (1975) ..............................................3

Teamsters, Local 690 v. NLRB, 375 F.2d 966 (9th Cir. 1967) ..........................................10,17

Transmission Agency of Northern California v. Sierra Pacific Power Co.,
    295 F.3d 918 (9th Cir. 2002) ....................................................................................5

UFCW, Local 400 v. NLRB, 694 F.2d 276 (D.C. Cir. 1982)....................................................7

United Association of Journeymen and Apprentices of the Plumbing and Pipefitting
    Industry, Local 342 v. Valley Engineers, 975 F.2d 611 (9th Cir. 1992) ..............................7

**Cases--Cont'd:**                                                                    **Page(s)**

<u>Whitney Nat. Bank v. Bank of New Orleans</u>, 379 U.S. 411 (1965) ............................. 9

**Statutes:**

National Labor Relations Act, as amended (29 U.S.C. § 151, *et seq.*):
    § 8(a)(3) (29 U.S.C. § 158(a)(3)) .................................................. 1,2,12
    § 9 (29 U.S.C. § 159) ..................................................................... 7
    § 9(b)(1) (29 U.S.C. § 159(b)(1)) ............................................... 9,10
    § 9(e)(1) (29 U.S.C. § 159(e)(1)) ................................................ passim
    § 10(e) (29 U.S.C. § 160(e)) ........................................................ 7,8
    § 10(f) (29 U.S.C. § 160(f)) ......................................................... 7,8
    28 U.S.C. § 1337(a) ...................................................................... 9

**Legislative Materials:**

    H.R. 3020, 80th Cong., 1st Sess. (1947) ....................................... 8
    H.R. Rep. No. 510, 80th Cong., 1st Sess. at 56-57 (1947) .................. 8

**Administrative Materials:**

  National Labor Relations Board Rules and Regulations
    29 C.F.R. §102.85 ...................................................................... 3

  NLRB Casehandling Manual Representation Proceedings (Part Two)
  (GPO 1989):
    §11506.5 ................................................................................... 3

**Miscellaneous:**

  Federal Rules of Evidence
    Rule 201 ................................................................................... 5

# INTRODUCTION

Defendants Joseph Norelli, Regional Director for Region 20 of the National Labor Relations Board and the individual Members of the National Labor Relations Board (collectively, "the Board") respectfully submit this Motion to Dismiss the Complaint filed by Plaintiff Service Employees International Union, Local 790 ("the Union" or "SEIU Local 790")(Docket No. 1).  Accompanying the instant Motion, is a Stipulation to Shorten Time, in order that the Board's Motion to Dismiss may be heard and decided together with the Union's Motion for Preliminary Injunction (Docket No. 2).  As demonstrated below, this Court lacks subject matter jurisdiction to review or enjoin the Board's exercise of its discretion pursuant to Section 9(e)(1) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 159(e)(1) (1998), to conduct an election for employees to consider deauthorizing a union-security agreement.  This case is no exception to the general rule barring judicial review of NLRA representation proceedings because the Union cannot show, as it must, that the Board violated a clear and mandatory provision of the NLRA.  Accordingly, the Complaint should be dismissed.  See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 481 (1964); Leedom v. Kyne, 358 U.S. 184, 190 (1958).[1]

# RELEVANT STATUTORY PROVISIONS

A "union-security" agreement is permitted under the first proviso to Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3) (1998).  This statutory provision generally allows employers and unions to enter into agreements requiring employees in a bargaining unit to obtain and retain "membership" in the union beginning on or after the thirtieth day following entry on duty.  Such

---

[1] This argument also is presented in the Board's Response to Plaintiff's Request for Order to Show Cause and in Opposition to Preliminary Injunction ("Board's Response") (Docket No. 14). For the Court's convenience, it is repeated here.

union "membership" requires only the payment of initiation fees and periodic dues.  NLRB v. General Motors Corp., 373 U.S. 734, 742 (1963).  Significantly, Section 8(a)(3) also provides that this permission to enter into union-security agreements is revoked if, following an election conducted pursuant to Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1) (1998), the Board certifies that a majority of the unit of employees voted to rescind the authority to make such an agreement.  Section 9(e)(1) in turn provides:

> Upon the filing with the Board, by 30 per centum or more of the employees in a bargaining unit covered by an agreement between their employer and labor organization made pursuant to section 8(a)(3), of a petition alleging they desire that such authorization be rescinded, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

As set forth below, the instant case concerns the Board's exercise of discretion to conduct a "deauthorization" election pursuant to this provision.

