ERIC G. MOSKOWITZ
NANCY E. KESSLER PLATT
DAWN L. GOLDSTEIN
National Labor Relations Board
1099 14th Street, NW, Suite 8600
Washington, DC 20570
Telephone: 202 273-2930
Facsimile: 202 273-1799
Email: Eric.Moskowitz@nlrb.gov
Email: Nancy.Platt@nlrb.gov
Email: Dawn.Goldstein@nlrb.gov

OLIVIA GARCIA
KATHLEEN C. SCHNEIDER, Bar No. 174058
NLRB, Region 20
901 Market Street, Suite 400
San Francisco, CA 94103-1735
Telephone: 415 356-5130
Facsimile: 415 356-5156
Email: Olivia.Garcia@nlrb.gov
Email: Kathleen.Schneider@nlrb.gov

Counsel for Defendants Norelli, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, Local 790, | ) ) ) | NATIONAL LABOR RELATIONS BOARD'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 07-cv-02766-PJH |
| | ) | Date: |
| JOSEPH NORELLI, Regional Director of National Labor Relations Board, Region 20, et al., | ) ) ) | Time: |
| | ) | Judge: |
| Defendants. | ) ) | Courtroom: |

i

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ..................................................................................................1

RELEVANT STATUTORY PROVISIONS ...........................................................1

FACTUAL BACKGROUND ..................................................................................2

ARGUMENT ..........................................................................................................4

I.   STANDARD FOR A TEMPORARY RESTRAINING ORDER .........................4

II.  THE UNION HAS NO LIKELIHOOD OF SUCCESS BECAUSE THIS COURT
     LACKS SUBJECT MATTER JURISDICTION TO REVIEW THE BOARD'S
     EXERCISE OF DISCRETION TO CONDUCT A DEAUTHORIZATION
     ELECTION .......................................................................................................7

   A.  Board Representation Proceedings are Not Subject to Direct Judicial Review ...............7

   B.  This Case Does Not Fall Within Any Exception to the Prohibition of District Court
       Review of Board Representation Proceedings ....................................................8

       1.  The Leedom Exception to Nonreviewability is Exceedingly Narrow........................8

       2.  There is no Jurisdiction Under Leedom Because the Board Here Did Not
           Violate Any Clear and Mandatory Statutory Provision ................................9

III. THE UNION CANNOT SHOW IRREPARABLE INJURY OR THAT ITS ALLEGED
     INJURY OUTWEIGHS THE HARM TO THE BOARD AND PUBLIC INTEREST IN
     PERMITTING EMPLOYEES TO RESCIND A UNION-SECURITY AGREEMENT....14

CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

Albert Van Luit & Co., 234 N.L.R.B. 1087, 1087-88 (1978).......................................4

American Federation of Labor v. NLRB, 308 U.S. 401 (1940) ................................7

Andor Co., 119 N.L.R.B. 925 (1957) ............................................................12

Bakersfield City School District v. Boyer, 610 F.2d 621 (9th Cir. 1979) ..................15

Bays v. Miller, 524 F.2d 631 (9th Cir. 1975) .............................................8,9

Bishop v. NLRB, 502 F.2d 1024 (5th Cir. 1974) ...........................................7,9

Boire v. Greyhound Corp., 376 U.S. 473 (1964)..........................................1,7,9

Calamore v. Juniper Networks, Inc., 2007 WL 1100333, Case No. 07-01772 MJJ (N.D. Cal. April 12, 2007) ........................................................................4

Chicago Truck Drivers v. NLRB, 599 F.2d 816 (7th Cir. 1979)..............................8,9

Cihacek v. NLRB, 464 F. Supp. 940 (D. Neb. 1979) ........................................9

Covenant Aviation Security, LLC, 349 NLRB No. 67 (March 30, 2007).....................passim

Eisinger v. Federal Labor Relations Authority, 218 F.3d 1097 (9th Cir. 2000).............9

FTC v. Standard Oil Co., 449 U.S. 232 (1980) ...........................................14

Great Atlantic & Pacific Tea Co., 100 NLRB 1494 (1952)................................11,12

Herald Co. v. Vincent, 392 F.2d 354, 356 (2d Cir. 1968) ................................7

International Ass'n of Tool Craftsmen v. Leedom, 276 F.2d 514 (D.C. Cir. 1960)...........14

Leedom v. Kyne, 358 U.S. 184 (1958) ..................................................1,8

Local Union No. 714, International Brotherhood of Teamsters v. Madden, 343 F.2d 497 (7th Cir. 1965)...................................................................passim

