1  VINCENT A. HARRINGTON, JR., Bar No. 071119
   DAVID A. ROSENFELD, Bar No. 058163
2  ERIC M. BORGERSON, Bar No. 177943
   WEINBERG, ROGER & ROSENFELD
3  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
4  Alameda, California 94501-1091
   Telephone 510.337.1001
5  Fax 510.337.1023

6  Attorneys for Plaintiff
   Service Employees International Union, Local 790

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH P. NORELLI, Individually, and in his capacity as Regional Director, NATIONAL LABOR RELATIONS BOARD, REGION 20; ROBERT J. BATTISTA, Individually and in his Capacity as Chairman and Member of the NATIONAL LABOR RELATIONS BOARD; PETER N. KIRSANOW, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD; DENNIS P. WALSH, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD; WILMA B. LIEBMAN, Individually, and in her Capacity as a Member of the NATIONAL LABOR RELATIONS BOARD; PETER CARY CHAUMBER, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD, <br><br> Defendants. | No.   C07-2766 PJH <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' (AND PROPOSED INTERVENER'S) OPPOSITION TO TEMPORARY RESTRAINING ORDER PENDING SCHEDULED HEARING ON PRELIMINARY INJUNCTION, SET FOR JUNE 27, 2007** <br><br> Date: <br> Time: <br> Judge: |

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

MEMORANDUM OF P & A IN REPLY TO OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A.  DEFENDANTS IMPROPERLY TRIVIALIZE AND ATTEMPT TO EVADE JUDGE HAMILTON'S ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE ................................................................. 1

    B.  DEFENDANTS' NOTICE OF INTENT TO PROCEED WITH THE DISPUTED ELECTION, ANNOUNCED *AFTER* THE SHOW CAUSE ORDER ISSUED, STATING THE ELECTION WOULD COMMENCE FIVE DAYS BEFORE THE SCHEDULED SHOW CAUSE HEARING, IS WHAT TRIGGERED PLAINTIFF'S MOTION AND IS WHY A TRO IS NECESSARY ......................... 2

    C.  *LEEDOM* ESTABLISHED THAT THIS COURT POSSESSES JURISDICTION UNDER 28 U.S.C. § 1337 TO ADJUDICATE AN ORIGINAL SUIT IN EQUITY CHALLENGING AN *ULTRA VIRES* ACTION BY THE NLRB IN VIOLATION OF A MANDATORY STATUTORY COMMAND. ................................................. 4

    D.  THIS IS NOT A REPRESENTATION CASE, SO THE AUTHORITIES GOVERNING JUDICIAL REVIEW OF REPRESENTATION RULINGS ARE IMMATERIAL; PLAINTIFF HAS NO MEANS BY WHICH TO OBTAIN JUDICIAL REVIEW, INDIRECT OR OTHERWISE, OTHER THAN BY THIS LAWSUIT. .................................................................................................. 5

    E.  DEFENDANTS' REFILING OF THE SAME PREMATURELY GATHERED SIGNATURES UNDER THE COVER OF A RECYCLED PETITION DOES NOT CURE THE JURISDICTIONAL DEFECT IN THE BOARD'S DECISION AND ORDER. ................................................................................ 7

    F.  DEFENDANTS IGNORE THE PLAIN LANGUAGE, STATUTORY HISTORY, AND ADJUDICATORY CONSTRUCTION OF NLRA § 9(E)(1). ...... 8

    G.  DEFENDANTS IGNORE THE LANGUAGE AND SUBSTANCE OF THE NLRB'S PRIOR INCONSISTENT RULING IN *ATLANTIC*. ........................ 12

    H.  THE UNION HAS SHOWN IT WILL SUFFER IRREPARABLE HARM IF THE ILLEGAL ELECTION PROCEEDS; DEFENDANTS WILL SUFFER NO HARM FROM A BRIEF DELAY IN ORDER FOR JUDGE HAMILTON TO CONDUCT THE PREVIOUSLY SCHEDULED SHOW CAUSE HEARING. ..... 14

    I.  THE PROPOSED INTERVENER HAS ADDED NOTHING OF SUBSTANCE TO DEFENDANTS' ARGUMENTS ............................................. 15

III. CONCLUSION ............................................................................................................ 16

**WEINBERG, ROGER &
ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

# TABLE OF AUTHORITIES

**Federal Cases**

*Bays v. Miller*,
   524 F.2d 631 (9th Cir. 1975) .................................................................................................. 6

*Brotherhood of Teamsters v. Madden*,
   343 F.2d 497 (7th Cir. 1965) .................................................................................................. 5

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ...................................................................................................... 4, 5, 7

*NLRB v. Van Luitt & Co.*,
   597 F.2d 681, 684 (9th Cir. 1979) ........................................................................................ 12

**Federal Statutes**

28 U.S.C. § 1337 ........................................................................................................................... 4

29 U.S.C. § 159 ............................................................................................................................. 6

29 U.S.C. § 159(e)(1). ............................................................................................................ passim

