DAVID A. ROSENFELD, Bar No. 058163
VINCENT A. HARRINGTON, JR., Bar No. 071119
ERIC M. BORGERSON, Bar No. 177943
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Telephone 510.337.1001
Fax 510.337.1023

Attorneys for Plaintiff
Service Employees International Union, Local 790

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH P. NORELLI, Individually, and in his capacity as Regional Director, NATIONAL LABOR RELATIONS BOARD, REGION 20; ROBERT J. BATTISTA, Individually and in his Capacity as Chairman and Member of the NATIONAL LABOR RELATIONS BOARD; PETER N. KIRSANOW, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD; DENNIS P. WALSH, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD; WILMA B. LIEBMAN, Individually, and in her Capacity as a Member of the NATIONAL LABOR RELATIONS BOARD; PETER CARY CHAUMBER, Individually, and in his Capacity as a Member, NATIONAL LABOR RELATIONS BOARD,<br><br>Defendants. | No.   C07-2766 PJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' (AND PROPOSED INTERVENER'S) OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: June 27, 2007<br>Time: 9:00 a.m.<br>Judge: Honorable Phyllis J. Hamilton |

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. *Leedom* Established that this Court Possesses Jurisdiction Under 28 U.S.C. § 1337 to Adjudicate an Original Suit in Equity Challenging an *Ultra Vires* Action by the NLRB in Violation of a Mandatory Statutory Command ............................................................................................... 1

    B. This is Not a Representation Case, so the Authorities Governing Judicial Review of Representation Rulings are Immaterial; Plaintiff Has No Means by which to Obtain Judicial Review, Indirect or Otherwise, Other than by this Lawsuit ......................................................................... 4

    C. Defendants' Refiling of the Same Prematurely Gathered Signatures Under the Cover of a Recycled Petition Does Not Cure the Jurisdictional Defect in the Board's Decision and Order ..................................... 6

    D. Defendants Ignore the Plain Language, Statutory History, and Adjudicatory Construction of NLRA § 9(e)(1) ................................................. 7

    E. Defendants Ignore the Language and Substance of The NLRB's Prior Inconsistent Ruling in *Atlantic* ................................................................ 11

    F. The Union Has Shown It Will Suffer Irreparable Harm if the Illegal Election Proceeds; Defendants Will Suffer No Harm from Injunction of the Unlawful Election ............................................................... 12

    G. The Proposed Intervener Has Added Nothing of Substance to Defendants' Arguments ............................................................................................ 14

III. CONCLUSION ................................................................................................................. 15

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bays v. Miller*,
   524 F.2d 631 (9th Cir. 1975) .................................................................................................. 5

*Boire v. Greyhound Corp.*,
   376 U.S. 473 (1964) ................................................................................................................ 5

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ................................................................................................................ 2

*Local Union No. 714, International Brotherhood of Teamsters v. Madden*,
   343 F.2d 497 (7th Cir. 1965) .................................................................................................. 3

*NLRB v. Van Luitt & Co.*,
   597 F.2d 681 (9th Cir. 1979) ................................................................................................ 11

**FEDERAL STATUTES**

29 U.S.C. § 159 ........................................................................................................................ passim

28 U.S.C. § 1337 ......................................................................................................................... 1, 2

**NLRB CASES**

*Great Atlantic & Pacific Tea Company*,
   100 NLRB 1494 (1952) ............................................................................................. 11, 12, 14

**LEGISLATIVE HISTORY**

Section 9(e)(1), LMRA, 1947,
Chapter 120, Public Law 101,
*United States Code Congressional and Administrative Service*,
8th Congress, First Session, 1947 .................................................................................................. 9

United States Code Congressional and Administrative Service,
82nd Congress, First Session, 1951
H.R. Rep. No. 1082 ................................................................................................................. 9, 10

**WEINBERG, ROGER &
ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

ii

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

## I. INTRODUCTION

Plaintiff Service Employees International Union, Local 790 ("Local 790" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in Reply to the Opposition to Motion for Preliminary Injunction submitted by Defendants.