## FACTUAL BACKGROUND

In 2005, the Union and Covenant Aviation Security, LLC ("the Employer") entered into a collective-bargaining relationship for employees working at the San Francisco Airport.  More specifically, on September 30, 2005, a "card check" conducted by a panel of neutrals determined that a majority of the employees of the Employer had designated the Union as their representative for collective bargaining (Verified Complaint for Declaratory and Injunctive Relief ("Complaint")(Docket No. 1) ¶ 12).  Accordingly, the Employer recognized the Union as the bargaining representative (Complaint ¶ 13).[2]  After negotiations, the Union and the Employer

---

[2] A "card check" is a voluntary process by which an employer agrees to recognize a union based upon the majority of its employees signing "authorization cards."  "Authorization cards" are signed and dated by the employees, and explicitly authorize the union to represent the signer in collective bargaining.  If an employer agrees to such a process, a union can lawfully gain

reached tentative agreement on the terms of a collective-bargaining agreement, including a provision for union-security (Exh. 2 to Complaint at 1-2). The Union disclosed those proposed terms to employees on December 28, 2005, and shortly thereafter, employees voted to ratify the agreement (Exh. 2 to Complaint at 1-2). The Union signed the contract on January 12, 2006, and the Employer signed it the next day. By its terms, the contract is effective from January 1, 2006, until December 31, 2008. (Exh. 1 to Complaint at 2.) However, under the NLRA, a union-security clause cannot be made retroactive. See Teamsters Local 25 (Tech Weld Corp.), 220 N.L.R.B. 76, 77 (1975). Thus, that term did not take effect until the Employer signed the contract on January 13, 2006 (Exh. 1 to Complaint at 2).

Two days before the collective-bargaining agreement was fully executed, employee Stephen J. Burke, Jr. filed with Region 20 of the Board, pursuant to Section 9(e)(1) of the Act, a petition to rescind the authorization of the Union and Employer to make a union-security agreement (Board Case No. 20-UD-445). (Complaint ¶ 17.)

On March 23, 2006, the Regional Director for Region 20 issued an order dismissing the deauthorization petition, because both the filing of the actual petition and the petitioner's securing of the required employee signatures demonstrating the thirty percent "showing of interest" pre-dated the effective date of the union-security agreement (Exh. 1 to Complaint at 2).[3] The Region's investigation disclosed that almost all of the signatures were gathered prior to the

recognition without a formal NLRB election. See NLRB v. Gissel Packing Co., 395 U.S. 575, 595-600 (1969).

[3] The "showing of interest" in this case was the submission of employee signatures to the Regional Director in support of the deauthorization petition. Under Board procedure, after such signatures are submitted, the Region investigates the signatures' authenticity and relevance. See Board's Rules and Regulations § 102.85, 29 C.F.R. § 102.85 (1961); NLRB Casehandling Manual Part Two-Representation Proceedings, §11506.5 (available at http://www.nlrb.gov/publications/).

contract ratification vote, and all of them pre-dated the execution of the contract on January 13, 2006.  (Id.)  In the Regional Director's view, under Section 9(e)(1), the showing of interest in favor of deauthorization had to be secured from the employees in the context of an existing, rather than a prospective, contract containing a union-security clause.  Significantly, as to the separate premature filing of the actual petition, the Regional Director noted that such deficiency, standing alone, could easily be remedied by filing a second timely petition.  (Exh. 1 to Complaint at 2-3.)

Petitioner Stephen Burke filed a Request for Review of the Regional Director's decision with the Board.  The Petitioner argued that the Act contains no restrictions relating to the timing of the signatures supporting the requisite showing of interest and that, as a matter of policy, employees should not have to wait until after a contract's execution to begin the lengthy deauthorization process.  (Exh. 2 to Complaint at 1.)

On March 30, 2007, the Board (Chairman Battista and Member Kirsanow, Member Walsh dissenting) issued its Decision on Review and Order, reinstating the deauthorization petition and remanding the case to the Regional Director for further appropriate action. (Covenant Aviation Security, LLC, 349 NLRB No. 67, p. 1 (March 30, 2007)(Exh. 2 to Complaint)).  The Board found that the timing of the employee signatures supporting the showing of interest did not render the deauthorization petition invalid.  The Board reasoned that "[r]equiring the Petitioner to have waited until after a contract containing a union-security provision came into effect before obtaining signatures . . . impermissibly delayed the effectuation of employees' statutory right to rescind the effect of a union-security clause."  (Exh. 2 to Complaint at 2.)  Although the Board agreed with the Regional Director that the deauthorization petition should have been filed only after the union-security provision became effective, the

Board also noted that the Regional Director found that such infirmity could be remedied by refiling the petition and that no party requested review of this issue.  (Exh. 2 to Complaint at 1 n.1, 2-3.)