NLRB v. A.J. Tower Co., 329 U.S. 324 (1946)...........................................13

NLRB v. Berryfast, Inc., 741 F.2d 1161 (9th Cir. 1984)................................13

**Cases--Cont'd:**                                                                                           **Page(s)**

NLRB v. Best Products Co., Inc., 765 F.2d 903 (9th Cir. 1985)..................................13

NLRB v. California Horse Racing Board, 940 F.2d 536 (9th Cir. 1991)......................8

NLRB v. General Motors Corp., 373 U.S. 734 (1963)............................................1-2

NLRB v. IBEW, 308 U.S. 413 (1940).....................................................................7

National Maritime Union v. NLRB, 375 F. Supp. 421 (E.D. Pa.), aff'd, 506 F.2d 1052
   (3d Cir. 1974).................................................................................9,14

Physicians Nat'l House Staff Ass'n v. Fanning, 642 F.2d 492, 496 (D.C. Cir. 1980) ...............9

Renegotiation Board v. Bannercraft Clothing Co., Inc., 415 U.S. 1 (1974).....................14-15

State of California v. Federal Trade Commission, 549 F.2d 1321 (9th Cir. 1977) ...................15

Teamsters, Local 690 v. NLRB, 375 F.2d 966 (9th Cir. 1967) ...............................9,14

UFCW, Local 400 v. NLRB, 694 F.2d 276 (D.C. Cir. 1982)...................................7

**Statutes:**

National Labor Relations Act, as amended (29 U.S.C. § 151, *et seq.*):
   § 8(a)(3) (29 U.S.C. § 158(a)(3)).....................................................1,2,14
   § 9 (29 U.S.C. § 159).....................................................................7
   § 9(b)(1) (29 U.S.C. § 159(b)(1)) ........................................................8
   § 9(e)(1) (29 U.S.C. § 159(e)(1))......................................................passim
   § 10(e) (29 U.S.C. § 160(e)) ............................................................7
   § 10(f) (29 U.S.C. § 160(f)) ............................................................7

**Legislative Materials:**

   United States Code, Congressional and Administrative Service, 80th Congress,
   First Session, 1947, Congressional Comments at pp. 1156-1157................................10-11

**Administrative Materials:**

National Labor Relations Board Rules and Regulations
   29 C.F.R. §102.85 .......................................................................3

NLRB Casehandling Manual Representation Proceedings (Part Two)(GPO 1989):
   §11506.5    .............................................................................3

iv

## INTRODUCTION

Defendants Joseph Norelli, Regional Director for Region 20 of the National Labor Relations Board and the individual Members of the National Labor Relations Board (collectively, "the Board") respectfully submit this Opposition to Plaintiff's Motion for Temporary Restraining Order (Docket No. 29).  As demonstrated below, this Court lacks subject matter jurisdiction to review or enjoin the Board's exercise of its discretion pursuant to Section 9(e)(1) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 159(e)(1) (1998), to conduct an election for employees to consider deauthorizing a union-security agreement.  This case is no exception to the general rule barring judicial review of NLRA representation proceedings because the Union cannot show, as it must, that the Board violated a clear and mandatory provision of the NLRA.  Accordingly, the injunction should be denied.  See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 481 (1964); Leedom v. Kyne, 358 U.S. 184, 190 (1958).  Injunctive relief should be denied for the additional reason that the Union has failed to demonstrate that the Board's election procedure has resulted in an irreparable injury to the Union, or that the Union's interest in enjoining the anticipated deauthorization election outweighs the harm to the Board and public interest in permitting employees to exercise their choice whether to participate in a union-security arrangement.

## RELEVANT STATUTORY PROVISIONS

A "union-security" agreement is permitted under the first proviso to Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3) (1998).  This statutory provision generally allows employers and unions to enter into agreements requiring employees in a bargaining unit to obtain and retain "membership" in the union beginning on or after the thirtieth day following entry on duty.  Such union "membership" requires only the payment of initiation fees and periodic dues.  NLRB v.

General Motors Corp., 373 U.S. 734, 742 (1963).  Significantly, Section 8(a)(3) also provides

that this permission to enter into union-security agreements is revoked if, following an election

conducted pursuant to Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1) (1998), the Board

certifies that a majority of the unit of employees voted to rescind the authority to make such an

agreement.  Section 9(e)(1) in turn provides:

> Upon the filing with the Board, by 30 per centum or more of the
> employees in a bargaining unit covered by an agreement between
> their employer and labor organization made pursuant to section
> 8(a)(3), of a petition alleging they desire that such authorization be
> rescinded, the Board shall take a secret ballot of the employees in
> such unit and certify the results thereof to such labor organization
> and to the employer.