**NLRB Cases**

*Great Atlantic & Pacific Tea Company*,
   100 NLRB 1494 (1952) ........................................................................................... 12, 13, 14

*Madison Industries*,
   349 NLRB No. 114 (May 31, 2007) ...................................................................................... 3

**Legislative History**

United States Code Congressional and Administrative Service,
82nd Congress, First Session, 1951
H.R. Rep. No. 1082 at 2-3 .................................................................................................... 10, 11

(Section 9(e)(1), LMRA, 1947,
Chapter 120, Public Law 101,
*United States Code Congressional and Administrative Service*,
8th Congress, First Session, 1947.) ............................................................................................ 11

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

ii

MEMORANDUM OF P & A IN REPLY TO OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

Plaintiff Service Employees International Union, Local 790 ("Local 790" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in Reply to the Opposition of the Defendants To Plaintiff's Motion For Temporary Restraining Order Pending Scheduled Hearing On Preliminary Injunction, Set For June 27, 2007.

Plaintiff maintains that the intervention motion filed by attorneys claiming to represent Stephen J. Burke should be denied for the reasons set forth in Plaintiff's Opposition to Motion for Leave to Intervene. Nevertheless, Plaintiff will briefly reply to the hyperbolic assertions submitted by proposed Intervener in opposition to Plaintiff's TRO Motion.

## II. ARGUMENT

### A. DEFENDANTS IMPROPERLY TRIVIALIZE AND ATTEMPT TO EVADE JUDGE HAMILTON'S ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE.

Belittling Judge Hamilton's issuance of an Order to Show Cause Why Preliminary Injunction Should Not Issue, Defendants pretend that their stipulation to a *date* for hearing on Plaintiff's Motion for Preliminary Injunction, which Defendants opposed on the merits, indicates that Judge Hamilton's issuance of the Order means "precisely nothing." (Court Docket, Document 32 at p. 6, line 12.)

Defendants' claim that "the Board <u>never objected to the holding of a hearing</u> regarding the Union's Motion for Preliminary Injunction" (*Id*. at lines 9-10, emphasis in original) is belied by the Defendants' filing of their "Response to Plaintiff's Request for Order to Show Cause and in Opposition to Preliminary Injunction" (Docket Document 14.) In that document, Defendants submitted to Judge Hamilton lengthy argument to the effect that the court lacked jurisdiction to entertain Plaintiff's Complaint and request for injunctive relief and, therefore, to conduct related hearings. Defendants also argued at length that Plaintiff could not meet the standards for issuance of injunctive relief. Nowhere in that document do Defendants give any reason to suspect that they did not oppose a hearing on Plaintiff's motion. To the contrary, Defendants' "response" to Plaintiff's request for Order to Show Cause consisted solely of arguments that the court lacked jurisdiction and Plaintiff lacked meritorious claims.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

1
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Under Defendants' novel rules of procedure, the Court apparently has no choice but to issue an Order to Show Cause if the parties stipulate to a date when injunction motions may be heard, notwithstanding that one party vigorously argues on substantive grounds that the Order should not issue at all.

Judge Hamilton had before her both Plaintiff's request for Order to Show Cause and Motion for Preliminary Injunction and supporting papers, as well as Defendants papers in opposition when she issued the Order to Show Cause Why Preliminary Injunction Should Not Issue. Defendants' trivialization of the court's role and of its issuance of an Order to Show Cause after reading papers on both sides of the issue is improper and in poor form.

Defendants therefore fail to address the fact that Judge Hamilton found sufficient merit in Plaintiff's papers to warrant ordering Defendants to explain why an injunction should not issue. They must not now be allowed to evade Judge Hamilton's order by racing ahead with the very election Judge Hamilton has ordered them to appear and defend lest an injunction issue. Defendants' disingenuous and disrespectful argument, submitted in defense of their hasty attempt to conduct the election before Judge Hamilton requires them to show whether they possess the authority to conduct it, underscores the need for a Temporary Restraining Order to preserve the status quo for a few days so that Judge Hamilton may hold the hearing she scheduled on June 1.

**B.    DEFENDANTS' NOTICE OF INTENT TO PROCEED WITH THE DISPUTED ELECTION, ANNOUNCED *AFTER* THE SHOW CAUSE ORDER ISSUED, STATING THE ELECTION WOULD COMMENCE FIVE DAYS BEFORE THE SCHEDULED SHOW CAUSE HEARING, IS WHAT TRIGGERED PLAINTIFF'S MOTION AND IS WHY A TRO IS NECESSARY.**

Defendants mischaracterize Plaintiff's reason for filing its TRO Motion when it did. Plaintiff did not "delay" filing its motion. (See Defendants' Opposition to Motion for Temporary Restraining Order, Docket Document 32 at pp. 5-6.) The necessity for the motion was caused by Defendants' late-breaking notice, sent out *after* Judge Hamilton had issued her Order to Show Cause Why Preliminary Injunction Should Not Issue, after she had scheduled the Show Cause hearing for June 27, 2007, and after she had commenced her three-week leave, announcing that

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

2
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants intended to commence the unlawful election on June 22, 2007, five days before the hearing at which Judge Hamilton ordered them to explain why the election should not be enjoined. Defendants' haste to conduct the election before the court has a chance to rule on whether the Board possesses jurisdiction to order it is what triggered the need for a TRO. Defendants' attempts to characterize the filing of the TRO motion as reflecting delay by Plaintiff are disingenuous at best, and in bad faith at worst.