As argued in its Opposition to Motion for Leave to Intervene, Plaintiff maintains that the Motion for Leave to Intervene filed by Messrs. Taubman and Young should be denied because, *inter alia*, the prospective Intervener's purported interests in this litigation are more than adequately represented by Defendants and their counsel. Plaintiff also notes that the proposed Intervener's Opposition to Motion for Preliminary Injunction merely restates arguments already presented by counsel for the NLRB and adds nothing to the analysis. Nevertheless, Plaintiff's arguments in this memorandum are respectfully submitted in reply to both the NLRB and the proposed Intervener.

## II. ARGUMENT

Defendants' arguments in opposition to Plaintiff's Motion for Preliminary Injunction fail for the same reasons as the nearly identical arguments submitted in opposition to Plaintiff's Motion for Temporary Restraining Order. Plaintiff incorporates herein by reference its Reply in Support of Motion for Temporary Restraining Order. Plaintiff also submits the following arguments.

**A.  *LEEDOM* ESTABLISHED THAT THIS COURT POSSESSES JURISDICTION UNDER 28 U.S.C. § 1337 TO ADJUDICATE AN ORIGINAL SUIT IN EQUITY CHALLENGING AN *ULTRA VIRES* ACTION BY THE NLRB IN VIOLATION OF A MANDATORY STATUTORY COMMAND.**

Defendants mischaracterize Plaintiff's Complaint for Declaratory and Injunctive Relief as well as Plaintiff's Motion for Preliminary Injunction when they assert that the central issue here is whether the Court possesses jurisdiction "to review or enjoin the Board's exercise of its discretion pursuant to Section 9(e)(1) of the National Labor Relations Act … to conduct an election for employees to consider deauthorizing a union-security agreement." (Docket Document 14 at 1, lines 7-10.)[1] As argued at length in Plaintiff's Memorandum of Points and Authorities in Support

---

[1] Proposed Intervener makes similar, unmeritorious claims throughout its brief. Proposed Intervener is correct that whether a de-authorization petition may be based on signatures of

of Motion for Preliminary Injunction, Plaintiff does not seek this Court's review of the Board's exercise of statutorily-conferred discretion. To the contrary, Plaintiff asks this Court to overturn an action of the Board in excess of its jurisdiction because it directly violates a clear, mandatory, statutory command in Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1). That provision mandates that a de-authorization election may only be based on a petition supported by signatures of 30 percent or more of the members of a bargaining unit at a time when they are covered by a collective bargaining agreement containing a union-security clause. It is undisputed that the petition giving rise to the election at issue herein was not supported by signatures of employees who were covered by a collective bargaining agreement containing a union security clause. Hence, the Board's Decision and Order constitute an ultra vires action of the Board.

Defendants misconstrue the content of the U.S. Supreme Court's ruling in *Leedom v. Kyne*, 358 U.S. 184 (1958) ("*Leedom*"), and its application to this case. As argued at length in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, the Court in *Leedom* held that the District Court possesses jurisdiction under 28 U.S.C. § 1337 to entertain an original suit in equity which challenges an action by the NLRB undertaken in excess of the Board's jurisdiction because it violated a clear statutory mandate. *Leedom*, 358 U.S. at 190.

Thus, where, as here, the Board has acted in excess of its statutory jurisdiction, the *Leedom* analysis explains that the court's general jurisdiction in equity extends to scrutiny of the agency's *ultra vires* action. Such jurisdiction does not depend on a statutory jurisdictional grant because it is not invoked by a petition for review of the agency's exercise of discretion vested in it by Congress. To the contrary, the proceedings herein constitute a request by Plaintiff that the Court overturn an action by the NLRB in excess of its statutory jurisdiction. Consequently, Defendants' dissertation on confinement of the court's jurisdiction to situations where such jurisdiction is statutorily granted (See Docket Document 14 at 6-7) is wholly inapposite to this case.