Subsequently, on April 6, 2007, the petitioner filed a new deauthorization petition with Region 20 of the Board, Board Case No. 20-UD-447, seeking an election to rescind the current union-security agreement.  (Board Exh. 1 to Board's Response.)[4]  On May 1, 2007, the Regional Director issued and served on the parties an Order to Show Cause regarding conducting an election by mail, also enclosing the new deauthorization petition, which had been amended to reflect the proper local union.  The amended petition was served on all parties, including the Union (Board Exhs. 2 and 3 to Board's Response).  The Union responded to the Order to Show Cause on May 8, alleging that the Board proceeding was unlawful and in excess of the Board's authority (Board Exh. 4 to Board's Response).  The next day, the Regional Director issued a Direction of Election upon this new petition, ordering that a deauthorization election be held by mail, with ballots to be mailed to employees on June 4, 2007 (Board Exh. 5 to Board's Response).  Subsequently, the parties were advised that the Transportation Security Administration had raised concerns, delaying the mailing of ballots for the election.  However, these concerns were resolved, and the Board issued a new Direction of Election on June 1, 2007,

---

[4] Pursuant to Federal Rule of Evidence 201, the Board requests that this Court take judicial notice of the exhibits filed both with this Motion and with the Board's Response.  The exhibits are copies of documents from the administrative record of the Board proceedings in this case, and thus are matters in the public record.  See Transmission Agency of Northern California v. Sierra Pacific Power Co., 295 F.3d 918, 924 n.3 (9th Cir. 2002).  Moreover, this Court may take such notice of these documents without converting the Board's Motion to Dismiss into a motion for summary judgment.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

stating that the Region would mail the ballots to employees on June 22, 2007 and count the

received ballots on July 9, 2007.  (See attached Board Exh. 6.)[5]

Meanwhile, on May 25, 2007, the Union filed the instant Complaint for Declaratory and

Injunctive Relief (Docket No. 1) against the Regional Director and the Members of the Board,

along with a Request for an Order to Show Cause Why Injunctive Relief Should Not Issue

(Docket No. 6), and a Motion seeking to have this Court enjoin the deauthorization election

(Docket No. 2).  On May 31, 2007, the Board filed its Response to the Request for an Order to

Show Cause and its Opposition to the motion for injunctive relief (Docket No. 14).  On June 1,

2007, District Judge Hamilton issued an Order to Show Cause setting hearing on the motion for

injunctive relief on June 27, 2007 (Docket No. 18).  The Board respectfully submits that this case

should be dismissed because review of the Board's proceeding is precluded by well-established

precedent that district courts lack subject matter jurisdiction over such Board proceedings.

**ARGUMENT**

THIS COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW THE
BOARD'S EXERCISE OF DISCRETION TO CONDUCT A DEAUTHORIZATION
ELECTION

The jurisdiction of federal district courts is limited, extending only to those subjects over

which Congress has granted jurisdiction by statute.  Insurance Corp. of Ireland, Ltd. v.

Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982).  Unless a grant of jurisdiction

over a particular case affirmatively appears, a court is presumed to lack jurisdiction.  NTEU v.

FLRA, 112 F.3d 402, 404 (9th Cir. 1997).  As shown below, Congress intended to withhold from

_____

[5] Under the NLRA, for most employees there is no possible change to the union-security
agreement from the deauthorization proceeding until after the Board resolves any objections filed
by the parties to the conduct of the election and certifies the election results.  See Albert Van
Luit & Co., 234 N.L.R.B. 1087, 1087-88 (1978).

the district courts the power to review representation proceedings, including deauthorization elections, conducted by the Board under Section 9 of the NLRA, 29 U.S.C. § 159 (1998).

### A.  Board Representation Proceedings Are Not Subject to Direct Judicial Review

The Board is vested with primary (if not exclusive) jurisdiction over representation issues arising under Section 9 of the Act, 29 U.S.C. § 159 (1998).  See United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 342 v. Valley Engineers, 975 F.2d 611, 613 (9th Cir. 1992); Minn-Dak Farmers Coop., Employees Org. v. Minn-Dak Farmers Coop., 3 F.3d 1199, 1201 (8th Cir. 1993); Bishop v. NLRB, 502 F.2d 1024, 1027 (5th Cir. 1974).