As set forth below, the instant case concerns the Board's exercise of discretion to conduct

a "deauthorization" election pursuant to this provision.

## FACTUAL BACKGROUND

In 2005, the Union and Covenant Aviation Security, LLC ("the Employer") entered into a

collective-bargaining relationship for employees working at the San Francisco Airport.  After

negotiations, the Union and the Employer reached tentative agreement on the terms of a

collective-bargaining agreement, including a provision for union-security (Complaint Exh. 2 at

1-2).   The union-security clause took effect on January 13, 2006 (Complaint Exh. 1 at 2).

Two days before the collective-bargaining agreement was fully executed, employee

Stephen J. Burke, Jr. filed with Region 20 of the Board, pursuant to Section 9(e)(1) of the Act, a

petition to rescind the authorization of the Union and Employer to make a union-security

agreement (Board Case No. 20-UD-445).  (Complaint ¶ 17.)

On March 23, 2006, the Regional Director for Region 20 issued an order dismissing the

deauthorization petition, because both the filing of the actual petition and the petitioner's

securing of the required employee signatures demonstrating the thirty percent "showing of interest" pre-dated the effective date of the union-security agreement (Exh. 1 to Complaint at 2).[1] Significantly, as to the separate premature filing of the actual petition, the Regional Director noted that such deficiency, standing alone, could easily be remedied by filing a second timely petition.  (Exh. 1 to Complaint at 2-3.)  Petitioner Stephen Burke filed a Request for Review of the Regional Director's decision with the Board.  (Exh. 2 to Complaint at 1.)

On March 30, 2007, the Board (Chairman Battista and Member Kirsanow, Member Walsh dissenting) issued its Decision on Review and Order, reinstating the deauthorization petition and remanding the case to the Regional Director for further appropriate action. (Covenant Aviation Security, LLC, 349 NLRB No. 67, p. 1 (March 30, 2007)(Exh. 2 to Complaint)).  The Board found that the timing of the employee signatures supporting the showing of interest did not render the deauthorization petition invalid.  The Board reasoned that "[r]equiring the Petitioner to have waited until after a contract containing a union-security provision came into effect before obtaining signatures . . . impermissibly delayed the effectuation of employees' statutory right to rescind the effect of a union-security clause."  (Exh. 2 to Complaint at 2.)  Although the Board agreed with the Regional Director that the deauthorization petition should have been filed only after the union-security provision became effective, the Board also noted that the Regional Director found that such infirmity could be remedied by

---

[1] The "showing of interest" in this case was the submission of employee signatures to the Regional Director in support of the deauthorization petition.  Under Board procedure, after such signatures are submitted, the Region investigates the signatures' authenticity and relevance.  See Board's Rules and Regulations § 102.85, 29 C.F.R. § 102.85 (1961); NLRB Casehandling Manual Part Two-Representation Proceedings, §11506.5 (available at http://www.nlrb.gov/publications/).

refilling the petition and that no party requested review of this issue.  (Exh. 2 to Complaint at 1 n.1, 2-3.)

Significantly, on April 6, 2007, the petitioner filed a new deauthorization petition with Region 20 of the Board, Board Case No. 20-UD-447, later amended to reflect the proper local union.  The amended petition was served on all parties, including the Union (see Board Exhs. 2 and 3 to Docket No. 14).  The Regional Director issued a Direction of Election upon this new petition, ordering that a deauthorization election be held by mail (see Board Exh. 5 to Docket No. 14).  Subsequently, the parties were advised that the Transportation Security Administration had raised concerns, delaying the mailing of ballots for the election.  However, these concerns appeared to be resolved, and the Board issued a new Direction of Election on June 1, 2007, stating that the Region would mail the ballots to employees on June 22, 2007 and count the received ballots on July 9, 2007.  (See Board Exh. 6 to Docket No. 22.)[2]

On June 6, 2007, the Board filed a Motion to Dismiss the instant complaint, on grounds of lack of jurisdiction (Docket No. 22).  On June 7, 2007, the Union filed the instant Motion for Temporary Restraining Order (Docket No. 29).

**ARGUMENT**

I.    STANDARD FOR A TEMPORARY RESTRAINING ORDER

To prevail on a motion for a temporary restraining order, the Union must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the Union if preliminary relief is not granted, (3) a balance of hardships favoring the Union, and (4) advancement of the public interest (in certain cases).  See Calamore v. Juniper Networks, Inc.,

_____

[2] Under the NLRA, for most employees there is no possible change to the union-security agreement from the deauthorization proceeding until after the Board resolves any objections filed by the parties to the conduct of the election and certifies the election results.  See Albert Van Luit & Co., 234 NLRB 1087, 1087-88 (1978).