As argued in Plaintiff's Memorandum in support of its TRO Motion, Defendants attempt to attribute the source of delay to Plaintiff when Defendants have held up this matter for 18 months since the de-authorization petition was first filed. Plaintiff attempted to work cooperatively with Defendants to have the question of whether the Board acted in excess of its jurisdiction addressed by the Court on a Motion for Preliminary Injunction. Defendants, after feigning agreement to such a collegial approach, waited until after the Order to Show Cause issued and until a few hours after the judge commenced her leave from the court to announce their intent to proceed with the election before she returned. In their opposition to Plaintiff's TRO motion, Defendants now try to turn their bait and switch into a claim that Plaintiff somehow delayed these proceedings. Their argument is wholly without merit and further underscores the need for a TRO.

Defendants apparently take issue with Plaintiff's suggestion that a TRO should maintain the status quo not only until the Show Cause hearing, but until Judge Hamilton rules. (*Id*. at p. 6, lines 13-17.) Clearly, the TRO would have no value if it did not enjoin the disputed election until such time as Judge Hamilton rules on whether the Board possesses jurisdiction to order it. The fact remains that the delay requested is very brief, particularly in light of the 18-month delay caused by the Board's notoriously slow adjudicatory process.[1]

In sum, the brief delay requested by Plaintiff to allow Judge Hamilton to rule on whether

---

[1] The NLRB is well known and widely criticized for its extremely slow disposition of cases on appeal to the Board itself. For example, the Board recently issued its decision in *Madison Industries*, 349 NLRB No. 114 (May 31, 2007), after sitting on it for a full *five years*. A cursory search of NLRB decisions reveals that the Board commonly delays issuing any decision on matters before it for years at a time. The instant case has been pending for 18 months. In light of this, the Board's suggestion that Plaintiff's request for a TRO briefly enjoining the election until Judge Hamilton rules is some sort of improper "delay" is without any merit.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

3
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

the Board possesses jurisdiction to order the disputed election is negligible in comparison to the delay produced by the Board's own bureaucratic inertia. A TRO is needed to enjoin Defendants' declared intent to switch from delay to sudden haste in order to evade Judge Hamilton's scrutiny of their Decision and Order on jurisdictional grounds.

## C. *LEEDOM* ESTABLISHED THAT THIS COURT POSSESSES JURISDICTION UNDER 28 U.S.C. § 1337 TO ADJUDICATE AN ORIGINAL SUIT IN EQUITY CHALLENGING AN *ULTRA VIRES* ACTION BY THE NLRB IN VIOLATION OF A MANDATORY STATUTORY COMMAND.

Defendants misconstrue the content of the U.S. Supreme Court's ruling in *Leedom v. Kyne*, 358 U.S. 184 (1958) ("*Leedom*"), and its application to this case. As argued at length in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, the Court in *Leedom* held that the District Court possesses jurisdiction under 28 U.S.C. § 1337 to entertain an original suit in equity which challenges an action by the NLRB undertaken in excess of the Board's jurisdiction because it violated a clear statutory mandate. *Leedom*, 358 U.S. at 190.

Inexplicably, Defendants assert in their Opposition to Plaintiff's TRO Motion that the issue of whether the Board possesses jurisdiction to order the election herein is not at issue. (Docket Document 32 at p. 6, fn 3.) Defendants state, "In fact, the central issue in this case is whether the extraordinarily narrow circumstances delineated under Leedom … are present in this case sufficient for this Court to have jurisdiction to enjoin the Board's proceeding", emphasis in original.)

Defendants ignore the fact that those "extraordinarily narrow circumstances delineated in *Leedom*" are that the Board has acted in excess of its jurisdiction by issuing an order that violates a mandatory statutory command. Thus, plainly, under the *Leedom* analysis, whether the Board possessed jurisdiction to order the election is quintessentially what is at issue. The District Court's jurisdiction is predicated, precisely, upon the fact that Plaintiff's lawsuit alleges that the Board acted in excess of its jurisdiction. *Leedom* makes clear that the court possesses jurisdiction to examine the Board's action to determine whether it is within the scope of the jurisdiction granted to the Board by Congress.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