---

employees who are not covered by a collective bargaining agreement containing a union security clause is an important issue in this case. Its relevance is that the Board, by finding such a petition valid, violated a clear statutory mandate, set forth at NLRA Section 9(e)(1), and thereby acted in excess of its statutory jurisdiction, which is what gives this Court jurisdiction under the Leedom analysis and which is why a Preliminary Injunction is needed to stop the Board from implementing its *ultra vires* Decision and Order.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

2

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

Contrary to Defendants' deceptive characterization at pages 16 to 17 of their Opposition to Motion for Preliminary Injunction (Docket 14 at 16-17), *Local Union No. 714, International Brotherhood of Teamsters v. Madden*, 343 F.2d 497 (7th Cir. 1965) ("*Madden*"), corroborates the appropriateness of judicial review of the Board's *ultra vires* action at issue herein. In *Madden* the Seventh Circuit, consistent with the holding in *Leedom*, stated, "A prerequisite to review of the Board's order is the determination by the District Court that there is a violation of a clear and mandatory provision of the Act." (*Id.* at 499.) It is true that the Court in *Madden* found that on the facts particular to that case, the Board's order of an election without first holding a formal hearing did not violate a clear and mandatory provision of the Act. There is nothing about that fact-specific holding that undermines the Seventh Circuit's general application of, and agreement with, the principal from *Leedom* that the Court possesses jurisdiction to overturn *ultra vires* actions of the Board. The issue here is not whether the Board should have held a formal hearing, as in *Madden*. The issue here is that the Board ordered an election based on a petition that was not signed by employees who were covered by a collective bargaining agreement containing a union security clause, which is a statutory prerequisite to Board action set forth at Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1). *Madden*, like the *Leedom* case it applies, establishes that the District Court unequivocally possesses jurisdiction under such circumstances.

Defendants attempt to distract this Court from Plaintiff's substantive claim: that the Board acted *ultra vires* and must be enjoined from implementing its extra-jurisdictional Order. Rather than grapple with the settled principle under the *Leedom* analysis that this Court possesses jurisdiction to review and overturn *ultra vires* actions of the Board, Defendants present an unmeritorious argument that this is a representation case and that rules governing such cases apply here. As argued in the following section, this unequivocally is not a representation case and Defendants' arguments against this court's exercise of jurisdiction to review the Board's *ultra vires* actions are wholly without merit.

/ / /

/ / /

/ / /

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

3

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

**B.  THIS IS NOT A REPRESENTATION CASE, SO THE AUTHORITIES GOVERNING JUDICIAL REVIEW OF REPRESENTATION RULINGS ARE IMMATERIAL; PLAINTIFF HAS NO MEANS BY WHICH TO OBTAIN JUDICIAL REVIEW, INDIRECT OR OTHERWISE, OTHER THAN BY THIS LAWSUIT.**

Defendants devote much of their brief to citing wholly inapposite case law when they repeatedly mistakenly identify this case as a "representation" case. Defendants never provide authority for that erroneous characterization. Instead, they attempt to distract the court by citing and expounding upon rules of law that do not apply to the de-authorization proceeding at issue herein.

Specifically, Defendants correctly recite the law governing representation cases at pages 7 to 9 of their Opposition to Preliminary Injunction. (Docket Document 14 at 7-9.) They correctly point out, as did Plaintiff in its Memorandum of Points and Authorities In Support of Preliminary Injunction, that, in representation cases, i.e., ones in which the determination of an appropriate bargaining unit and matters related to the union's certification as exclusive bargaining representative are determined, there is no right to direct judicial review of NLRB rulings. Rather, in such cases, review may be obtained indirectly through seeking judicial review of a related unfair labor practice charge, triggered by one party's refusal to bargain because of its dispute over the representation issue. This, as discussed in Plaintiff's opening memorandum is a "technical refusal to bargain."

The problem with Defendants' analysis is that it erroneously suggests that the rulings regarding representation cases apply to *this* case, apparently because both sorts of cases arise under Section 9 of the NLRA, 29 U.S.C. § 159. Defendants conflate *de-authorization proceedings*, under which employees are permitted by NLRA § 9(e)(1) to petition the Board for an election to rescind a union security clause negotiated in a collective bargaining agreement by those employees' exclusive representative, with *representation proceedings*, under which the determination of an appropriate unit and the designation of an exclusive representative are determined, pursuant to NLRA § 9(a), (b), and (c). NLRB rulings in representation cases can be reviewed indirectly for abuse of discretion through the technical refusal to bargain. No such procedure is available for

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

4

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

review, indirect or otherwise, of the NLRB's ruling on a de-authorization issue under NLRA §9(e)(1).