It is well settled that such representation cases are not subject to district court review or direct appellate review.  See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 481 (1964); NLRB v. IBEW, 308 U.S. 413, 414-15 (1940); American Fed'n of Labor v. NLRB, 308 U.S. 401, 409, 411 (1940); Bishop, 502 F.2d at 1027; Local Union No. 714, Int'l Bhd. of Teamsters v. Madden, 343 F.2d 497, 499 (7th Cir. 1965)(precluding union's claims for district court review of a Section 9(e)(1) deauthorization determination by the Board).  This is so because proceedings under Section 9 are nonadversarial in nature and do not result in the issuance of "final orders" subject to judicial review under Sections 10(e) and (f) the NLRA, 29 U.S.C. § 160 (e) and (f) (1998).  American Fed'n of Labor, 308 U.S. at 409; UFCW, Local 400 v. NLRB, 694 F.2d 276, 278 (D.C. Cir. 1982) (per curiam); Bishop, 502 F.2d at 1027; Herald Co. v. Vincent, 392 F.2d 354, 356 (2d Cir. 1968).  As the Fifth Circuit has explained:

> Nowhere in the statutory scheme does Congress mention district court review of NLRB orders in representation cases, and there is a reason for that profound silence.  The underlying purpose of the Act is to maintain industrial peace, [citation omitted] and to allow employers and unions to rush into federal district court at will to prevent or nullify certification elections would encourage dilatory tactics by dissatisfied parties and lead to industrial unrest.  [citation omitted]

> Such a rule would not only cause the federal courts to set the dockets of the NLRB, but time-consuming review in such cases would strike a blow at the foundations of our finely-tuned system of collective bargaining. For these reasons, Congress has determined that the NLRB, and not the courts, is to be the umpire in representation disputes.

Bishop, 502 F.2d at 1027.

Instead, the NLRA provides limited indirect appellate court review of representation determinations. Such review is provided if and when those determinations serve as the underlying predicate for a final order subsequently issued in a related unfair labor practice proceeding. 29 U.S.C. § 160(e), (f) (1998); see Boire, 376 U.S. at 476-77; American Fed'n of Labor, 308 U.S. at 409.

The Supreme Court has recognized that Congress may so withhold jurisdiction from the federal courts "in the exact degrees and character which to Congress may seem proper for the public good," Lockerty v. Phillips, 319 U.S. 182, 187 (1943) (quotation omitted), and may prescribe an administrative remedy to the exclusion of a judicial one. See Switchmen's Union of N. Am. v. NMB, 320 U.S. 297, 301 (1943). As to the NLRA, the same 1947 Congress that first enacted the Section 9(e) union-security deauthorization procedure (see infra, p. 13), considered and ultimately rejected granting direct judicial review of Section 9 proceedings. See H.R. 3020, 80th Cong., 1st Sess. at 34-36, 42-43 (1947), I. Leg. Hist. LMRA 64-66, 72-73; H.R. Rep. No. 510, 80th Cong., 1st Sess. at 56-57 (1947), I. Leg. Hist. LMRA 560-61. The Supreme Court in American Fed'n of Labor recognized that the NLRA's scheme may well fail to provide judicial review for parties affected by a Board representation proceeding. 308 U.S. at 411-12. Nevertheless, the Court expressly noted that any problems posed by this scheme should be raised before Congress and not the courts. Id. at 411.

The Union's attempt to obtain review here impermissibly seeks to bypass this judicially-recognized Congressional intent.  See Bays v. Miller, 524 F.2d 631, 633 (9th Cir. 1975); Chicago Truck Drivers v. NLRB, 599 F.2d 816, 818 (7th Cir. 1979).[6]  For the reasons set forth below, moreover, this matter does not fit within the narrow exceptions to the rule of non-reviewability.

**B.    This Case Does Not Fall Within Any Exception to the Prohibition of District Court Review of Board Representation Proceedings**

1.    The *Leedom* Exception to Nonreviewability is Exceedingly Narrow

The Supreme Court has recognized a very narrow exception to the general rule of nonreviewability of Board representation determinations.  In Leedom v. Kyne, 358 U.S. 184 (1958), the Board directed an election in what it conceded was a mixed bargaining unit of professional and non-professional employees, without first having "a majority of such professional employees vote for inclusion in such unit," as was expressly required by Section 9(b)(1) of the NLRA, 29 U.S.C. § 159(b)(1) (1998).  The Board did not contest that it had acted in excess of its statutory authority; it only argued that, in any event, the district court lacked jurisdiction to entertain the suit.  Leedom, 358 U.S. at 187.