2007 WL 1100333 at * 1, Case No. 07-01772 MJJ (N.D. Cal. April 12, 2007).  Alternatively, injunctive relief could be granted if the Union "demonstrate[d] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in [its] favor." Id. (citation omitted).  These two alternatives represent extremes of a single continuum, rather than two separate tests. Id. (citation omitted). As a result, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be established by that party.  Id.  In this case, for the reasons explained below, the Union can demonstrate neither any probability of success nor any cognizable hardship.

        Initially, we note that the Union, to support its instant demand for emergency injunctive relief, has proffered baseless, overheated rhetoric claiming that "Defendants forced this dispute into an emergency . . ., by stubbornly refusing to agree to a very short, reasonable delay in the disputed election," and that "Defendants are attempting to improperly exploit Judge Hamilton's absence to conduct a legally spurious election without judicial oversight, despite their knowledge that Judge Hamilton found objections to it sufficiently meritorious to demand that Defendants appear in court to defend their action," see Memorandum in Support of Motion for Temporary Restraining Order at 5 (Docket No. 28).

        First, the Union has been aware since March 2007, when it received the Board's Decision remanding the matter to the Region for further proceeding (Exhibit 2 to Docket No. 1), that the Agency plans to conduct a deauthorization election in this case.  At any time since then, the Union could have filed its Complaint and Motion for Preliminary Injunction, and had this case decided by this Court on a less expedited schedule.  Moreover, the Regional Director first issued a Direction of Election in this case on May 9, 2007 (Board Exhibit 5 to Docket No. 14), and an amended Direction of Election on June 1, 2007 (Board Exh. 6 to Docket No. 22).   Plaintiff

chose to wait until May 25, 2007 to file its Complaint (Docket No. 1), and two more weeks after that, until June 7, 2007, to file its Motion for a Temporary Restraining Order (Docket No. 29). Thus, any "emergency" here is a self-inflicted wound caused by the Union's delay, and should not require this Court to issue a Temporary Restraining Order, particularly when, as shown below, the Court lacks the requisite subject matter jurisdiction to do so.

Second, the Board respectfully submits that Judge Hamilton's issuance of the Order to Show Cause does not mean that she found the Union's Complaint to be meritorious. As the Union _itself_ noted (Docket No. 30 at 3), the Board never objected to the holding of a hearing regarding the Union's Motion for Preliminary Injunction. The Board only objects to the grant of any injunctive relief. Thus, the fact that Judge Hamilton ordered a hearing to which the Board did not object means precisely nothing.

Third, the Union well knows that the self-imposed injunction it asked of the Board to delay the mailing of ballots was not just for the five-day time period between when the Board plans to mail the ballots in this case and Judge Hamilton's preliminary injunction hearing. Instead, the Union sought in addition, the further time necessary for Judge Hamilton to actually render her decision, based upon her review of the many pages of briefs that have already been submitted in this case.[3] Although the Board expects that Judge Hamilton would attempt to issue a ruling as expeditiously as possible, the Union was seeking a delay of the Agency's proceeding for a lawsuit which the Board views to be entirely meritless. Thus, it was hardly unreasonable for the Board to refuse to cave to the Union's baseless demand for injunctive relief.

---

[3] Moreover, the Union is utterly incorrect in alleging that the key decision before Judge Hamilton is "whether the Board possesses the jurisdiction to order the disputed election." (Docket No. 28 at 2). In fact, the central issue in this case is whether the extraordinarily narrow circumstances delineated under _Leedom_ (explained further below) are present in this case sufficient for _this Court_ to have jurisdiction to enjoin the Board's proceeding.

1

2

II.    THE UNION HAS NO LIKELIHOOD OF SUCCESS BECAUSE THIS COURT
LACKS SUBJECT MATTER JURISDICTION TO REVIEW THE BOARD'S
EXERCISE OF DISCRETION TO CONDUCT A DEAUTHORIZATION
ELECTION

3

4

   A.  **Board Representation Proceedings are Not Subject to Direct Judicial
       Review**

5

6

      Board representation cases are not subject to district court review or direct appellate

review.  See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 481 (1964); NLRB v. IBEW,

7

8

308 U.S. 413, 414-15 (1940); Bishop v. NLRB, 502 F.2d 1024, 1027 (5th Cir. 1974); Local

9

Union No. 714, Int'l Bhd. of Teamsters v. Madden, 343 F.2d 497, 499 (7th Cir. 1965)