4
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Contrary to Defendant's deceptive characterization, *Local Union No. 714, International Brotherhood of Teamsters v. Madden*, 343 F.2d 497 (7th Cir. 1965) ("*Madden*"), corroborates the appropriateness of judicial review of the Board's *ultra vires* action at issue herein. In *Madden* the Seventh Circuit, consistent with the holding in *Leedom*, stated, "A prerequisite to review of the Board's order is the determination by the District Court that there is a violation of a clear and mandatory provision of the Act." (*Id*. at 499.) It is true that the Court in *Madden* found that on the facts particular to that case, the Board's order of an election without first holding a formal hearing did not violate a clear and mandatory provision of the Act. There is nothing about that fact-specific holding that undermines the Seventh Circuit's general application of, and agreement with, the principal from *Leedom* that the Court possesses jurisdiction to overturn *ultra vires* actions of the Board. The issue here is not whether the Board should have held a formal hearing, as in *Madden*. The issue here is that the Board ordered an election based on a petition that was not signed by employees who were covered by a collective bargaining agreement containing a union security clause, which is a statutory prerequisite to Board action set forth at Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1). *Madden*, like the *Leedom* case it applies, establishes that the District Court unequivocally possesses jurisdiction under such circumstances.

Moreover, not only this Court's jurisdiction, but the need for an injunction barring the election, rest on the determination that the Board lacked jurisdiction to order the election based on the petition at issue herein. Defendants' attempt to cast *Leedom* as confining the issues in this case to this Court's jurisdiction is mere sophistry and ignores the underlying substantive issue, that the Board acted *ultra vires* and must be enjoined from implementing its extra-jurisdictional Order.

**D.   THIS IS NOT A REPRESENTATION CASE, SO THE AUTHORITIES GOVERNING JUDICIAL REVIEW OF REPRESENTATION RULINGS ARE IMMATERIAL; PLAINTIFF HAS NO MEANS BY WHICH TO OBTAIN JUDICIAL REVIEW, INDIRECT OR OTHERWISE, OTHER THAN BY THIS LAWSUIT.**

Defendants devote much of their brief to citing wholly inapposite case law when they repeatedly mistakenly identify this case as a "representation" case. Defendants never provide authority for that erroneous characterization. Instead, they attempt to distract the court by citing

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

5
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

1  and expounding upon rules of law that do not apply to the de-authorization proceeding at issue
2  herein.
3  　　　　Specifically, Defendants correctly recite the law governing representation cases at pages 7
4  to 8 of their Memorandum in Opposition to Temporary Restraining Order.  (Docket Document 32
5  at 7-8.)  They correctly point out, as did Plaintiff in its Memorandum of Points and Authorities In
6  Support of Preliminary Injunction, that, in representation cases, i.e., ones in which the
7  determination of an appropriate bargaining unit and matters related to the union's certification as
8  exclusive bargaining representative are determined, there is no right to direct judicial review of
9  NLRB rulings.  Rather, in such cases, review may be obtained indirectly through seeking judicial
10 review of a related unfair labor practice charge, triggered by one party's refusal to bargain because
11 of its dispute over the representation issue.  This, as discussed in Plaintiff's opening memorandum
12 is a "technical refusal to bargain."
13 　　　　The problem with Defendants' analysis is that it erroneously suggests that the rulings
14 regarding representation cases apply to *this* case, apparently because both sorts of cases arise under
15 Section 9 of the NLRA, 29 U.S.C. § 159.  Defendants conflate *de-authorization proceedings*, under
16 which  employees are permitted by NLRA § 9(e)(1) to petition the Board for an election to rescind
17 a union security clause negotiated in a collective bargaining agreement by those employees'
18 exclusive representative, with *representation proceedings*, under which the determination of an
19 appropriate unit and the designation of an exclusive representative are determined, pursuant to
20 NLRA § 9(a), (b), and (c).  NLRB rulings in representation cases can be reviewed indirectly for
21 abuse of discretion through the technical refusal to bargain.  No such procedure is available for
22 review, indirect or otherwise, of the NLRB's ruling on a de-authorization issue under NLRA
23 §9(e)(1).
24 　　　　Thus, Defendants misrepresent the applicable law when they cite cases such as *Bays v.*
25 *Miller*, 524 F.2d 631, 633 (9th Cir. 1975) ("*Bays*") as holding that review of a de-authorization
26 ruling has been relegated by Congress to use of the technical-refusal-to-bargain procedure.
27 (Document 32 at 7-8.)  Plaintiff brought cases like *Bays* to the attention of this Court in its opening
28 memorandum in order to illustrate that, *unlike in representation proceedings*, there is no procedure

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

6
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

1  by which to obtain judicial review of the Board's action in a de-authorization proceeding.
2  Defendants simply ignore this distinction and pretend that de-authorization proceedings are a
3  category of representation proceedings, which they indisputably are not.

4  Thus, Defendants assert a fact only tangentially relevant to this proceeding when they state
5  "Consistent with *Boire* [*v. Greyhound*, 376 U.S. 473 (1964)], the courts have refused to extend
6  their jurisdictional reach to review the Board's representation determinations alleged to have
7  resulted in an error of law, where the Board did not act in violation of a specific statutory
8  command." (Docket Document 32 at 9, lines 8-10; citations omitted.)  It is true that representation
9  rulings cannot be directly reviewed for errors of law.  But, that point is irrelevant to this proceeding
10 on two grounds: this is not a representation case and Plaintiff does not seek review of the Board's
11 order for an error of law or abuse of discretion.  In accordance with the rule set forth in *Leedom*,
12 Plaintiff asks this court to overturn the Board's issuance of an Order in excess of its jurisdiction
13 that violates a mandatory statutory command.