Thus, Defendants misrepresent the applicable law when they cite cases such as *Boire v. Greyhound Corp.*, 376 U.S. 473 (1964) ("*Boire*") and *Bays v. Miller*, 524 F.2d 631, 633 (9th Cir. 1975) ("*Bays*") as holding that review of a de-authorization ruling has been relegated by Congress to use of the technical-refusal-to-bargain procedure. (Document 14 at 7-8.) Plaintiff brought cases like *Boire* and *Bays* to the attention of this Court in its opening memorandum in order to illustrate that, *unlike in representation proceedings*, there is no procedure by which to obtain judicial review of the Board's action in a de-authorization proceeding. Defendants simply ignore this distinction and pretend that de-authorization proceedings are a category of representation proceedings, which they indisputably are not.

Thus, Defendants assert a fact only tangentially relevant to this proceeding when they state "Consistent with *Boire* [*v. Greyhound*, 376 U.S. 473 (1964)], the courts have refused to extend their jurisdictional reach to review the Board's representation determinations alleged to have resulted in an error of law, where the Board did not act in violation of a specific statutory command." (Docket Document 14 at 11, lines 1-3; citations omitted.) It is true that representation rulings cannot be directly reviewed for errors of law. But, that point is irrelevant to this proceeding on two grounds: this is not a representation case and Plaintiff does not seek review of the Board's order for an error of law or abuse of discretion. In accordance with the rule set forth in *Leedom*, Plaintiff asks this court to overturn the Board's issuance of an Order in excess of its jurisdiction that violates a mandatory statutory command.

For the same reasons, Defendants' recitation of cases in which the courts do not exercise jurisdiction to correct errors of law or abuses of statutorily conferred discretion at pages 9 to 11 of Defendants' Opposition to Preliminary Injunction have no relevance to this case, other than to underscore that this is not a petition for review in the ordinary sense, as the Court in *Leedom* explained. It is a request to have the court overturn an *ultra vires* act of the Board.

/ / /

/ / /

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

5
Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

**C. DEFENDANTS' REFILING OF THE SAME PREMATURELY GATHERED SIGNATURES UNDER THE COVER OF A RECYCLED PETITION DOES NOT CURE THE JURISDICTIONAL DEFECT IN THE BOARD'S DECISION AND ORDER.**

Defendants and proposed Intervener disingenuously argue that Plaintiff's case lacks merit because the disputed election purportedly is based upon a "new" petition that was filed in April 2007, well after the agreement containing the union security clause went into effect. (Document 14 at 5, lines 5-7; 12, lines 3-5; Document 17 at 5, lines 5-13.) Defendants and proposed Intervener neglect to acknowledge that this allegedly "new" petition is, in fact, the same petition filed on January 11, 2006, recycled with a new date and, most importantly, that it is based on *the same prematurely gathered signatures* as the original petition.

Defendants may be correct that the refiling of the petition after the agreement went into effect could satisfy the requirement that the petition be filed only when such an agreement is in effect. However, that maneuver does not cure the jurisdictional defect in the Board's ruling because the fact remains that the signatures were gathered not only before an agreement was executed, but before negotiations for it even had begun.[2]

The main issue in dispute in this case is whether the Board is prohibited by Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1), from ordering an election based on a petition signed by employees in a bargaining unit that was not covered by an agreement containing a union security clause when the signatures were gathered. As discussed in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction and in the following sections, the plain language of §9(e)(1), the construction of its language by courts and the NLRB itself, and the legislative history of the provision make clear that the Board may only order an election based on a petition signed by 30 percent of the members of a bargaining unit at such time as they are covered

---

[2] It bears emphasizing that the tally of the contract ratification vote conducted by Local 790 between December 28 and December 31, 2005, established that 378 employees voted in favor of the agreement, *including the Union security clause at issue herein*, and 229 voted against it. (Complaint ¶¶ 22-23 and Ex. 1 at p. 2.) That vote occurred *after* Burke collected his signatures. Thus, Burke indisputably attempted to use the de-authorization procedure preemptively. By the time he filed his stale signatures, the same bargaining unit had voted by a majority to *authorize* the union security agreement. Yet, Burke attempted to thwart that will of the majority with his petition.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

6

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

by an agreement containing a union security clause.