The Supreme Court there ruled that an exception to the rule of no district court jurisdiction arises where the

> suit is not one to "review," in the sense of that term as used in the Act, a
> decision of the Board made within its jurisdiction.  Rather [the suit] is one

---

[6] Although the Union relied on a general jurisdictional statute, 28 U.S.C. § 1337(a) (Complaint ¶10), that statute is qualified by the more specific jurisdictional limitation contained in the NLRA.  See Whitney Nat. Bank v. Bank of New Orleans, 379 U.S. 411, 422 (1965); NLRB v. California Horse Racing Board, 940 F.2d 536, 540 n.3 (9th Cir. 1991)("CHRB").  Section 1337 does not provide jurisdiction where, as here, the applicable regulatory statute precludes it.  Board of Trustees of Memorial Hospital of Fremont County v. NLRB, 523 F.2d 845, 846 (10th Cir. 1975).  Thus, Section 1337 will provide the necessary jurisdiction only if Leedom v. Kyne, as discussed below, is found applicable.  See Leedom v. Kyne, 358 U.S. 184, 188 (1958).

1

2

> to strike down an order of the Board made in excess of its delegated
> powers and contrary to a specific prohibition in the Act.

3

Id. at 188.  The Court concluded that, since the professional employee provision of Section

4

9(b)(1) imposed a "clear and mandatory" statutory obligation on the Board, 358 U.S. at 188, the

5

district court had jurisdiction to set aside the Board's exercise of a power that had been

6

specifically withheld from it by Congress.  Id. at 189.

7

The Supreme Court subsequently clarified that the Leedom exception to nonreviewability

8

is extremely narrow.  In Boire v. Greyhound, 376 U.S. 473 (1964), the Court refused to find

9

district court jurisdiction to review the Board's joint employer determination made in a

10

representation proceeding.  In so finding, the Supreme Court explained that

11

12

> [t]he [Leedom] exception is a narrow one, not to be extended to permit
> plenary district court review of Board orders in certification proceedings
> whenever it can be said that an erroneous assessment of the particular facts
> before the Board has led it to a conclusion which does not comport with
> the law.

13

14

Id. at 481; see also Teamsters, Local 690 v. NLRB, 375 F.2d 966, 976 (9th Cir. 1967)(Leedom

15

applies only in "extraordinary circumstance"); CHRB, 940 F.2d at 540 (review of non-final

16

Board orders permitted only in "narrowest" of exceptions); Madden, 343 F.2d at 500 (no district

17

court jurisdiction where Section 9(e)(1) deauthorization determination by the Board did not

18

violate "clear and mandatory provision" of the NLRA); Bishop, 502 F.2d at 1030.[7]

19

20

21

_____

22

[7]  Two other very narrow exceptions to the rule of no review are clearly inapplicable in this case.
Here there is no issue "particularly high in the scale of our national interest because of [its]
international complexion," McCulloch v. Sociedad Nacional de Marineros de Honduras,
372 U.S. 10, 17 (1963), nor a clear and strong showing of a violation of constitutional rights,
Teamsters, Local 690 v. NLRB, 375 F.2d 966, 976 (9th Cir. 1967)(potential exception noted in
dicta).

23

24

25

Consistent with <u>Boire</u>, the courts have refused to extend their jurisdictional reach to review the Board's representation determinations alleged to have resulted in an error of law, where the Board did not act in violation of a specific statutory command.  <u>See</u> <u>Physicians Nat'l House Staff Ass'n v. Fanning</u>, 642 F.2d 492, 496 (D.C. Cir. 1980) (quoting <u>Chicago Truck Drivers v. NLRB</u>, 599 F.2d 816, 819 (7th Cir. 1979)).  Similarly, jurisdiction does not exist for consideration of alleged arbitrary agency action or an abuse of discretion.  <u>See</u> <u>Eisinger v. Federal Labor Relations Authority</u>, 218 F.3d 1097, 1103 n.5 (9th Cir. 2000); <u>Bays</u>, 524 F.2d at 633; <u>Physicians Nat'l House Staff Ass'n</u>, 642 F.2d at 496 (quoting <u>Local 130, Int'l Union of Electrical, Radio and Machine Workers v. McCulloch</u>, 345 F.2d 90, 95 (D.C. Cir. 1965)).  Accordingly, "jurisdiction is not conferred on the district courts to consider 'the wisdom of a particular Board policy'" when there is a "'disagreement with the Board on a matter of policy or statutory interpretation.'"  <u>Cihacek v. NLRB</u>, 464 F. Supp. 940, 943 (D. Neb. 1979)(quoting <u>National Maritime Union v. NLRB</u>, 375 F. Supp. 421, 434 (E.D. Pa.), <u>aff'd</u>, 506 F.2d 1052 (3d Cir. 1974)).  Rather, district court jurisdiction can only exist where the Board has violated a clear and mandatory provision of the NLRA.[8]