10

(precluding union's claims for district court review of a Section 9(e)(1) determination by the

11

Board).  This is so because proceedings under Section 9 are nonadversarial in nature and do not

12

result in the issuance of "final orders" subject to judicial review under Sections 10(e) and (f) the

13

NLRA, 29 U.S.C. § 160 (e) and (f) (1998).  American Fed'n of Labor v. NLRB, 308 U.S. 401,

14

409 (1940); UFCW, Local 400 v. NLRB, 694 F.2d 276, 278 (D.C. Cir. 1982) (per curiam);

15

Bishop, 502 F.2d at 1027; Herald Co. v. Vincent, 392 F.2d 354, 356 (2d Cir. 1968).  "Congress

16

has determined that the NLRB, and not the courts, is to be the umpire in representation disputes."

17

Bishop, 502 F.2d at 1027.[4]   Indeed, the Supreme Court in American Fed'n of Labor recognized

18

that the NLRA's scheme may well fail to provide judicial review for parties affected by a Board

19

representation proceeding.  308 U.S. at 411-12.  Nevertheless, the Court expressly noted that any

20

problems posed by this scheme should be raised before Congress and not the courts.  Id. at 411.

21

22

23

_____

24

[4] The NLRA provides limited indirect appellate court review of representation determinations.
Such review is provided if and when those determinations serve as the underlying predicate for a
final order subsequently issued in a related unfair labor practice proceeding.  29 U.S.C. § 160(e),
(f) (1998); see Boire, 376 U.S. at 476-77; American Fed'n of Labor, 308 U.S. at 409.

25

The Union's attempt to obtain review here impermissibly seeks to bypass this judicially-recognized Congressional intent. See Bays v. Miller, 524 F.2d 631, 633 (9th Cir. 1975); Chicago Truck Drivers v. NLRB, 599 F.2d 816, 818 (7th Cir. 1979). For the reasons set forth below, moreover, this matter does not fit within the narrow exceptions to the rule of non-reviewability.

**B.      This Case Does Not Fall Within Any Exception to the Prohibition of District Court Review of Board Representation Proceedings**

1.  The *Leedom* Exception to Nonreviewability is Exceedingly Narrow

The Supreme Court recognized a very narrow exception to the general rule of nonreviewability of Board representation determinations in Leedom v. Kyne, 358 U.S. 184, 187 (1958). The Supreme Court there ruled that an exception to the rule of no district court jurisdiction arises where the

> suit is not one to "review," in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather [the suit] is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.

Id. at 188. The Court concluded that, since the professional employee provision of Section 9(b)(1) imposed a "clear and mandatory" statutory obligation on the Board, 358 U.S. at 188, the district court had jurisdiction to set aside the Board's exercise of a power that had been specifically withheld from it by Congress. Id. at 189.

The Supreme Court subsequently clarified that the Leedom exception to non-reviewability is extremely narrow:

> [t]he [Leedom] exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law.

Boire v. Greyhound, 376 U.S. 473, 481(1964); see also Teamsters, Local 690 v. NLRB, 375 F.2d 966, 976 (9th Cir. 1967) (Leedom applies only in "extraordinary circumstance"); NLRB v. California Horse Racing Board, 940 F.2d 536,540 (9th Cir. 1991) (review of non-final Board orders permitted only in "narrowest" of exceptions); Madden, 343 F.2d at 500 (Section 9(e)(1) determination by the Board did not violate "clear and mandatory provision" of the NLRA); Bishop, 502 F.2d at 1030.

Consistent with Boire, the courts have refused to extend their jurisdictional reach to review the Board's representation determinations alleged to have resulted in an error of law, where the Board did not act in violation of a specific statutory command.  Physicians Nat'l House Staff Ass'n v. Fanning, 642 F.2d 492, 496 (D.C. Cir. 1980) (quoting Chicago Truck Drivers v. NLRB, 599 F.2d 816, 819 (7th Cir. 1979)).  Similarly, jurisdiction does not exist for consideration of alleged arbitrary agency action or an abuse of discretion.  See Eisinger v. Federal Labor Relations Authority, 218 F.3d 1097, 1103 n.5 (9th Cir. 2000); Bays, 524 F.2d at 633.  Accordingly, "jurisdiction is not conferred on the district courts to consider 'the wisdom of a particular Board policy'" when there is a "'disagreement with the Board on a matter of policy or statutory interpretation.'"  Cihacek v. NLRB, 464 F. Supp. 940, 943 (D. Neb. 1979) (quoting National Maritime Union v. NLRB, 375 F. Supp. 421, 434 (E.D. Pa.), aff'd, 506 F.2d 1052 (3d Cir. 1974)).  Rather, district court jurisdiction can only exist where the Board has violated a clear and mandatory provision of the NLRA.