14 For the same reasons, Defendants' recitation of cases in which the courts do not exercise
15 jurisdiction to correct errors of law or abuses of statutorily conferred discretion at page 9 of
16 Defendants' opposition to Plaintiff's TRO motion have no relevance to this case, other than to
17 underscore that this is not a petition for review in the ordinary sense, as the Court in *Leedom*
18 explained.  It is a request to have the court overturn an *ultra vires* act of the Board.

### E. DEFENDANTS' REFILING OF THE SAME PREMATURELY GATHERED SIGNATURES UNDER THE COVER OF A RECYCLED PETITION DOES NOT CURE THE JURISDICTIONAL DEFECT IN THE BOARD'S DECISION AND ORDER.

22 Defendants next argue that Plaintiff's case lacks merit because the disputed election
23 purportedly is based upon a "new" petition that was filed in April 2007, well after the agreement
24 containing the union security clause went into effect.  Defendants neglect to acknowledge that this
25 allegedly "new" petition is, in fact, the same petition filed on January 11, 2006, recycled with a
26 new date and, most importantly, that it is based on *the same prematurely gathered signatures* as the
27 original petition.

28 Defendants may be correct that the refiling of the petition after the agreement went into

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

7
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

effect could satisfy the requirement that the petition be filed only when such an agreement is in effect. However, that maneuver does not cure the jurisdictional defect in the Board's ruling because the fact remains that the signatures were gathered not only before an agreement was executed, but before negotiations for it even had begun.

The main issue in dispute in this case is whether the Board is prohibited by Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1), from ordering an election based on a petition signed by employees in a bargaining unit that was not covered by an agreement containing a union security clause when the signatures were gathered. As discussed in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction and in the following sections, the plain language of §9(e)(1), the construction of its language by courts and the NLRB itself, and the legislative history of the provision make clear that the Board may only order an election based on a petition signed by 30 percent of the members of a bargaining unit at such time as they are covered by an agreement containing a union security clause.

### F. DEFENDANTS IGNORE THE PLAIN LANGUAGE, STATUTORY HISTORY, AND ADJUDICATORY CONSTRUCTION OF NLRA § 9(e)(1).

The arguments presented at pages 9 to 14 of Defendants' Memorandum In Opposition to Motion for Temporary Restraining Order (Document 32) are most notable for their lack of novelty and for their non-responsiveness to Plaintiff's arguments in its Memorandum of Points and Authorities In Support of Motion for Preliminary Injunction. Defendants arguments regarding the proper construction of NLRA § 9(e)(1) boil down to a summary of the NLRB majority's analysis, which is what Plaintiff has argued was an exercise in extra-jurisdictional overreaching by the Board that lacked any foundation in the text, adjudicatory construction, and legislative history of § 9(e)(1).

The crux of Defendants' argument is that (1) the language of Section 9(e)(1) is "inconclusive" as to when signatures in support of a de-authorization petition must be gathered; and (2) the legislative history in some general sense evinced Congress' continued intent to preserve the rights of employees to recind a union security provision to which they objected if 30 percent of

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

8
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

the employees covered by such a provision petitioned for an election regarding its removal.  Based on those two points, the NLRB majority and the Defendants to this action reach the conclusion that the Board possesses jurisdiction to order an election based on a de-authorization petition signed by employees who were not covered by an agreement containing a union security clause.

The flaws in Defendants arguments, as argued in Plaintiff's opening memorandum, are threefold.  First, the plain language of §9(e)(1) makes clear that the de-authorization procedure is available only to employees who are covered by a collective bargaining agreement containing a union security clause.  Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1), states,

> Upon the filing with the Board, by 30 per centum or more *of the employees in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3)*, of a petition alleging the desire that such authority be *rescinded*, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(Emphasis added.)

Writing in dissent from the NLRB majority's faulty analysis, Member Walsh observed that the majority "strains to find an ambiguity in the statutory language that simply is not there." (D.&O. at p. 7.)  Nothing in the statutory language suggests that employees need only be covered by a union security clause when a de-authorization petition is filed, as opposed to when the signatures are gathered.  As Member Walsh observed:

> The plain meaning of Section 9(e)(1) is that the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision.  The statute explicitly says that a deauthorization petition must be supported by 30 percent or more of the employees "*in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3)*."

(Complaint Ex. 1, p. 6, emphasis in original.)