### D. DEFENDANTS IGNORE THE PLAIN LANGUAGE, STATUTORY HISTORY, AND ADJUDICATORY CONSTRUCTION OF NLRA § 9(e)(1).

The arguments presented at pages 9 to 17 of Defendants' Opposition to Preliminary Injunction (Document 14) are most notable for their lack of novelty and for their non-responsiveness to Plaintiff's arguments in its Memorandum of Points and Authorities In Support of Motion for Preliminary Injunction. Defendants' arguments regarding the proper construction of NLRA § 9(e)(1) boil down to a summary of the NLRB majority's analysis, which is what Plaintiff has argued was an exercise in extra-jurisdictional overreaching by the Board that lacked any foundation in the text, adjudicatory construction, and legislative history of § 9(e)(1).

The crux of Defendants' argument is that (1) the language of Section 9(e)(1) is "inconclusive" as to when signatures in support of a de-authorization petition must be gathered; and (2) the legislative history in some general sense evinced Congress' continued intent to preserve the rights of employees to rescind a union security provision to which they objected if 30 percent of the employees covered by such a provision petitioned for an election regarding its removal. Based on those two points, the NLRB majority and the Defendants to this action reach the conclusion that the Board possesses jurisdiction to order an election based on a de-authorization petition signed by employees who were not covered by an agreement containing a union security clause.

The flaws in Defendants arguments, as argued in Plaintiff's opening memorandum, are threefold. First, the plain language of §9(e)(1) makes clear that the de-authorization procedure is available only to employees who are covered by a collective bargaining agreement containing a union security clause. Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1), states,

> Upon the filing with the Board, by 30 per centum or more *of the employees in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3)*, of a petition alleging the desire that such authority be *rescinded*, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(Emphasis added.)

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

7

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

Writing in dissent from the NLRB majority's faulty analysis, Member Walsh observed that the majority "strains to find an ambiguity in the statutory language that simply is not there." (D.&O. at p. 7.) Nothing in the statutory language suggests that employees need only be covered by a union security clause when a de-authorization petition is filed, as opposed to when the signatures are gathered. As Member Walsh observed:

> The plain meaning of Section 9(e)(1) is that the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision. The statute explicitly says that a deauthorization petition must be supported by 30 percent or more of the employees "*in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3).*"

(Complaint Ex. 1, p. 6, emphasis in original.)

Thus, "[t]he plain language of the Act dictates that the signatures supporting a deauthorization petition must be signatures of employees who are already subject to an effective union-security provision," Walsh correctly observed. (*Ibid.*) The statute provides that employees covered by a union security agreement may submit a petition in order to "rescind" "such authority", referring to the union security agreement. Contrary to the interpretation advanced by the Defendants herein, the provision does not state that employees can "preclude" a union security agreement, "prohibit", "preempt", or otherwise prospectively divest the Union of its authority to negotiate such an agreement. The statute states that if at least 30 percent of the employees who are *covered* by a union security agreement negotiated pursuant to NLRA § 8(a)(3) sign a petition, they can request an election to "*rescind*" the authority contained in the agreement. As noted by Member Walsh,

> The Board is not free to speculate as to Congressional intent where – as here – the text of the statute clearly addresses the question at hand. The plain language of the Act dictates that the signatures supporting a deauthorization petition must be signatures of employees who are already subject to an effective union-security provision.

(D.&O. at 7.)

The second flaw in Defendants' analysis is that it conflicts with the legislative history of § 9(e)(1). Walsh also reviewed the legislative history of § 9(e)(1) (discussed *infra*), and observed that in 1951, Congress eliminated a requirement that Union security clauses, to be effective, must be

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

8
Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

authorized by a majority vote of the bargaining unit. Walsh observed,

> In eliminating authorization elections and devising the current statutory scheme, Congress explicitly aimed to avoid the unnecessary and inefficient expenses involved in the authorization process, while simultaneously protecting the right of employees to choose to free themselves of an unwanted union-security clause.

(*Id*. at p. 7, citing H.R. Rep. No. 1082, 82d Cong., 1st Sess., at 2-3 (1951).)

Walsh reasoned that "[u]sing Board resources to conduct an election when the majority of the signatures supporting the petition were collected before the parties even began negotiating a contract exemplifies the kind of inefficiency that Congress sought to eliminate by doing away with authorization elections." (*Ibid*.) At the same time, Walsh noted, "dismissing the petition leaves intact the right of employees to promptly deauthorize the union-security clause if they desire to do so." (*Id*.)