    2.    <u>There Is No Jurisdiction Under *Leedom* Because The Board Here Did Not Violate Any Clear and Mandatory Statutory Provision</u>

In this case, the Union cannot show that the Board violated a clear and mandatory requirement of the Act based upon the timing of the employee petition that was considered by the Board or the timing of the solicitation of employee support.  Section 9(e)(1) provides that

---

[8] Contrary to the Union's assertion (<u>see</u> Plaintiff's Memorandum of Points and Authorities (Docket No. 3)("Plaintiff's Memorandum") at 2), the availability of an alternative statutory review procedure would separately bar direct district court review under <u>Leedom.</u>  <u>See</u> <u>Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.</u>, 502 U.S. 32, 43 (1991).  In any event, where as here, there is no violation of a clear and mandatory statutory provision, the jurisdictional inquiry ends.  <u>See</u> <u>Bays</u>, 524 F.2d at 632-33.

upon the filing of a petition by "30 per centum or more of the employees in a bargaining unit

covered by an agreement between their employer and labor organization made pursuant to

section 8(a)(3)" alleging a desire that authority to make a union-security agreement be rescinded,

the Board "shall take a secret ballot of the employees in such unit and certify the results thereof

to such labor organization and to the employer."  29 U.S.C. § 159(e)(1) (1998).  Although the

Union has failed to state this fact in its papers, the Board's Regional Director is proceeding on a

second authorization petition filed after the effective date of the union-security agreement.

Moreover, contrary to the Union's argument, the statute places no explicit time limitation upon

when the signatures of the thirty percent of employees must be gathered for such a petition.  In

other words, Section 9(e)(1) does not state in clear and mandatory terms that the showing of

interest signatures must be gathered only after a union-security provision goes into effect.

       The Board here reasonably found that the language of Section 9(e)(1) is "unclear" on this

point and "does not squarely answer the question presented by this case."  The Board explained:

> Although it is clear from the statutory language that, <u>when filed</u>, a deauthorization
> petition must be supported by at least 30 percent of employees "covered by" a
> contract containing a union-security provision, Section 9(e)(1) is devoid of language
> as to <u>when</u> the showing of interest must be gathered.  The employees in the instant
> case are "covered by an agreement" containing a union-security clause, and 30
> percent of the employees so covered have supported a petition to get rid of that
> clause.  The fact that the 30 percent expressed their desire prior to the coverage does
> not clearly invalidate their desire.
>
>                                        . . .
>
> It is possible either that Congress did not contemplate the question of whether the
> signatures supporting a showing of interest in a deauthorization petition may
> predate an effective contract containing a union-security clause, or that Congress
> did consider the question but left it to the Board to regulate.  Either way, the fact
> of the matter is that the statutory language is inconclusive, and thus it falls to the
> Board as the agency charged with administering the Act to fill in the statutory
> gap.  In doing so, we are guided by the Act itself, its legislative history, and
> applicable policy considerations.

(Exh. 2 to Complaint at 2).

As the Board noted, in 1947, the Act was amended to add a requirement, designated as Section 9(e)(1), that employees first had to vote to authorize a union to make a union-security agreement with their employer before the union could do so. The 1947 amendments also added a deauthorization procedure, then set out at Section 9(e)(2). (Exh. 2 to Complaint at 3; see United States Code, Congressional and Administrative Service, 80th Congress, First Session, 1947, Congressional Comments at pp. 1156-1157. Four years later, the Act was amended again to remove the affirmative authorization requirement at Section 9(e)(1), reword the deauthorization provision at 9(e)(2), and designate that section as the new Section 9(e)(1). The Board explained:

> Significantly, in enacting the 1951 amendments, Congress did not express a preference for union-security arrangements. Neither did it choose to return to the pre-1947 status, under which there was no Board-mandated deauthorization process and the issue of rescinding a union-security provision was left to private parties to handle. Rather, Congress sought to eliminate what it viewed as the administrative inefficiencies occasioned by former 9(e)(1)'s authorization requirement, while at the same time preserving the right of employees to deauthorize an unwanted union-security arrangement.