        2.        There Is No Jurisdiction Under *Leedom* Because The Board Here Did Not Violate Any Clear and Mandatory Statutory Provision

In this case, the Union cannot show that the Board violated a clear and mandatory requirement of the Act.  Section 9(e)(1) provides that upon the filing of a petition by "30 per centum or more of the employees in a bargaining unit covered by an agreement between their

employer and labor organization made pursuant to section 8(a)(3)" alleging a desire that

authority to make a union-security agreement be rescinded, the Board "shall take a secret ballot

of the employees in such unit and certify the results thereof to such labor organization and to the

employer." 29 U.S.C. § 159(e)(1) (1998).  Although the Union has failed to really acknowledge

this fact in its papers, the Board's Regional Director is proceeding on a second authorization

petition filed after the effective date of the union-security agreement.  Moreover, contrary to the

Union's argument, the statute places no explicit time limitation upon when the signatures of the

thirty percent of employees must be gathered for such a petition.  In other words, Section 9(e)(1)

does not state in clear and mandatory terms that the showing of interest signatures must be

gathered only after a union-security provision goes into effect.

     The Board here reasonably found that the language of Section 9(e)(1) is "unclear" on this

point and "does not squarely answer the question presented by this case."  The Board explained:

> Although it is clear from the statutory language that, when filed, a deauthorization
> petition must be supported by at least 30 percent of employees "covered by" a
> contract containing a union-security provision, Section 9(e)(1) is devoid of language
> as to when the showing of interest must be gathered.  The employees in the instant
> case are "covered by an agreement" containing a union-security clause, and 30
> percent of the employees so covered have supported a petition to get rid of that
> clause.  The fact that the 30 percent expressed their desire prior to the coverage does
> not clearly invalidate their desire.
>
>        . . .
>
> It is possible either that Congress did not contemplate the question of whether the
> signatures supporting a showing of interest in a deauthorization petition may
> predate an effective contract containing a union-security clause, or that Congress
> did consider the question but left it to the Board to regulate.  Either way, the fact
> of the matter is that the statutory language is inconclusive, and thus it falls to the
> Board as the agency charged with administering the Act to fill in the statutory
> gap.  In doing so, we are guided by the Act itself, its legislative history, and
> applicable policy considerations.

(Exh. 2 to Complaint at 2 (citation omitted) (emphasis added)).

As the Board noted, in 1947, the Act was amended to add a requirement, designated as Section 9(e)(1), that employees first had to vote to authorize the union to make a union-security agreement with the employer before the union could do so. The 1947 amendments also added a deauthorization procedure, then set out at Section 9(e)(2). (Exh. 2 to Complaint at 2); see United States Code, Congressional and Administrative Service, 80th Congress, First Session, 1947, Congressional Comments at pp. 1156-1157. Four years later, the Act was amended again to remove the affirmative authorization requirement at Section 9(e)(1), reword the deauthorization provision at 9(e)(2), and designate that section as the new Section 9(e)(1). The Board explained:

> Significantly, in enacting the 1951 amendments, Congress did not express a preference for union-security arrangements. Neither did it choose to return to the pre-1947 status, under which there was no Board-mandated deauthorization process and the issue of rescinding a union-security provision was left to private parties to handle. Rather, Congress sought to eliminate what it viewed as the administrative inefficiencies occasioned by former 9(e)(1)'s authorization requirement, while at the same time preserving the right of employees to deauthorize an unwanted union-security arrangement.

(Exh. 2 to Complaint at 3). Although finding this "inconclusive" regarding any requirement for the timing of securing employee support, the Board reasonably viewed the history as underscoring "Congress' intent to safeguard the right of employees to deauthorize union security." Id.