Thus, "[t]he plain language of the Act dictates that the signatures supporting a deauthorization petition must be signatures of employees who are already subject to an effective union-security provision," Walsh correctly observed.  (*Ibid.*)  The statute provides that employees covered by a union security agreement may submit a petition in order to "rescind" "such authority", referring to the union security agreement.  Contrary to the interpretation advanced by

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

9
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

the Defendants herein, the provision does not state that employees can "preclude" a union security agreement, "prohibit", "preempt", or otherwise prospectively divest the Union of its authority to negotiate such an agreement. The statute states that if at least 30 percent of the employees who are *covered* by a union security agreement negotiated pursuant to NLRA § 8(a)(3) sign a petition, they can request an election to "*rescind*" the authority contained in the agreement. As noted by Member Walsh,

> The Board is not free to speculate as to Congressional intent where – as here – the text of the statute clearly addresses the question at hand. The plain language of the Act dictates that the signatures supporting a deauthorization petition must be signatures of employees who are already subject to an effective union-security provision.

(D.&O. at 7.)

The second flaw in Defendants' analysis is that it conflicts with the legislative history of § 9(e)(1). Walsh also reviewed the legislative history of § 9(e)(1) (discussed *infra*), and observed that in 1951, Congress eliminated a requirement that Union security clauses, to be effective, must be authorized by a majority vote of the bargaining unit. Walsh observed,

> In eliminating authorization elections and devising the current statutory scheme, Congress explicitly aimed to avoid the unnecessary and inefficient expenses involved in the authorization process, while simultaneously protecting the right of employees to choose to free themselves of an unwanted union-security clause.

(*Id.* at p. 7, citing H.R. Rep. No. 1082, 82d Cong., 1st Sess., at 2-3 (1951).)

Walsh reasoned that "[u]sing Board resources to conduct an election when the majority of the signatures supporting the petition were collected before the parties even began negotiating a contract exemplifies the kind of inefficiency that Congress sought to eliminate by doing away with authorization elections." (*Ibid.*) At the same time, Walsh noted, "dismissing the petition leaves intact the right of employees to promptly deauthorize the union-security clause if they desire to do so." (*Id.*)

Member Walsh's dissent is rooted in detail in the legislative history of current section 9(e)(1), while the Board Majority's and Defendants' argument for creation of a new procedure to allow employees to prospectively preclude or preempt a union's ability to negotiate a union security clause in the first place has no basis in the legislative history. The only support

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

10
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants offer for imputing to Congress the creation of such a new procedure by way of the amendments to the NLRA in 1951 is the fact that Congress evinced a continued generalized intent to allow employees covered by a union security provision an opportunity to petition for its recission. That generalized observation of Congressional intent does not override the more specific legislative history discussed in Plaintiff's Memorandum of Points and Authorities in Support of Preliminary Injunction and summarized briefly as follows.

The original § 9(e)(1), enacted through the Taft Hartley amendments to the Wagner Act in 1947, required that, before a union security clause could go into effect, it must be ratified or authorized by a majority vote of affected bargaining unit members in a secret ballot election. (Section 9(e)(1), LMRA, 1947, Chapter 120, Public Law 101, *United States Code Congressional and Administrative Service*, 8th Congress, First Session, 1947.) Once a union had been certified as an exclusive bargaining agent and had negotiated with the employer a collective bargaining agreement containing a union security clause, it remained necessary for parties who supported the union security clause to petition for an election regarding the clause. Only after a majority of the bargaining unit members approved giving the union the authority to "make" such a union security agreement could the provision go into effect.

The 1947 version of Section 9(e)(2) was worded nearly exactly as current Section 9(e)(1) (with the exception of its reference to former Section 8(a)(3)(ii), which is not at issue herein), thereby granting employees in a unit covered by a Union security clause which had previously been approved through an election the ability to petition for its recission. (*Id*. at § 9(e)(2).)

Section 9(e) was amended again in 1951. The most significant of the changes, as recounted by House Report No. 1082, was to "…dispense with the requirement of existing law that an election be held before a labor organization and an employer may make a union-shop agreement" because such authorization elections "have imposed a heavy administrative burden on the Board, have involved a large expenditure of funds, and have almost always resulted in a vote favoring the union shop." (*United States Code Congressional and Administrative Service*, 82nd Congress, First Session, 1951, House Report No. 1082 at pp. 2379-2381 ("H.R. Rep. No. 1082"), pp. 2380-2381.) To implement this change, the Bill eliminated the requirement for an election to authorize a union

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

11
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

shop agreement by deleting § 9(e)(1). The Bill then re-codified the text of § 9(e)(2) to its current location at § 9(e)(1), thereby leaving in place the procedure for employees in a bargaining unit covered by a union security agreement to petition for an election regarding whether to de-authorize the union security clause.

There is nothing in the legislative history to suggest that Congress intended to create a *new* procedure through which employees could be organized to prospectively hamstring their representative from negotiating for a union security clause. To the contrary, the retention of the identical de-authorization language from old § 9(e)(2) and simultaneous elimination of the authorization election requirement from old § 9(e)(1), particularly in light of the rationale for the change – namely that authorization elections were in essence mere formalities, strongly indicates that Congress intended the de-authorization procedure to apply, as the statute states on its face, only to employees covered by an agreement containing a union security provision.