Member Walsh's dissent is rooted in detail in the legislative history of current section 9(e)(1), while the Board Majority's and Defendants' argument for creation of a new procedure to allow employees to prospectively preclude or preempt a union's ability to negotiate a union security clause in the first place has no basis in the legislative history. The only support Defendants offer for imputing to Congress the creation of such a new procedure by way of the amendments to the NLRA in 1951 is the fact that Congress evinced a continued generalized intent to allow employees covered by a union security provision an opportunity to petition for its recission. That generalized observation of Congressional intent does not override the more specific legislative history discussed in Plaintiff's Memorandum of Points and Authorities in Support of Preliminary Injunction and summarized briefly as follows.

The original § 9(e)(1), enacted through the Taft Hartley amendments to the Wagner Act in 1947, required that, before a union security clause could go into effect, it must be ratified or authorized by a majority vote of affected bargaining unit members in a secret ballot election. (Section 9(e)(1), LMRA, 1947, Chapter 120, Public Law 101, *United States Code Congressional and Administrative Service*, 8th Congress, First Session, 1947.) Once a union had been certified as an exclusive bargaining agent and had negotiated with the employer a collective bargaining agreement containing a union security clause, it remained necessary for parties who supported the

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

9

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

union security clause to petition for an election regarding the clause. Only after a majority of the bargaining unit members approved giving the union the authority to "make" such a union security agreement could the provision go into effect.

The 1947 version of Section 9(e)(2) was worded nearly exactly as current Section 9(e)(1) (with the exception of its reference to former Section 8(a)(3)(ii), which is not at issue herein), thereby granting employees in a unit covered by a Union security clause which had previously been approved through an election the ability to petition for its recission. (*Id*. at § 9(e)(2).)

Section 9(e) was amended again in 1951. The most significant of the changes, as recounted by House Report No. 1082, was to "…dispense with the requirement of existing law that an election be held before a labor organization and an employer may make a union-shop agreement" because such authorization elections "have imposed a heavy administrative burden on the Board, have involved a large expenditure of funds, and have almost always resulted in a vote favoring the union shop." (*United States Code Congressional and Administrative Service*, 82nd Congress, First Session, 1951, House Report No. 1082 at pp. 2379-2381 ("H.R. Rep. No. 1082"), pp. 2380-2381.) To implement this change, the Bill eliminated the requirement for an election to authorize a union shop agreement by deleting § 9(e)(1). The Bill then re-codified the text of § 9(e)(2) to its current location at § 9(e)(1), thereby leaving in place the procedure for employees in a bargaining unit covered by a union security agreement to petition for an election regarding whether to de-authorize the union security clause.

There is nothing in the legislative history to suggest that Congress intended to create a *new* procedure through which employees could be organized to prospectively hamstring their representative from negotiating for a union security clause. To the contrary, the retention of the identical de-authorization language from old § 9(e)(2) and simultaneous elimination of the authorization election requirement from old § 9(e)(1), particularly in light of the rationale for the change – namely that authorization elections were in essence mere formalities, strongly indicates that Congress intended the de-authorization procedure to apply, as the statute states on its face, only to employees covered by an agreement containing a union security provision.

The third defect in Defendants' statutory construction argument, as discussed in the

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

10

following section, is that case law, including the Board's own earlier ruling in *Great Atlantic & Pacific Tea Company*, 100 NLRB 1494 (1952) ("*Atlantic*") have, consistent with this legislative history, clearly and rationally construed current Section 9(e)(1) as creating a procedure that only becomes available when a union security clause is in effect.

### E. DEFENDANTS IGNORE THE LANGUAGE AND SUBSTANCE OF THE NLRB'S PRIOR INCONSISTENT RULING IN *ATLANTIC*.

Defendants simply ignore Plaintiff's detailed discussion of the Board's earlier, inconsistent ruling in *Atlantic*, *supra*, wherein the Board clearly recognized that the de-authorization procedure set forth at Section 9(e)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(e)(1), becomes available only after a collective bargaining agreement containing a union security clause is in effect. (*Atlantic*, *supra*, 100 NLRB at 1497; accord, *NLRB v. Van Luitt & Co.*, 597 F.2d 681, 684 (9th Cir. 1979) (citing *Atlantic*).