(Exh. 2 to Complaint at 3). Although finding this legislative history "inconclusive" regarding any requirement for the timing of securing employee support, the Board reasonably viewed the history as underscoring "Congress' intent to safeguard the right of employees to deauthorize union security." Id.

Moreover, contrary to the Union's argument (Plaintiff's Memorandum at 15), the Board's refusal to invalidate the showing of interest in this case is consistent with its precedent construing the requirements of Section 9(e)(1). In Great Atlantic & Pacific Tea Co., 100 N.L.R.B. 1494 (1952), the Board rejected a union's contention that a deauthorization vote should be prospective only, i.e., that an existing union-security agreement must remain effective for the remainder of a contract's term regardless of election result. The Board there found that

13

Congress did not aim to postpone the employees' will regarding union security. Id. at 1495.
"[O]nly by holding that an affirmative deauthorization vote immediately relieves employees of
the obligations imposed by an existing union-security agreement" can the Board "give effect to
the basic congressional objective . . . of not imposing a union-security agreement upon an
unwilling majority." Id. at 1497.  The Board majority here also noted Andor Co., 119 N.L.R.B.
925 (1957), where, in refusing to dismiss a deauthorization petition, the Board relied upon
Congress's intent that the 1951 amendments retain employees' "safety valve" to escape
undesired union-security obligations. Id. at 928.  Taken together, Great Atlantic & Pacific Tea,
Andor, and this case, show a consistent construction of Section 9(e)(1) to protect employees'
ability to choose whether to rescind authorization for a union-security agreement.  The Board
here explained, "in the absence of more specific guidance in either the language of the statute or
the legislative history, we consider, as a matter of policy, what resolution of the issue at hand
best effectuates Congress' purpose of protecting employee free choice," and found such purpose
"best effectuated by processing the instant petition."  (Exh. 2 to Complaint at 3).

There is no merit to the Union's argument (Plaintiff's Memorandum at 13–15) that the
pending deauthorization election is contrary to Congress's 1951 elimination of the authorization
election, and to the Board's observation in Great Atlantic & Pacific Tea that Congress thereby
intended for unions to have presumptive authority to enter into union-security arrangements.
Here, the Union obviously has already entered into a union-security agreement that is currently
effective.  No election was required for that to occur.  The election soon to take place will be one
where the employees will be voting on whether to escape the agreement, and is premised upon a
petition filed on April 6, 2007, well after the union-security provision took effect.

In such circumstances, the Board found that it did not make sense to require the Petitioner to wait for a union-security clause to be in effect prior to gathering the required showing of employee interest.  The Union had been recognized as the collective-bargaining representative, and the Petitioner "reasonably believed that a union-security provision was imminent.  [W]aiting for the parties to execute the contract [to collect the signatures] serves to needlessly - and, from the perspective of many employees, arbitrarily – delay the employees' right to be relieved of a union-security provision should the majority so will."  (Exh. 2 to Complaint at 4-5.)  The Board further found that the employee signatures here, while pre-dating the contract, nonetheless demonstrated the employees' substantial desire to vote on the question of union security.

The Board also reasonably found unconvincing the Regional Director's finding that only post-contract signatures can be permitted because employees may change their mind about deauthorization once they know what benefits have been negotiated by the Union.  As the Board noted, the employees' signing statements made clear that they knew the union-security agreement was only "proposed."   (Exh. 2 to Complaint at 5.)  "To presume that employees cannot make an informed choice regarding the idea of a union-security clause before a contract becomes effective robs employees of the ability to express the position that they do not desire a union-security clause in any event."  Id.  Even assuming that the contract might affect employees' views on union security, the actual deauthorization vote here will only be held after a collective-bargaining agreement became effective, so any ultimate impact of the overall agreement will be reflected in the deauthorization vote.  Id. at 5.  In short, the Board's decision falls well within the broad confines of its Section 9 authority.  See NLRB v. Best Products Co., Inc., 765 F.2d 903, 908 (9th Cir. 1985) ("[t]he Board has wide discretion to determine representation matters and questions arising during election proceedings");  NLRB v. Berryfast,

Inc., 741 F.2d 1161, 1163 (9th Cir. 1984); see also NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946).