Moreover, contrary to the Union's argument in its memorandum in support of its motion for preliminary injunction (Docket No. 3 at 15), the Board's refusal to invalidate the showing of interest in this case is consistent with its precedent construing the requirements of Section 9(e)(1). In Great Atlantic & Pacific Tea Co., 100 NLRB 1494 (1952), the Board rejected a union's contention that a deauthorization vote should be prospective only, i.e., that an existing union-security agreement must remain effective for the remainder of a contract's term. The

Board there found that Congress did not aim to postpone the employees' will regarding union security. Id. at 1495. "[O]nly by holding that an affirmative deauthorization vote immediately relieves employees of the obligations imposed by an existing union-security agreement" can the Board "give effect to the basic congressional objective . . . of not imposing a union-security agreement upon an unwilling majority." Id. at 1497. The Board majority here also noted Andor Co., 119 NLRB 925 (1957), where, in refusing to dismiss a deauthorization petition, the Board relied upon Congress's intent that the 1951 amendments retain employees' "safety valve" to escape undesired union-security obligations. Id. at 928. Taken together, Great Atlantic & Pacific Tea, Andor, and this case, show a consistent construction of Section 9(e)(1) to protect employees' ability to choose whether to rescind authorization for a union-security agreement. The Board here explained, "in the absence of more specific guidance in either the language of the statute or the legislative history, we consider, as a matter of policy, what resolution of the issue at hand best effectuates Congress' purpose of protecting employee free choice," and found such purpose "best effectuated by processing the instant petition." (Exh. 2 to Complaint at 3).

There is no merit to the Union's argument in its memorandum in support of its preliminary injunction motion (Docket No. 3 at 13–15) that the pending deauthorization election is contrary to Congress's 1951 elimination of the authorization election, and to the Board's observation in Great Atlantic & Pacific Tea that Congress thereby intended for unions to have presumptive authority to enter into union-security arrangements. Here, the Union obviously has already entered into a union-security agreement that is currently effective. No election was required for that to occur. The election soon to take place will be one where the employees will be voting on whether to escape the agreement, and is premised upon a petition filed on April 6, 2007, well after the union-security provision took effect.

---

In such circumstances, the Board found that it did not make sense to require the Petitioner to wait for a union-security clause to be in effect prior to gathering the required showing of employee interest. The Union had been recognized as the collective-bargaining representative, and the Petitioner "reasonably believed that a union-security provision was imminent. [W]aiting for the parties to execute the contract [to collect the signatures] serves to needlessly - and, from the perspective of many employees, arbitrarily – delay the employees' right to be relieved of a union-security provision should the majority so will." Id. at 4-5. The Board further found that the employee signatures here, while pre-dating the contract, nonetheless demonstrated the employees' substantial desire to vote on the question of union security.

The difference of opinion between the Board majority and dissenting Member Walsh demonstrates that Section 9(e)(1) is hardly a clear and mandatory provision as to this point, and that reasonable minds differ as to its proper interpretation.[5] In short, the Board's decision falls well within the broad confines of its Section 9 authority. See NLRB v. Best Products Co., Inc., 765 F.2d 903, 908 (9th Cir. 1985) ("[t]he Board has wide discretion to determine representation matters and questions arising during election proceedings"); NLRB v. Berryfast, Inc., 741 F.2d 1161, 1163 (9th Cir. 1984); see also NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946).

Significantly, the Seventh Circuit previously rejected a union's similar argument that the Board's conduct of a deauthorization election violated Section 9(e) and therefore should be

---

[5]  Member Walsh argued that the "plain meaning" of Section 9(e)(1) requires that "the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision." (Exh. 2 to Complaint at 6). However, the Board majority noted that Member Walsh's "plain meaning" conclusion focused only on a part of the language of Section 9(e)(1) , while the majority examined the section as a whole, including the introductory clause referring to the filing of a petition with the Board. "Bringing that clause into the analysis," the majority found "that the statutory language is unclear as to whether the showing of interest in support of that petition may be gathered in advance of an agreement containing a union-security clause." Id. at 2.

13

enjoined.  Teamsters v. Madden, 343 F.2d at 500, thus supports the conclusion that Section

9(e)(1) is not clear and mandatory as to the collection of employee signatures.  There, like here, a

union asserted that the Board's interpretation of Section 9(e)(1) was incorrect.  Madden rejected

this assertion and found that the district court had no subject matter jurisdiction because the

Board's interpretation of Section 9(e)(1) was not contrary to a clear and mandatory provision.

343 F.2d at 500.  The Court here, like in Madden, should reject the Union's request to enjoin the

Board's permissible exercise of discretion.

In short, this disagreement over the proper interpretation of Section 9(e)(1) provides no

basis for subject matter jurisdiction in this case.  See Nat'l Maritime Union, 375 F. Supp. at 434.