The third defect in Defendants' statutory construction argument, as discussed in the following section, is that case law, including the Board's own earlier ruling in *Great Atlantic & Pacific Tea Company*, 100 NLRB 1494 (1952) ("*Atlantic*") have, consistent with this legislative history, clearly and rationally construed current Section 9(e)(1) as creating a procedure that only becomes available when a union security clause is in effect.

**G.  DEFENDANTS IGNORE THE LANGUAGE AND SUBSTANCE OF THE NLRB'S PRIOR INCONSISTENT RULING IN *ATLANTIC*.**

Defendants simply ignore Plaintiff's detailed discussion of the Board's earlier, inconsistent ruling in *Atlantic*, *supra*, wherein the Board clearly recognized that the de-authorization procedure set forth at Section 9(e)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(e)(1), becomes available only after a collective bargaining agreement containing a union security clause is in effect. (*Atlantic*, *supra*, 100 NLRB at 1497; accord, *NLRB v. Van Luitt & Co.*, 597 F.2d 681, 684 (9th Cir. 1979) (citing *Atlantic*).

Instead, Defendants again resort to a very generalized interpretation of the Board's holding in *Atlantic* and other cases and state that, taken together, the Board's rulings "show a consistent

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

12
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

construction of Section 9(e)(1) to protect employees' ability to choose whether to rescind authorization for a union security agreement." (Document 32 at p. 12, lines 9-11.) As with Defendants' discussion of the legislative history, this generalized policy of ensuring that employees have the ability to rescind union security agreements to which they object does not, in any way, explain the NLRB's imputation to Congress a silently expressed intent in 1951 to create a new, prospective procedure that did not exist in the very text that Congress left in place when it eliminated the authorization election procedure.

Defendants neglect even to address the detailed quotations from *Atlantic* cited in Plaintiff's opening memorandum that unequivocally undercut Defendants' arguments. For example, the Board observed in *Atlantic* that:

> That fundamental protection was accorded employees under the amended procedure by providing a method, *negative instead of affirmative*, and *subsequent instead of precedent*, for determining their desires. Thus, Congress by the 1951 amendments, accomplished its purpose of eliminating the prior costly authorization elections but retaining the earlier safeguard. This was done by giving labor organizations a *presumptive authority to enter into union-shop agreements* and at the same time providing an *escape for any unwilling majority covered by such an agreement*, through the opportunity afforded by Section 9(e)(1) for an affirmative deauthorization vote.

(100 NLRB at 1497, emphasis added.) The Board clearly understood the Congressional intent in 1952, a year after the amendment: By removing the authorization procedure and leaving in place the de-authorization procedure, Congress created a presumptive right for a union to negotiate a union security provision and *retained* the procedure by which employees who objected to such an agreement could sign a petition, if they numbered 30 percent of the bargaining unit covered by the agreement or greater, to *rescind* the agreement. Defendants offer no explanation for the Board's departure from its own well-reasoned precedent.

Moreover, Defendants' attempt to contort *Atlantic* to justify the Board's action in this case fails on its own logic. The contention that Congress wanted to avoid *any* delay in implementing employees' desire not to be subject to a union security clause, as the Defendants would have this Court view *Atlantic* as holding, is contradicted by the fact, which Defendants do not dispute, that *filing* of a de-authorization petition must wait until after a union security clause is in effect. Why

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

13
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

1  waste everyone's time by forcing employees to wait until the Union has negotiated such a clause
2  before they can file the petition if avoiding delay is the goal?  Yet Defendants impute to Congress a
3  sudden abhorrence to such delay when it is pointed out that the statute also requires that signatures
4  for the petition must be gathered after the agreement is in effect.  The language of the statute, cases
5  (including *Atlantic*) that have interpreted it, and its legislative history all make clear that the entire
6  de-authorization procedure, from signature gathering to filing, does not come into play unless and
7  until there is a union security clause to rescind.

### H. THE UNION HAS SHOWN IT WILL SUFFER IRREPARABLE HARM IF THE ILLEGAL ELECTION PROCEEDS; DEFENDANTS WILL SUFFER NO HARM FROM A BRIEF DELAY IN ORDER FOR JUDGE HAMILTON TO CONDUCT THE PREVIOUSLY SCHEDULED SHOW CAUSE HEARING.

11  Defendants grossly mischaracterize the balance of interests and potential repercussions in
12  this case when they pit the harm Plaintiff will suffer if the Board is allowed to proceed with an
13  election that is beyond its jurisdiction to order against the grandiosely defined "public interest in
14  permitting employees to rescind a union security agreement." (Document 32 at 14.)  The public's
15  interest in permitting employees to rescind a union security agreement is not in jeopardy in this
16  proceeding.  Rather, what is at issue here the Board's extra-jurisdictional attempt to unlawfully
17  order an election based on a petition that is not permitted by the statute on which the Board relies.
18  If the unlawful election is delayed and ultimately prohibited in this case, the public, and the
19  employees covered by the agreement in this case, will retain the right to gather signatures for and,
20  if they garner 30 percent support, to file, a lawful petition.
21  Moreover, contrary to the misrepresentations by Defendants, the cost to Local 790 is not
22  just the cost of this litigation, it is the cost of being forced to divert resources to conduct a
23  campaign against a de-authorization petition and election that were unlawfully ordered by the
24  NLRB acting *ultra vires*.  The harm to the members of the Union in having to endure such a
25  disruptive election when they know that the legality of the election is hotly disputed would be
26  irreparable and is not a matter of money.  It is immaterial that the union local that would be
27  conducting the campaign is Local 1877, since that local is servicing employees in the affected
28  bargaining unit, is affiliated with Local 790, and acts in concert with Local 790 to represent the