Instead, Defendants again resort to a very generalized interpretation of the Board's holding in *Atlantic* and other cases and state that, taken together, the Board's rulings "show a consistent construction of Section 9(e)(1) to protect employees' ability to choose whether to rescind authorization for a union security agreement." (Document 14 at p. 14, lines 6-8.) As with Defendants' discussion of the legislative history, this generalized policy of ensuring that employees have the ability to rescind union security agreements to which they object does not, in any way, explain the NLRB's imputation to Congress a silently expressed intent in 1951 to create a new, prospective procedure that did not exist in the very text that Congress left in place when it eliminated the authorization election procedure.

Defendants neglect even to address the detailed quotations from *Atlantic* cited in Plaintiff's opening memorandum that unequivocally undercut Defendants' arguments. For example, the Board observed in *Atlantic* that:

> That fundamental protection was accorded employees under the amended procedure by providing a method, *negative instead of affirmative*, and *subsequent instead of precedent*, for determining their desires. Thus, Congress by the 1951 amendments, accomplished its purpose of eliminating the prior costly authorization elections but retaining the earlier safeguard. This was done by giving labor organizations a *presumptive authority to enter into union-shop agreements* and at the same time providing an *escape*

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

11

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

> *for any unwilling majority covered by such an agreement*, through the opportunity afforded by Section 9(e)(1) for an affirmative deauthorization vote.

(100 NLRB at 1497, emphasis added.) The Board clearly understood the Congressional intent in 1952, a year after the amendment: By removing the authorization procedure and leaving in place the de-authorization procedure, Congress created a presumptive right for a union to negotiate a union security provision and *retained* the procedure by which employees who objected to such an agreement could sign a petition, if they numbered 30 percent of the bargaining unit covered by the agreement or greater, to *rescind* the agreement. Defendants offer no explanation for the Board's departure from its own well-reasoned precedent.

Moreover, Defendants' attempt to contort *Atlantic* to justify the Board's action in this case fails on its own logic. The contention that Congress wanted to avoid *any* delay in implementing employees' desire not to be subject to a union security clause, as the Defendants would have this Court view *Atlantic* as holding, is contradicted by the fact, which Defendants do not dispute, that *filing* of a de-authorization petition must wait until after a union security clause is in effect. Why waste everyone's time by forcing employees to wait until the Union has negotiated such a clause before they can file the petition if avoiding delay is the goal? Yet Defendants impute to Congress a sudden abhorrence to such delay when it is pointed out that the statute also requires that signatures for the petition must be gathered after the agreement is in effect. The language of the statute, cases (including *Atlantic*) that have interpreted it, and its legislative history all make clear that the entire de-authorization procedure, from signature gathering to filing, does not come into play unless and until there is a union security clause to rescind.

**F.   THE UNION HAS SHOWN IT WILL SUFFER IRREPARABLE HARM IF THE ILLEGAL ELECTION PROCEEDS; DEFENDANTS WILL SUFFER NO HARM FROM INJUNCTION OF THE UNLAWFUL ELECTION.**

Defendants grossly mischaracterize the balance of interests and potential repercussions in this case when they pit the harm Plaintiff will suffer if the Board is allowed to proceed with an election that is beyond its jurisdiction to order against the grandiosely defined "public interest in permitting employees to rescind a union security agreement." (Document 14 at 1, lines 15-19; 19,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

12
Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

lines 5-7.) The public's interest in permitting employees to rescind a union security agreement is not in jeopardy in this proceeding. Rather, what is at issue here the Board's extra-jurisdictional attempt to unlawfully order an election based on a petition that is not permitted by the statute on which the Board relies. If the unlawful election is delayed and ultimately prohibited in this case, the public, and the employees covered by the agreement in this case, will retain the right to gather signatures for and, if they garner 30 percent support, to file, a lawful petition.

Moreover, contrary to the misrepresentations by Defendants, the cost to Local 790 is not just the cost of this litigation, it is the cost of being forced to divert resources to conduct a campaign against a de-authorization petition and election that were unlawfully ordered by the NLRB acting *ultra vires*. The harm to the members of the Union in having to endure such a disruptive election when they know that the legality of the election is hotly disputed would be irreparable and is not a matter of money. It is immaterial that the union local that would be conducting the campaign is Local 1877, since that local is servicing employees in the affected bargaining unit, is affiliated with Local 790, and acts in concert with Local 790 to represent the interests of the bargaining unit members. The irreparable harm that will result from proceeding with the unlawful election will irreparably harm Local 790 and its sibling Local simultaneously for the simple reason that those locals are, together, the representative of the employees who certified SEIU to be their exclusive representative.

Defendants complain that, if the court were to enjoin the unlawful election, the petitioners would be forced to gather signatures all over again. Such a requirement would simply be that they comply with the terms of the law governing de-authorization petitions. There is nothing about the burdens associated with requiring parties to comply with the law that undercuts the necessity for a restraining order to enjoin disobedience of the law and *ultra vires* actions by a governmental agency. The only harm to Defendants is that they will have their jurisdiction clearly defined in accordance with their statutory grant of authority and will be precluded from acting in excess of it.

Defendants state "As explained above, Congress intended for unions to have presumptive authority to enter into union-security agreements, but only while preserving an escape valve for an unwilling majority covered by such an agreement." (Document 14 at 18, line 25, to 19, line 2.)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

13

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

Plaintiff could not agree more. That escape valve consists of the gathering of signatures by 30 percent of the bargaining unit that is covered by an agreement containing a union security clause and submission of a petition signed by those individuals for recission of the clause. It does not consist of a preemptive procedure by which the union's presumptive right to negotiate the clause may be prospectively divested.

### G. THE PROPOSED INTERVENER HAS ADDED NOTHING OF SUBSTANCE TO DEFENDANTS' ARGUMENTS.

Plaintiff maintains that intervention should be denied for the reasons set forth in Plaintiff's Opposition to Motion for Leave to Intervene. The proposed Intervener's failure to add anything of substance to the arguments regarding the requested Preliminary Injunction underscores Plaintiff's arguments in opposition to intervention. Nevertheless, Plaintiff will briefly respond to the proposed Intervener's memorandum in opposition to Plaintiff's Motion for Preliminary Injunction.

Proposed Intervener argues, in sum, that the Union's claimed harm is solely economic and the Union is unlawfully in possession of *Burke's* money in the form of mandatory dues; that cases like *Bays* and *Boire*, *supra*, foreclose Plaintiff's arguments; that Burke and his supporters are suffering harm to their statutory rights; and that Local 790 should have to post a bond for the period during which the injunction is in effect.

First, as argued above, the irreparable harm to the bargaining unit and the union locals servicing and representing it consists not just of the expense and organizational burdens associated with diverting critical resources to a campaign regarding an unlawful election, it is in the form of the disruption and demoralization that would come from employees being forced to vote in an election which they know is hotly disputed on grounds that the Board is acting in excess of its jurisdiction. The case is not, for Plaintiff, all about money, though it appears to be for Burke.

Second, Burke and his supporters have filed an unlawful petition, thus their "suffering" is a product of their own dissatisfaction with the governing law, and is not a result of any interference with their statutory rights.[3]

---

[3] It is immaterial that Burke and his supporters would be required to gather signatures again if their first petition were found to be invalid under NLRA §9(e)(1). The law requires what it

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

14

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)

1       Finally, as Plaintiff's complaint is against a public entity, no bond is required, so Burke's argument is wholly without merit.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully requested that:

1. A Preliminary Injunction issue enjoining the Board from conducting the disputed de-authorization election pending trial of this matter;
2. The court order any other remedy it deems just and proper; and

Dated: June 13, 2007

                WEINBERG, ROGER & ROSENFELD
A Professional Corporation
    Vincent A. Harrington, Jr.
    David A. Rosenfeld
    Eric M. Borgerson


By:  /s/ Vincent Harrington
      VINCENT A. HARRINGTON
      Attorneys for Plaintiff
      Service Employees International Union, Local 790

116046/459771

---

requires. Burke is not entitled to a special dispensation from the Congressional scheme governing de-authorization petitions simply because he finds compliance with the law inconvenient.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

15

Memo of P&A in Reply to Defendants' Opposition to Motion for Preliminary Injunction (Case No. C07-2766 PJH)