The difference of opinion between the Board majority and dissenting Member Walsh demonstrates that Section 9(e)(1) is hardly a clear and mandatory provision as to this point, and that reasonable minds differ as to its proper interpretation. Member Walsh argued that the "plain meaning" of Section 9(e)(1) requires that "the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision." (Exh. 2 to Complaint at 6). He considered the majority's interpretation "unreasonable" because he found "nothing . . . in the text or context of the provision which suggests that employees only need to be covered by a union-security provision at the time the petition is filed." Id. at 7. However, the Board majority noted that Member Walsh's "plain meaning" conclusion focused only on a part of the language of Section 9(e)(1) , while the majority examined the section as a whole, including the introductory clause referring to the filing of a petition with the Board. "Bringing that clause into the analysis," the majority found "that the statutory language is unclear as to whether the showing of interest in support of that petition may be gathered in advance of an agreement containing a union-security clause." Id. at 2. Underscoring this lack of statutory clarity is the fact that both the majority and dissent cited the statute's legislative history and to policy concerns favoring their respective conclusions.

The Seventh Circuit's decision in Teamsters v. Madden, 343 F.2d at 500, further supports the conclusion that Section 9(e)(1) is not clear and mandatory as to the collection of employee signatures. There, like here, a union asserted that the Board's interpretation of Section 9(e)(1) was incorrect. However, unlike here, the Teamsters in Madden argued that Section 9(e)(1) granted employees the right to revoke the union's authority only as to future union-security

provisions, and not to revoke current union-security arrangements (i.e., that Great Atlantic & Pacific Tea was wrong). Contrary to the Union's contention here (see Plaintiff's Memorandum at 9), the Madden court rejected this assertion and found that the district court had no subject matter jurisdiction because the Board's interpretation of Section 9(e)(1) was not contrary to a clear and mandatory provision. 343 F.2d at 500. The Court here, like in Madden, should dismiss the Union's complaint, as it seeks to enjoin the Board's permissible exercise of discretion.

In short, this disagreement over the proper interpretation of Section 9(e)(1) provides no basis for subject matter jurisdiction in this case. See Nat'l Maritime Union, 375 F. Supp. at 434. As explained by the Ninth Circuit in Teamsters, Local 690, 375 F.2d at 971 (quoting International Ass'n of Tool Craftsmen v. Leedom, 276 F.2d 514, 516 (D.C. Cir. 1960)):

> We need not decide whether we would sustain the Board's view if the question were presented to us in an appeal under the judicial review provisions of [Section] 10 of the Act. . . . We need only decide, as we do, that the statutory language itself and the legislative history sufficiently support its position to eliminate the essential requirement for invoking the District Court's equity jurisdiction, namely, a showing that the Board violated a 'clear and mandatory' statutory prohibition . . . . (citations omitted)

Accordingly, as set forth above, any disagreement by the Union or this Court with the Board's interpretation of Section 9(e)(1) does not create the requisite jurisdiction here.

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Union's Complaint be

1    dismissed, with prejudice.

2                                              Respectfully submitted,

3                                              ERIC G. MOSKOWITZ
4                                              Assistant General Counsel
                                               National Labor Relations Board
5                                              Special Litigation Branch
     Dated:  June 6, 2007                      1099 14th Street, NW
6              Washington, DC                  Washington, DC 20570
                                               Tel: (202) 273-2930
7                                              Fax: (202) 273-1799

8                                              /s/Nancy E. Kessler Platt
9                                              NANCY E. KESSLER PLATT
                                               Supervisory Attorney
10
                                               DAWN L. GOLDSTEIN
11                                             Senior Attorney
                                               Tel: (202) 273-2936
12
                                               OLIVIA GARCIA
13                                             Regional Attorney
                                               National Labor Relations Board – Region 20
14                                             901 Market Street, Suite 400
                                               San Francisco, CA  94103
15                                             Tel:  (415) 356-5151
                                               Fax:  (415) 356-5156
16
                                               KATHLEEN C. SCHNEIDER, No. 174058
17                                             Attorney – Region 20
                                               Tel: (415) 356-5157
18

19

20

21

22

23

24

25

NLRB'S MOTION TO DISMISS COMPLAINT– NO. 07-cv-02766-PJH