As explained by the Ninth Circuit in Teamsters, Local 690, 375 F.2d at 971 (quoting

International Ass'n of Tool Craftsmen v. Leedom, 276 F.2d 514, 516 (D.C. Cir. 1960)):

> We need not decide whether we would sustain the Board's view if the question
> were presented to us in an appeal under the judicial review provisions of [Section]
> 10 of the Act. . . .  We need only decide, as we do, that the statutory language
> itself and the legislative history sufficiently support its position to eliminate the
> essential requirement for invoking the District Court's equity jurisdiction, namely,
> a showing that the Board violated a 'clear and mandatory' statutory
> prohibition . . . . (citations omitted)

Accordingly, as set forth above, any disagreement by the Union or this Court with the

Board's interpretation of Section 9(e)(1) does not permit the judicial review sought here.

III.    THE UNION CANNOT SHOW IRREPARABLE INJURY OR THAT ITS
ALLEGED INJURY OUTWEIGHS THE HARM TO THE BOARD AND
PUBLIC INTEREST IN PERMITTING EMPLOYEES TO RESCIND A
UNION-SECURITY AGREEMENT

There is no merit to the Union's assertions of irreparable harm.  As a practical matter, if

the election goes forward and a majority of the eligible unit voters do not vote to rescind union-

security authority, all the employees will remain subject to that contractual requirement and the

only cost to the Union will have been that of participating in the administrative proceeding.

14

29 U.S.C. § 158(a)(3) (1998).  Such cost is not an injury that will support the grant of an injunction.  See, e.g., FTC v. Standard Oil Co., 449 U.S. 232, 244 (1980); Renegotiation Board v. Bannercraft Clothing Co., Inc., 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); Bakersfield City School Dist. v. Boyer, 610 F.2d 621, 626 (9th Cir. 1979); State of California v. Federal Trade Commission, 549 F.2d 1321, 1323 (9th Cir. 1977).  If, on the other hand, a majority votes to rescind the union-security authority, that result would underscore the reasonableness of the Board's holding here that the 30 percent showing of interest was a sufficient gauge of employee sentiment to prompt an election on this question.

One of the Union's alleged harms rests on the assumption that, if the deauthorization election goes forward, employees will discuss these union-security issues at their work places at the airport in violation of work rules (Docket No. 28 at 7).  The election, of course, will not require employees to violate their employer's rules.  Indeed, the Union would have the Petitioner start all over again soliciting employee support and then file a new petition for an election, thus causing the same alleged injurious union-security debate the Union currently fears.  Thus, the grant of the Union's requested injunction would then just delay the same expression of employee sentiment and frustrate the Board's exercise of discretion.

It is notable that the alleged harms complained of by Plaintiff SEIU Local 790 will be suffered exclusively by a separate organization, SEIU Local 1877 (see Docket No. 28 at 6), which is not a party to this action.  The Plaintiff here has utterly failed to show why an injury to a separate local union, which is not the collective bargaining representative recognized by the Employer, should justify its own ability to obtain an injunction against the Board's proceeding.

The Union also has failed to show that its interest in not participating in the deauthorization election outweighs the harm to the employees who have expressed a desire to be permitted to vote on rescinding union-security authority.  As explained above, Congress intended for unions to have presumptive authority to enter into union-security arrangements, but only while preserving an escape valve for an unwilling majority covered by such an agreement.  An injunction here would clearly frustrate the Board's ability to fulfill Congressional intent and the employees' ability to vote on a petition filed by employees covered by an agreement containing a union-security provision.  Thus, the Union's desire to prevent the anticipated election should yield to the substantial public interest expressed by Congress permitting employees to determine whether to rescind a union-security agreement.

Accordingly, in evaluating the "balance of hardships," the greatest hardship would be against the Board and the public interest in maintaining employees' statutory right to rescind a union-security provision.

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Union's request for injunctive relief be denied.

Respectfully submitted,

Dated: June 8, 2007

ERIC G. MOSKOWITZ
Assistant General Counsel
National Labor Relations Board
Special Litigation Branch
1099 14th Street, NW
Washington, DC 20570
Tel: (202) 273-2930
Fax: (202) 273-1799

1

2                               s/Nancy E. Kessler Platt

NANCY E. KESSLER PLATT
Supervisory Attorney

3

4                               - and -

5                               DAWN L. GOLDSTEIN
Senior Attorney
6                               Tel: (202) 273-2936

7                               OLIVIA GARCIA
Regional Attorney
8                               National Labor Relations Board – Region 20
901 Market Street, Suite 400
9                               San Francisco, CA  94103
Tel:  (415) 356-5151
10                            Fax:  (415) 356-5156

11                             KATHLEEN C. SCHNEIDER No. 174058
Attorney – Region 20
12                            Tel: (415) 356-5157

13

14

15

16

17

18

19

20

21

22

23

24

25

NLRB'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER
– NO. 07-cv-02766-PJH