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

14
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

interests of the bargaining unit members. The irreparable harm that will result from proceeding with the unlawful election will irreparably harm Local 790 and its sibling Local simultaneously for the simple reason that those locals are, together, the representative of the employees who certified SEIU to be their exclusive representative.

Defendants complain that, if the court were to enjoin the unlawful election, the petitioners would be forced to gather signatures all over again. Such a requirement would simply be that they comply with the terms of the law governing de-authorization petitions. There is nothing about the burdens associated with requiring parties to comply with the law that undercuts the necessity for a restraining order to enjoin disobedience of the law and *ultra vires* actions by a governmental agency. The only harm to Defendants is that they will have their jurisdiction clearly defined in accordance with their statutory grant of authority and will be precluded from acting in excess of it.

Defendants state "As explained above, Congress intended for unions to have presumptive authority to enter into union-security agreements, but only while preserving an escape valve for an unwilling majority covered by such an agreement." (Document 32 at 16, lines 3-5.) Plaintiff could not agree more. That escape valve consists of the gathering of signatures by 30 percent of the bargaining unit that is covered by an agreement containing a union security clause and submission of a petition signed by those individuals for recission of the clause. It does not consist of a preemptive procedure by which the union's presumptive right to negotiate the clause may be prospectively divested.

## I. THE PROPOSED INTERVENER HAS ADDED NOTHING OF SUBSTANCE TO DEFENDANTS' ARGUMENTS.

Plaintiff maintains that intervention should be denied for the reasons set forth in Plaintiff's Opposition to Motion for Leave to Intervene. The proposed Intervener's failure to add anything of substance to the arguments regarding the requested TRO underscores Plaintiff's arguments in opposition to intervention. Nevertheless, Plaintiff will briefly respond to the proposed Intervener's memorandum in opposition to Plaintiff's TRO Motion.

Proposed Intervener argues, in sum, that it's "all about money" for Local 790 and the Union

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

15
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

is unlawfully in possession of *Burke's* money in the form of mandatory dues; that Local 790 has been campaigning against de-authorization for a year and a half so claiming that a campaign now would cause irreparable harm would be "laughable if it were not pitiful"; that Burke and his "supporters" are suffering direct injury every day their election is delayed; and that the NLRB sagely recognized that it would take "months" for Burke and his supporters to communicate with all the employees in the unit if they were forced to file a lawful petition.

First, as argued above, the irreparable harm to the bargaining unit and the union locals servicing and representing it consists not just of the expense and organizational burdens associated with diverting critical resources to a campaign regarding an unlawful election, it is in the form of the disruption and demoralization that would come from employees being forced to vote in an election which they know is hotly disputed on grounds that the Board is acting in excess of its jurisdiction. The case is not, for Plaintiff, all about money, though it appears to be for Burke.

Second, as discussed above, the year and a half delay was caused by the NLRB, not Plaintiff. Thus, proposed Intervener's claim that a few additional days' delay in order for Defendants to comply with the Order to Show Cause so that an extra-jurisdictional act of the Board can be avoided would be "laughable if it were not pitiful". Burke and his supporters have filed an unlawful petition, thus their "suffering" is, at best illusory and at worst, negligible because if the court were to find that the petition were lawful, the election could proceed forthwith. We are only talking about a delay of a few days.

Finally, it is immaterial that Burke and his supporters would be required to gather signatures again if their first petition were found to be invalid under NLRA §9(e)(1). The law requires what it requires. Burke is not entitled to a special dispensation from the Congressional scheme governing de-authorization petitions simply because he finds compliance with the law inconvenient.

### III. CONCLUSION

For the foregoing reasons, it is respectfully requested that:

1. A temporary restraining order issue enjoining the Board from conducting the disputed de-authorization election until Judge Hamilton has ruled on Plaintiff's

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

16
REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1. Motion for Preliminary Injunction after the hearing scheduled for June 27, 2007;

2. The court order any other remedy it deems just and proper; and

Dated: June 12, 2007

    WEINBERG, ROGER & ROSENFELD
    A Professional Corporation
        Vincent A. Harrington, Jr.
        David A. Rosenfeld
        Eric M. Borgerson

    By: /s/
        VINCENT A. HARRINGTON
        Attorneys for Plaintiff
        Service Employees International Union, Local 790

116046/459685

17

REPLY MEMORANDUM OF P& A IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER