1  DAVID A. ROSENFELD, Bar No. 058163
   VINCENT A. HARRINGTON, JR., Bar No. 071119
2  ERIC M. BORGERSON, Bar No. 177943
   WEINBERG, ROGER & ROSENFELD
3  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
4  Alameda, California 94501-1091
   Telephone 510.337.1001
5  Fax 510.337.1023

6  Attorneys for Plaintiff
   Service Employees International Union, Local 790

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  SERVICE EMPLOYEES INTERNATIONAL    ) No.    C07-2766 PJH
    UNION, LOCAL 790                   )
12                                     )
                  Plaintiff,           )
13                                     )
          v.                           )
14                                     )
    JOSEPH P. NORELLI, Individually, and in his   ) OPPOSITION TO DEFENDANTS'
15  capacity as Regional Director, NATIONAL       ) (AND PROPOSED INTERVENER'S)
    LABOR RELATIONS BOARD, REGION 20;             ) MOTION TO DISMISS
16  ROBERT J. BATTISTA, Individually and in       )
    his Capacity as Chairman and Member of the    )
17  NATIONAL LABOR RELATIONS BOARD;               )
    PETER N. KIRSANOW, Individually, and in       )
18  his Capacity as a Member, NATIONAL            ) Date:
    LABOR RELATIONS BOARD; DENNIS P.              )
19  WALSH, Individually, and in his Capacity as a ) Time:
    Member, NATIONAL LABOR RELATIONS              )
20  BOARD; WILMA B. LIEBMAN, Individually,        ) Judge:  Honorable Phyllis J. Hamilton
    and in her Capacity as a Member of the        )
21  NATIONAL LABOR RELATIONS BOARD;               )
    PETER CARY CHAUMBER, Individually, and )
22  in his Capacity as a Member, NATIONAL         )
    LABOR RELATIONS BOARD,                        )
23                                                )
                                                  )
24                  Defendants.                   )
    _____ )
25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

MEMORANDUM OF P & A IN REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 1

II.     FACTS .................................................................................................................... 3

III.    ARGUMENT .......................................................................................................... 7

        A.      *LEEDOM* ESTABLISHED THAT THIS COURT POSSESSES
                JURISDICTION UNDER 28 U.S.C. § 1337 TO ADJUDICATE AN
                ORIGINAL SUIT IN EQUITY CHALLENGING AN *ULTRA VIRES*
                ACTION BY THE NLRB IN VIOLATION OF A MANDATORY
                STATUTORY COMMAND........................................................................ 7

        B.      THIS IS NOT A REPRESENTATION CASE, SO THE AUTHORITIES
                GOVERNING JUDICIAL REVIEW OF REPRESENTATION RULINGS
                ARE IMMATERIAL; PLAINTIFF HAS NO MEANS BY WHICH TO
                OBTAIN JUDICIAL REVIEW, INDIRECT OR OTHERWISE, OTHER
                THAN BY THIS LAWSUIT. ................................................................... 10

        C.      DEFENDANTS' REFILING OF THE SAME PREMATURELY GATHERED
                SIGNATURES UNDER THE COVER OF A RECYCLED PETITION
                DOES NOT CURE THE JURISDICTIONAL DEFECT IN THE
                BOARD'S DECISION AND ORDER. ...................................................... 12

        D.      DEFENDANTS IGNORE THE PLAIN LANGUAGE, STATUTORY
                HISTORY, AND ADJUDICATORY CONSTRUCTION OF NLRA § 9(E)(1). ... 13

        E.      DEFENDANTS IGNORE THE LANGUAGE AND SUBSTANCE OF
                THE NLRB'S PRIOR INCONSISTENT RULING IN *ATLANTIC*. ....................... 17

        F.      THE PROPOSED INTERVENER HAS ADDED NOTHING OF
                SUBSTANCE TO DEFENDANTS' ARGUMENTS............................................. 19

IV.     CONCLUSION ..................................................................................................... 19

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

i

TABLE OF AUTHORITIES

**Federal Cases**

*Bays v. Miller,*
   524 F.2d 631 (9th Cir. 1975) ........................................................................... 1, 12

*Boire v. Greyhound Corp.,*
   376 U.S. 473 (1964) ......................................................................................... 12

*Leedom v. Kyne,*
   358 U.S. 184 (1958) ................................................................................... passim

*Local Union No. 714, International Brotherhood of Teamsters v. Madden,*
   343 F.2d 497 (7th Cir. 1965) ......................................................................... 9, 10

*National Association of Agriculture Employees v. Federal Labor Relations Authority,*
   473 F.3d 983 (9th Cir. 2007) ............................................................................. 1

*NLRB v. Van Luitt & Co.,*
   597 F.2d 681 (9th Cir. 1979) ........................................................................... 19

**Federal Statutes**

29 U.S.C. § 158(a)(3) ...................................................................................... 15

29 U.S.C. § 152(5) ............................................................................................ 3

29 U.S. C. § 159 ............................................................................................. 10

29 U.S.C. § 159(e)(1) ................................................................................. passim

29 U.S.C. § 159(a), (b), and (c). ...................................................................... 11

28 U.S.C. § 1337 ............................................................................................

Fed.R.Civ.P. 12(c) .......................................................................................... 20

**NLRB Cases**

*Great Atlantic & Pacific Tea Company,*
   100 NLRB 1494 (1952) ........................................................................ 18, 19, 20

**Legislative History**

*United States Code Congressional and Administrative Service,*
82nd Congress, First Session, 1951,
H.R. No. 1082 at pp. 2379-2381 ("H.R. Rep. No. 1082"), pp. 2380-2381 ..................... 17

*United States Code Congressional and Administrative Service,*
82nd Congress, First Session, 1951,
H.R. Rep. No. 1082, 82d Cong., 1st Sess., at 2-3 ............................................. 6, 16

Section 9(e)(1), LMRA, 1947,
Chapter 120, Public Law 101,
*United States Code Congressional and Administrative Service,*
8th Congress, First Session, 1947. ..................................................................... 17

 WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

ii

OPPOSITION TO MOTION(S) TO DISMISS

1

## I.  __INTRODUCTION__

2        Plaintiff Service Employees International Union, Local 790 ("Local 790" or "Plaintiff")

3  respectfully submits this Memorandum of Points and Authorities in Opposition to Defendants'

4  Motion to Dismiss.

5        As argued in its Opposition to Motion for Leave to Intervene, Plaintiff maintains that the

6  Motion for Leave to Intervene filed by Messrs. Taubman and Young should be denied because,

7  *inter alia*, the prospective Intervener's purported interests in this litigation are more than

8  adequately represented by Defendants and their counsel.  Plaintiff also notes that the proposed

9  Intervener's Motion to Dismiss adds nothing to the analysis presented to the Court by Defendants,

10  which underscores the inappropriateness of granting the Motion to Intervene.  Nevertheless,

11  Plaintiff's arguments in this memorandum are respectfully submitted in Opposition to the Motions

12  to Dismiss of both the NLRB Defendants and the proposed Intervener.

13        Plaintiff's invocation of this Court's original jurisdiction in equity is proper because, as

14  argued herein, the National Labor Relations Board (hereinafter "NLRB" or "Board") and each of

15  the named Defendants (collectively referred to hereinafter as "Defendants") have violated a clear

16  statutory prohibition and Plaintiff has no other means by which to obtain relief for resulting harm it

17  has suffered and continues to suffer.  (See *National Association of Agriculture Employees v.*

18  *Federal Labor Relations Authority*, 473 F.3d 983, 988, fn 5 (9th Cir. 2007) (hereinafter "*National*

19  *Association of Agricultural Employees*"); *Bays v. Miller*, 524 F.2d 631 (9th Cir. 1975) (hereinafter

20  "*Bays*"); *Leedom v. Kyne*, 358 U.S. 184 (1958) (hereinafter "*Leedom*".)

21        Specifically, Defendants have improperly ordered a secret-ballot election regarding whether

22  to "de-authorize" a union security clause contained within a collective bargaining agreement

23  between Local 790 and Covenant Aviation Security, LLC (hereinafter "Employer" or "Covenant"),

24  based on a de-authorization petition that was prematurely filed, and the showing of support for

25  which was improperly and prematurely gathered, before any collective bargaining agreement

26  containing a union security clause was in effect.

27        The Board's Decision and Order setting forth Defendants' rationale for requiring the

28  disputed election violates a clear Congressional prohibition, codified in National Labor Relations

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

1

1  Act (hereinafter "NLRA") § 9(e)(1), 29 U.S.C. § 159(e)(1), which disallows such an election

2  except upon the production of a petition signed by at least 30 percent of a bargaining unit at a time

3  when the members of the unit are covered by a collective bargaining agreement containing a union

4  security clause.

5      The Board improperly ordered an election based on a petition that was signed by employees

6  who were neither covered by a collective bargaining agreement nor a union security clause.  As

7  discussed herein, the plain language of § 9(e)(1), cases that have construed its language and effect,

8  and the legislative history of that provision make clear that Congress did not approve prospective

9  use of the de-authorization process to preclude a Union from negotiating a union security clause.

10  To the contrary, the plain language of the statute and its legislative history demonstrate that only

11  when a union security agreement is *in effect* does § 9(e)(1) confer authority upon bargaining unit

12  members to initiate a proceeding to "rescind" the agreement and upon the Board to order an

13  election based on such a petition.

14      Sound labor policy considerations, involving both administrative economy and preservation

15  of meaningful employee choice regarding union membership and support, underlie this clear

16  statutory command, as discussed *infra*.  It is respectfully submitted that this Court should adopt the

17  rationale articulated by both NLRB Regional Director Joseph P. Norelli (hereinafter "Norelli"),

18  whose decision the NLRB majority overturned, and the well-reasoned dissent authored by NLRB

19  Member Dennis P.Walsh (hereinafter "Walsh").

20      The NLRA provides no procedure by which to seek judicial review of Board

21  determinations on de-authorization issues arising under NLRA § 9(e)(1).  Nor, as discussed below,

22  is there any indirect means by which to secure judicial review, as exists for Board orders regarding

23  bargaining unit determinations.  Moreover, Plaintiff herein does not seek review of the Board's

24  exercise of discretion granted to it by statute.  Rather, Plaintiff asks this court to strike down an

25  action of the Board undertaken in excess of its jurisdiction and in violation of a clear statutory

26  prohibition.  Thus, under settled law, as discussed herein, even were there a mechanism by which

27  to obtain judicial review of the Board's exercise of its discretion over a de-authorization petition,

28  invocation of this court's jurisdiction to review the Board's extra-jurisdictional action would be

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

2

1  proper.  Granting such review is even more strongly proper and necessary where, as here, no such

2  ordinary means by which to seek review of the Board's action is available.

## II.  FACTS

4      The material facts at issue herein are undisputed.[1]  Local 790 is a labor organization within

5  the meaning of the NLRA, 29 U.S.C. § 152(5).  Covenant  is a corporation which, under contract

6  with the federal Transportation Security Administration ("TSA"), employs security personnel who

7  work, as relevant here, at the San Francisco International Airport.

8      On September 30, 2005, a panel of neutrals jointly selected by Local 790 and Covenant

9  conducted a check of written employee authorizations and determined that a majority of Covenant

10  employees at the San Francisco International Airport in an appropriate bargaining unit had selected

11  Local 790 as their collective bargaining representative.

12      Based on that "card check", Covenant recognized Local 790 as its employees' collective

13  bargaining agent on October 3, 2005, and began negotiations with Local 790 on or about

14  November 18, 2005.  Those negotiations resulted in a tentative collective bargaining agreement,

15  the terms of which Local 790 was first able to share with bargaining unit members on December

16  28, 2005.  Thereafter, Local 790 conducted a ratification vote among bargaining unit employees

17  between December 28 and December 31, 2005.

18      The bargaining unit members ratified the agreement by a vote of 378 to 229.  Local 790 did

19  not sign the contract until January 12, 2006, and Covenant did not sign the agreement until January

20  13, 2006.

21      On January 11, 2006, prior to either party signing the tentative agreement, Stephen J. Burke

22  (hereinafter "Burke"), an employee of Covenant, filed a petition with NLRB Region 20, seeking a

23  "de-authorization" vote among Covenant bargaining unit members, pursuant to NLRA § 9(e)(1),

24  29 U.S.C. § 159(e)(1).

25

26  _____

[1]    All facts recited herein are taken from the factual allegations in Plaintiff's verified Complaint,
27  which, in turn, are taken from the Decision of NLRB Regional Director Joseph P. Norelli
(authenticated and attached to the Complaint as Exhibit 1) or from the Decision and Order of
28  the NLRB, dated March 30, 2007, reported at 349 NLRB No. 67 (authenticated and attached to
the Complaint as Exhibit 2).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

3

NLRB Regional Director Norelli conducted an investigation of the de-authorization petition and ultimately dismissed it on March 23, 2006, based on several grounds, summarized as follows:

a.  The petition was filed on January 11, 2006, two days before the Collective Bargaining Agreement between Local 790 and Covenant was executed;

b.  Nearly 70 percent of the signatures submitted in support of the petition were dated in October 2005, and were, therefore, collected over a month before contract negotiations had begun and two or more months before terms of the tentative agreement were disclosed to affected employees for a ratification vote;

c.  Approximately 92 percent of the signatures submitted in support of the petition pre-dated the ratification vote, and every signature pre-dated execution of the Collective Bargaining Agreement on January 13, 2006;

d.  The tally of the contract ratification vote conducted by Local 790 between December 28 and December 31, 2005, established that 378 employees voted in favor of the agreement, including the Union security clause at issue herein, and 229 voted against it.

Based on the language of NLRA § 9(e)(1), 29 U.S.C. § 159(e)(1), the legislative history of that provision, and the language of the relevant NLRB petition form, Norelli concluded that the statute "contemplates that a condition precedent to this type of petition is the existence of a Union Security Clause to which employees are subject."  (Complaint ¶¶ 22-23 and Ex. 1 at p. 2.)

As the de-authorization petition was filed on January 11, 2006 and the collective bargaining agreement between Covenant and Local 790, including the Union security clause, did not become effective until January 13, 2006, Norelli concluded that the petition was prematurely filed because there was no security clause in effect at that time.

Further, Norelli concluded that the petition was defective for the additional and more fundamental reason that NLRA § 9(e)(1) requires that such a petition be supported by at least 30 percent of employees covered by an agreement containing the Union security clause, such that the showing of support "must occur in the context of an existing, rather than a prospective and potential, Union Security Clause."  (Complaint Ex. 1, p. 3.)

Norelli summarized his analysis as follows:

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

4
OPPOSITION TO MOTION(S) TO DISMISS

> Thus, like the Petition, the showing of interest was premature, collected before the Union Security Clause had taken effect and before employees knew what benefits the Collective Bargaining Agreement would provide. This showing of interest does not comport with the plain language of the Act, with the history that led to the Amendment that led to the de-authorization procedure now codified in Section 9(e)(1), or the duty responsibly to budget the agency's resources. Accordingly, the deficiency of the showing of interest also compels dismissal of the instant Petition.

(Complaint Ex. 1, p. 4.)

Burke requested NLRB review of Norelli's decision on April 6, 2006. On March 30, 2007, two Members of the three-Member NLRB panel, Robert J. Battista and Peter N. Kirsanow, issued a Decision and Order reversing dismissal of the petition, reinstating the de-authorization petition, and remanding the matter to Norelli for further action. The Board accepted every material fact found by Norelli concerning the timing of the gathering of signatures in support of the petition, the date of filing of the petition, and the effective date of the agreement between Local 790 and Covenant, including its Union security clause. The majority characterized the issue presented as being one of "first impression: Whether the showing of interest supporting a de-authorization petition may predate the execution of a contract containing a union-security provision." The majority concluded that the showing of interest could lawfully precede the effective date of the agreement containing the union security clause.

Member Walsh dissented from the majority's holding and analysis, reasoning, *inter alia*, as follows:

> The plain meaning of Section 9(e)(1) is that the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision. The statute explicitly says that a deauthorization petition must be supported by 30 percent or more of the employees "*in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3)*."

(Complaint Ex. 2, p. 6, emphasis in original.) Walsh further observed that employees are ill-equipped to decide whether to financially support their union when they have yet to witness what the union is capable of achieving on their behalf. (*Ibid*.)

Walsh also reviewed the legislative history of § 9(e)(1) (discussed *infra*), and observed that in 1951, Congress eliminated a requirement that Union security clauses, to be effective, must be

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

5

OPPOSITION TO MOTION(S) TO DISMISS

1   authorized by a majority vote of the bargaining unit.  Walsh observed,

2           In eliminating authorization elections and devising the current statutory
3           scheme, Congress explicitly aimed to avoid the unnecessary and inefficient
            expenses involved in the authorization process, while simultaneously
            protecting the right of employees to choose to free themselves of an
4           unwanted union-security clause.

5   (*Id*. at p. 7, citing H.R. Rep. No. 1082, 82d Cong., 1ˢᵗ Sess., at 2-3 (1951).)

6           Walsh reasoned that "[u]sing Board resources to conduct an election when the majority of

7   the signatures supporting the petition were collected before the parties even began negotiating a

8   contract exemplifies the kind of inefficiency that Congress sought to eliminate by doing away with

9   authorization elections."  (*Ibid*.)  At the same time, Walsh noted, "dismissing the petition leaves

10  intact the right of employees to promptly deauthorize the union-security clause if they desire to do

11  so."  (*Id*.)

12          Walsh took issue with the majority for ignoring the plain meaning of § 9(e)(1), stating that

13  the majority "strains to find an ambiguity in the statutory language that simply is not there."  (*Id*.)

14  Nothing in the statutory language suggests that employees need only be covered by a union

15  security clause when a de-authorization petition is filed, as opposed to when the signatures are

16  gathered, the dissent maintained.  "The plain language of the Act dictates that the signatures

17  supporting a deauthorization petition must be signatures of employees who are already subject to

18  an effective union-security provision," contended Walsh.

19          Pursuant to the NLRB majority's Decision and Order, on April 5, 2007, Norelli issued an

20  "Order Scheduling Hearing" reinstating the January 2006 de-authorization petition for the apparent

21  purpose of processing it for a de-authorization election.

22          On April 6, 2007, proposed Intervener Burke recycled the petition he had filed on January

23  11, 2006, and refiled it, supported by the same signatures, which had been gathered when no

24  collective bargaining agreement containing a union security clause was in effect.

25          On May 1, 2007, NLRB Region 20 Regional Director Joseph P. Norelli issued a written

26  notice, announcing that a secret-ballot de-authorization election would commence on June 4, 2007,

27  with the mailing of ballots to members of the bargaining unit represented by Local 790.  (See

28  Declaration of David Rosenfeld in support of Motion for Temporary Restraining Order

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

6

1  ("Rosenfeld TRO Dec."), at ¶ 5.)  The election was subsequently suspended briefly due to the fact

2  that Covenant representatives were unable to produce an "Excelsior" list of bargaining unit

3  members to the NLRB because TSA opposed production of that list by Covenant on national

4  security grounds. (*Id*. at ¶ 6.)

5      On June 1, 2007, the Honorable Phyllis J. Hamilton issued an Order to Show Cause Why

6  Preliminary Injunction Should Not Issue and set the matter for a hearing on June 27, 2007 at 9:00

7  a.m.  Several hours later, after Judge Hamilton commenced a three-week leave from the court,

8  Defendants announced that the Excelsior list issue had been resolved and expressed their intent to

9  commence the disputed election by mailing out ballots on June 22, 2007, five days before the

10  scheduled Show Cause hearing.  (*Id*. at ¶ 21.)

11      On June 8, 2007, Plaintiff filed a Motion for Temporary Restraining Order Pending

12  Scheduled Hearing on Preliminary Injunction, Set for June 27, 2007.  Defendants opposed that

13  motion. At the time of submission of this Opposition to Motions to Dismiss, the TRO Motion was

14  still pending.

15                          **III.  <u>ARGUMENT</u>**

16      Defendants' arguments in support of their Motion to Dismiss are identical to their

17  arguments in opposition to Plaintiff's Motion for Temporary Restraining Order and Plaintiff's

18  Motion for Preliminary Injunction.  Plaintiff incorporates herein by reference its Memorandum of

19  Points and Authorities in Support of Motion for Preliminary Injunction, its Reply Memorandum of

20  Points and Authorities in Support of Temporary Restraining Order, and its Reply Memorandum in

21  Support of Preliminary Injunction.

22      Plaintiff also respectfully submits the following arguments.

23  A.  ***LEEDOM* ESTABLISHED THAT THIS COURT POSSESSES JURISDICTION
    **UNDER 28 U.S.C. § 1337 TO ADJUDICATE AN ORIGINAL SUIT IN EQUITY**
24  **CHALLENGING AN *ULTRA VIRES* ACTION BY THE NLRB IN VIOLATION OF**
    **A MANDATORY STATUTORY COMMAND.**
25

26      Defendants mischaracterize Plaintiff's Complaint for Declaratory and Injunctive Relief

27  when they assert that the central issue here is whether the Court possesses jurisdiction "to review

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

7

1  or enjoin the Board's exercise of its discretion pursuant to Section 9(e)(1) of the National Labor

2  Relations Act … to conduct an election for employees to consider deauthorizing a union-security

3  agreement."  (Docket Document 22 at 1, lines 8-13.)[2]  As argued at length in Plaintiff's

4  Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, its Reply

5  Memorandum of Points and Authorities in Support of Temporary Restraining Order, and its Reply

6  Memorandum in Support of Preliminary Injunction, Plaintiff does not seek this Court's review of

7  the Board's exercise of statutorily-conferred discretion.  To the contrary, Plaintiff asks this Court to

8  overturn an action of the Board in excess of its jurisdiction because it directly violates a clear,

9  mandatory, statutory command in Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1).  That

10  provision mandates that a de-authorization election may only be based on a petition supported by

11  signatures of 30 percent or more of the members of a bargaining unit at a time when they are

12  covered by a collective bargaining agreement containing a union-security clause.  It is undisputed

13  that the petition giving rise to the election at issue herein was not supported by signatures of

14  employees who were covered by a collective bargaining agreement containing a union security

15  clause.  Hence, the Board's Decision and Order constitute an *ultra vires* action of the Board.

16  Defendants misconstrue the content of the U.S. Supreme Court's ruling in *Leedom v. Kyne*,

17  358 U.S. 184 (1958) ("*Leedom*"), and its application to this case.  As argued at length in Plaintiff's

18  Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, its Reply

19  Memorandum of Points and Authorities in Support of Temporary Restraining Order, and its Reply

20  Memorandum in Support of Preliminary Injunction, the Court in *Leedom* held that the District

21  Court possesses jurisdiction under 28 U.S.C. § 1337 to entertain an original suit in equity which

22  challenges an action by the NLRB undertaken in excess of the Board's jurisdiction because it

23  violated a clear statutory mandate.  *Leedom*, 358 U.S. at 190.

24

25  ────────────────

26  [2] Proposed Intervener makes a similar, unmeritorious claim in its Motion to Dismiss.  Proposed Intervener is correct that whether a de-authorization petition may be based on signatures of employees who are not covered by a collective bargaining agreement containing a union security clause is an important issue in this case.  Its relevance is that the Board, by finding such a petition valid, violated a clear statutory mandate, set forth at NLRA Section 9(e)(1), and thereby acted in excess of its statutory jurisdiction, which is what gives this Court jurisdiction under the *Leedom* analysis.

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

8

OPPOSITION TO MOTION(S) TO DISMISS

1    Thus, where, as here, the Board has acted in excess of its statutory jurisdiction, the *Leedom*

2    analysis explains that the court's general jurisdiction in equity extends to scrutiny of the agency's

3    *ultra vires* action. Such jurisdiction does not depend on a statutory jurisdictional grant because it is

4    not invoked by a petition for review of the agency's exercise of discretion vested in it by Congress.

5    To the contrary, the proceedings herein constitute a request by Plaintiff that the Court overturn an

6    action by the NLRB in excess of its statutory jurisdiction. Consequently, Defendants' dissertation

7    on confinement of the court's jurisdiction to situations where such jurisdiction is statutorily granted

8    (See Docket Document 22 at 6-7) is wholly inapposite to this case.

9    Contrary to Defendants' deceptive characterization at pages 16 to 17 of their Motion to

10   Dismiss (Docket 22 at 16-17), *Local Union No. 714, International Brotherhood of Teamsters v.*

11   *Madden*, 343 F.2d 497 (7th Cir. 1965) ("*Madden*"), corroborates the appropriateness of judicial

12   review of the Board's *ultra vires* action at issue herein. In *Madden* the Seventh Circuit, consistent

13   with the holding in *Leedom*, stated, "A prerequisite to review of the Board's order is the

14   determination by the District Court that there is a violation of a clear and mandatory provision of

15   the Act." (*Id*. at 499.) It is true that the Court in *Madden* found that on the facts particular to that

16   case, the Board's order of an election without first holding a formal hearing did not violate a clear

17   and mandatory provision of the Act. There is nothing about that fact-specific holding that

18   undermines the Seventh Circuit's general application of, and agreement with, the principal from

19   *Leedom* that the Court possesses jurisdiction to overturn *ultra vires* actions of the Board. The issue

20   here is not whether the Board should have held a formal hearing, as in *Madden*. The issue here is

21   that the Board ordered an election based on a petition that was not signed by employees who were

22   covered by a collective bargaining agreement containing a union security clause, which is a

23   statutory prerequisite to Board action set forth at Section 9(e)(1) of the NLRA, 29 U.S.C. §

24   159(e)(1). *Madden*, like the *Leedom* case it applies, establishes that the District Court

25   unequivocally possesses jurisdiction under such circumstances.

26   Defendants attempt to distract this Court from Plaintiff's substantive claim: that the Board

27   acted *ultra vires* and must be enjoined from implementing its extra-jurisdictional Order. Rather

28   than grapple with the settled principle under the *Leedom* analysis that this Court possesses

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

9

1  jurisdiction to review and overturn *ultra vires* actions of the Board, Defendants present an

2  unmeritorious argument that this is a representation case and that rules governing such cases apply

3  here.  As argued in the following section, this unequivocally is not a representation case and

4  Defendants' arguments against this court's exercise of jurisdiction to review the Board's *ultra vires*

5  actions are wholly without merit.

6  **B.     THIS IS NOT A REPRESENTATION CASE, SO THE AUTHORITIES**

7  **GOVERNING JUDICIAL REVIEW OF REPRESENTATION RULINGS ARE**
   **IMMATERIAL; PLAINTIFF HAS NO MEANS BY WHICH TO OBTAIN**

8  **JUDICIAL REVIEW, INDIRECT OR OTHERWISE, OTHER THAN BY THIS**
   **LAWSUIT.**

9

10     Defendants devote much of their brief to citing wholly inapposite case law when they

11  repeatedly mistakenly identify this case as a "representation" case.  Defendants never provide

12  authority for that erroneous characterization.  Instead, they attempt to distract the court by citing

13  and expounding upon rules of law that do not apply to the de-authorization proceeding at issue

14  herein.

15     Specifically, Defendants correctly recite the law governing representation cases at pages 7

16  to 9 of their Opposition to Preliminary Injunction.  (Docket Document 22 at 7-9.)  They correctly

17  point out, as did Plaintiff in its Memorandum of Points and Authorities In Support of Preliminary

18  Injunction, its Reply Memorandum of Points and Authorities in Support of Temporary Restraining

19  Order, and its Reply Memorandum in Support of Preliminary Injunction, that, in representation

20  cases, i.e., ones in which the determination of an appropriate bargaining unit and matters related to

21  the union's certification as exclusive bargaining representative are determined, there is no right to

22  direct judicial review of NLRB rulings.  Rather, in such cases, review may be obtained indirectly

23  through seeking judicial review of a related unfair labor practice charge, triggered by one party's

24  refusal to bargain because of its dispute over the representation issue.  This, as discussed in

25  Plaintiff's previous memoranda is a "technical refusal to bargain."

26     The problem with Defendants' analysis is that it erroneously suggests that the rulings

27  regarding representation cases apply to *this* case, apparently because both sorts of cases arise under

28  Section 9 of the NLRA, 29 U.S.C. § 159.  Defendants conflate *de-authorization proceedings*, under

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

10

OPPOSITION TO MOTION(S) TO DISMISS

1   which employees are permitted by NLRA § 9(e)(1) to petition the Board for an election to rescind

2   a union security clause negotiated in a collective bargaining agreement by those employees'

3   exclusive representative, with *representation proceedings*, under which the determination of an

4   appropriate unit and the designation of an exclusive representative are determined, pursuant to

5   NLRA § 9(a), (b), and (c).  NLRB rulings in representation cases can be reviewed indirectly for

6   abuse of discretion through the technical refusal to bargain.  No such procedure is available for

7   review, indirect or otherwise, of the NLRB's ruling on a de-authorization issue under NLRA

8   §9(e)(1).

9       Thus, Defendants misrepresent the applicable law when they cite cases such as *Boire v.*

10  *Greyhound Corp.*, 376 U.S. 473 (1964) ("*Boire*") and *Bays v. Miller*, 524 F.2d 631, 633 (9th Cir.

11  1975) ("*Bays*") as holding that review of a de-authorization ruling has been relegated by Congress

12  to use of the technical-refusal-to-bargain procedure.  (Document 22 at 7-9.)  Plaintiff brought cases

13  like *Boire* and *Bays* to the attention of this Court in its opening memorandum in order to illustrate

14  that, *unlike in representation proceedings*, there is no procedure by which to obtain judicial review

15  of the Board's action in a de-authorization proceeding.  Defendants simply ignore this distinction

16  and pretend that de-authorization proceedings are a category of representation proceedings, which

17  they indisputably are not.

18      Thus, Defendants assert a fact only tangentially relevant to this proceeding when they state

19  "Consistent with *Boire* [*v. Greyhound*, 376 U.S. 473 (1964)], the courts have refused to extend

20  their jurisdictional reach to review the Board's representation determinations alleged to have

21  resulted in an error of law, where the Board did not act in violation of a specific statutory

22  command." (Docket Document 22 at 11, lines 1-3; citations omitted.)  It is true that representation

23  rulings cannot be directly reviewed for errors of law.  But, that point is irrelevant to this proceeding

24  on two grounds: this is not a representation case and Plaintiff does not seek review of the Board's

25  order for an error of law or abuse of discretion.  In accordance with the rule set forth in *Leedom*,

26  Plaintiff asks this court to overturn the Board's issuance of an Order in excess of its jurisdiction

27  that violates a mandatory statutory command.

28  ///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

11

1    For the same reasons, Defendants' recitation of cases in which the courts do not exercise

2    jurisdiction to correct errors of law or abuses of statutorily conferred discretion at pages 9 to 11 of

3    Defendants' Opposition to Preliminary Injunction have no relevance to this case, other than to

4    underscore that this is not a petition for review in the ordinary sense, as the Court in *Leedom*

5    explained.  It is a request to have the court overturn an *ultra vires* act of the Board.

6    **C.    DEFENDANTS' REFILING OF THE SAME PREMATURELY GATHERED**
      **SIGNATURES UNDER THE COVER OF A RECYCLED PETITION DOES NOT**
7    **CURE THE JURISDICTIONAL DEFECT IN THE BOARD'S DECISION AND**
      **ORDER.**

8

9    Defendants disingenuously argue that Plaintiff's case lacks merit because the disputed

10   election purportedly is based upon a "new" petition that was filed in April 2007, well after the

11   agreement containing the union security clause went into effect.  (Document 22 at 5, lines 4-7; 12,

12   lines 5-7.)  Defendants neglect to acknowledge that this allegedly "new" petition is, in fact, the

13   same petition filed on January 11, 2006, recycled with a new date and, most importantly, that it is

14   based on *the same prematurely gathered signatures* as the original petition.

15   Defendants may be correct that the refiling of the petition after the agreement went into

16   effect could satisfy the requirement that the petition be filed only when such an agreement is in

17   effect. However, that maneuver does not cure the jurisdictional defect in the Board's ruling

18   because the fact remains that the signatures were gathered not only before an agreement was

19   executed, but before negotiations for it even had begun.[3]

20   The main issue in dispute in this case is whether the Board is prohibited by Section 9(e)(1)

21   of the NLRA, 29 U.S.C. § 159(e)(1), from ordering an election based on a petition signed by

22   employees in a bargaining unit that was not covered by an agreement containing a union security

23   clause when the signatures were gathered.  As discussed in Plaintiff's Memorandum of Points and

24

25   ────────────────
     [3] It bears re-emphasis that the tally of the contract ratification vote conducted by Local 790
26   between December 28 and December 31, 2005, established that 378 employees voted in favor of
     the agreement, *including the Union security clause at issue herein*, and 229 voted against it.
27   (Complaint ¶¶ 22-23 and Ex. 1 at p. 2.)  That vote occurred *after* Burke collected his signatures.
     Thus, Burke indisputably attempted to use the de-authorization procedure preemptively.  By the
28   time he filed his stale signatures, the same bargaining unit had voted by a majority to *authorize* the
     union security agreement.  Yet, Burke attempted to thwart that will of the majority with his
     petition.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

12

OPPOSITION TO MOTION(S) TO DISMISS

1   Authorities in Support of Motion for Preliminary Injunction, its Reply Memorandum of Points and

2   Authorities in Support of Temporary Restraining Order, and its Reply Memorandum in Support of

3   Preliminary Injunction, and in the following sections, the plain language of §9(e)(1), the

4   construction of its language by courts and the NLRB itself, and the legislative history of the

5   provision make clear that the Board may only order an election based on a petition signed by 30

6   percent of the members of a bargaining unit at such time as they are covered by an agreement

7   containing a union security clause.

8   **D.      DEFENDANTS IGNORE THE PLAIN LANGUAGE, STATUTORY HISTORY,
            AND ADJUDICATORY CONSTRUCTION OF NLRA § 9(e)(1).**

9

10      Defendants' arguments regarding the proper construction of NLRA § 9(e)(1) boil down to a

11  summary of the NLRB majority's analysis, which is what Plaintiff has argued was an exercise in

12  extra-jurisdictional overreaching by the Board that lacked any foundation in the text, adjudicatory

13  construction, and legislative history of § 9(e)(1).

14      The crux of Defendants' argument is that (1) the language of Section 9(e)(1) is

15  "inconclusive" as to when signatures in support of a de-authorization petition must be gathered;

16  and (2) the legislative history in some general sense evinced Congress' continued intent to preserve

17  the rights of employees to recind a union security provision to which they objected if 30 percent of

18  the employees covered by such a provision petitioned for an election regarding its removal.  Based

19  on those two points, the NLRB majority and the Defendants to this action reach the conclusion that

20  the Board possesses jurisdiction to order an election based on a de-authorization petition signed by

21  employees who were not covered by an agreement containing a union security clause.

22      The flaws in Defendants arguments, as argued in Plaintiff's Memorandum of Points and

23  Authorities in Support of Motion for Preliminary Injunction, its Reply Memorandum of Points and

24  Authorities in Support of Temporary Restraining Order, and its Reply Memorandum in Support of

25  Preliminary Injunction, are threefold.  First, the plain language of §9(e)(1) makes clear that the de-

26  authorization procedure is available only to employees who are covered by a collective bargaining

27  agreement containing a union security clause.  Section 9(e)(1) of the NLRA, 29 U.S.C. § 159(e)(1),

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

13

OPPOSITION TO MOTION(S) TO DISMISS

states,

> Upon the filing with the Board, by 30 per centum or more *of the employees in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3)*, of a petition alleging the desire that such authority be *rescinded*, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(Emphasis added.)

Writing in dissent from the NLRB majority's faulty analysis, Member Walsh observed that the majority "strains to find an ambiguity in the statutory language that simply is not there." (D.&O. at p. 7.) Nothing in the statutory language suggests that employees need only be covered by a union security clause when a de-authorization petition is filed, as opposed to when the signatures are gathered. As Member Walsh observed:

> The plain meaning of Section 9(e)(1) is that the showing of interest for a deauthorization petition must be gathered at a time when the employees are actually subject to a union-security provision. The statute explicitly says that a deauthorization petition must be supported by 30 percent or more of the employees "*in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to Section 8(a)(3)*."

(Complaint Ex. 2, p. 6, emphasis in original.)

Thus, "[t]he plain language of the Act dictates that the signatures supporting a deauthorization petition must be signatures of employees who are already subject to an effective union-security provision," Walsh correctly observed. (*Ibid*.) The statute provides that employees covered by a union security agreement may submit a petition in order to "rescind" "such authority", referring to the union security agreement. Contrary to the interpretation advanced by the Defendants herein, the provision does not state that employees can "preclude" a union security agreement, "prohibit", "preempt", or otherwise prospectively divest the Union of its authority to negotiate such an agreement. The statute states that if at least 30 percent of the employees who are *covered* by a union security agreement negotiated pursuant to NLRA § 8(a)(3) sign a petition, they can request an election to "*rescind*" the authority contained in the agreement. As noted by Member Walsh,

> The Board is not free to speculate as to Congressional intent where – as here – the text of the statute clearly addresses the question at hand. The plain

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

14

1    language of the Act dictates that the signatures supporting a deauthorization
     petition must be signatures of employees who are already subject to an
2    effective union-security provision.

3    (D.&O. at 7.)

4        The second flaw in Defendants' analysis is that it conflicts with the legislative history of §

5    9(e)(1). Walsh also reviewed the legislative history of § 9(e)(1) (discussed *infra*), and observed that

6    in 1951, Congress eliminated a requirement that Union security clauses, to be effective, must be

7    authorized by a majority vote of the bargaining unit.  Walsh observed,

8        In eliminating authorization elections and devising the current statutory
         scheme, Congress explicitly aimed to avoid the unnecessary and inefficient
9        expenses involved in the authorization process, while simultaneously
         protecting the right of employees to choose to free themselves of an
10       unwanted union-security clause.

11   (*Id.* at p. 7, citing H.R. Rep. No. 1082, 82d Cong., 1st Sess., at 2-3 (1951).)

12       Walsh reasoned that "[u]sing Board resources to conduct an election when the majority of

13   the signatures supporting the petition were collected before the parties even began negotiating a

14   contract exemplifies the kind of inefficiency that Congress sought to eliminate by doing away with

15   authorization elections."  (*Ibid.*)  At the same time, Walsh noted, "dismissing the petition leaves

16   intact the right of employees to promptly deauthorize the union-security clause if they desire to do

17   so."  (*Id.*)

18       Member Walsh's dissent is rooted in detail in the legislative history of current section

19   9(e)(1), while the Board Majority's and Defendants' argument for creation of a new procedure to

20   allow employees to prospectively preclude or preempt a union's ability to negotiate a union

21   security clause in the first place has no basis in the legislative history.  The only support

22   Defendants offer for imputing to Congress the creation of such a new procedure by way of the

23   amendments to the NLRA in 1951 is the fact that Congress evinced a continued generalized intent

24   to allow employees covered by a union security provision an opportunity to petition for its

25   recission.  That generalized observation of Congressional intent does not override the more specific

26   legislative history discussed in Plaintiff's Memorandum of Points and Authorities in Support of

27   Preliminary Injunction and summarized briefly as follows.

28   ///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

15
OPPOSITION TO MOTION(S) TO DISMISS

The original § 9(e)(1), enacted through the Taft Hartley amendments to the Wagner Act in 1947, required that, before a union security clause could go into effect, it must be ratified or authorized by a majority vote of affected bargaining unit members in a secret ballot election. (Section 9(e)(1), LMRA, 1947, Chapter 120, Public Law 101, *United States Code Congressional and Administrative Service*, 8th Congress, First Session, 1947.)  Once a union had been certified as an exclusive bargaining agent and had negotiated with the employer a collective bargaining agreement containing a union security clause, it remained necessary for parties who supported the union security clause to petition for an election regarding the clause. Only after a majority of the bargaining unit members approved giving the union the authority to "make" such a union security agreement could the provision go into effect.

The 1947 version of Section 9(e)(2) was worded nearly exactly as current Section 9(e)(1) (with the exception of its reference to former Section 8(a)(3)(ii), which is not at issue herein), thereby granting employees in a unit covered by a Union security clause which had previously been approved through an election the ability to petition for its recission.  (*Id*. at § 9(e)(2).)

Section 9(e) was amended again in 1951.  The most significant of the changes, as recounted by House Report No. 1082, was to "…dispense with the requirement of existing law that an election be held before a labor organization and an employer may make a union-shop agreement" because such authorization elections "have imposed a heavy administrative burden on the Board, have involved a large expenditure of funds, and have almost always resulted in a vote favoring the union shop."  (*United States Code Congressional and Administrative Service*, 82nd Congress, First Session, 1951, House Report No. 1082 at pp. 2379-2381 ("H.R. Rep. No. 1082"), pp. 2380-2381.) To implement this change, the Bill eliminated the requirement for an election to authorize a union shop agreement by deleting § 9(e)(1). The Bill then re-codified the text of § 9(e)(2) to its current location at § 9(e)(1), thereby leaving in place the procedure for employees in a bargaining unit covered by a union security agreement to petition for an election regarding whether to de-authorize the union security clause.

There is nothing in the legislative history to suggest that Congress intended to create a *new* procedure through which employees could be organized to prospectively hamstring their

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

16

OPPOSITION TO MOTION(S) TO DISMISS

1 representative from negotiating for a union security clause.  To the contrary, the retention of the

2 identical de-authorization language from old § 9(e)(2) and simultaneous elimination of the

3 authorization election requirement from old § 9(e)(1), particularly in light of the rationale for the

4 change – namely that authorization elections were in essence mere formalities, strongly indicates

5 that Congress intended the de-authorization procedure to apply, as the statute states on its face,

6 only to employees covered by an agreement containing a union security provision.

7      The third defect in Defendants' statutory construction argument, as discussed in the

8 following section, is that case law, including the Board's own earlier ruling in *Great Atlantic &*

9 *Pacific Tea Company*, 100 NLRB 1494 (1952) ("*Atlantic*") have, consistent with this legislative

10 history, clearly and rationally construed current Section 9(e)(1) as creating a procedure that only

11 becomes available when a union security clause is in effect.

12 **E.    DEFENDANTS IGNORE THE LANGUAGE AND SUBSTANCE OF THE NLRB'S
    PRIOR INCONSISTENT RULING IN *ATLANTIC*.**

13

14      Defendants simply ignore key language in the Board's earlier, inconsistent ruling in

15 *Atlantic*, *supra*, wherein the Board clearly recognized that the de-authorization procedure set forth

16 at Section 9(e)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(e)(1), becomes

17 available only after a collective bargaining agreement containing a union security clause is in

18 effect. (*Atlantic*, *supra*, 100 NLRB at 1497; accord, *NLRB v. Van Luitt & Co.*, 597 F.2d 681, 684

19 (9th Cir. 1979) (citing *Atlantic*).

20      Instead, Defendants resort to a very generalized interpretation of the Board's holding in

21 *Atlantic* and other cases and state that, taken together, the Board's rulings "show a consistent

22 construction of Section 9(e)(1) to protect employees' ability to choose whether to rescind

23 authorization for a union security agreement."  (Document 14 at p. 14, lines 6-8.)  As with

24 Defendants' discussion of the legislative history, this generalized policy of ensuring that

25 employees have the ability to rescind union security agreements to which they object does not, in

26 any way, explain the NLRB's imputation to Congress a silently expressed intent in 1951 to create a

27 new, prospective procedure that did not exist in the very text that Congress left in place when it

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

17

OPPOSITION TO MOTION(S) TO DISMISS

1    eliminated the authorization election procedure.

2    Defendants ignore key language from *Atlantic* (cited in Plaintiff's Memorandum of Points

3    and Authorities in Support of Motion for Preliminary Injunction, its Reply Memorandum of Points

4    and Authorities in Support of Temporary Restraining Order, and its Reply Memorandum in

5    Support of Preliminary Injunction) that unequivocally undercut Defendants' arguments.  For

6    example, the Board observed in *Atlantic* that:

7             That fundamental protection was accorded employees under the amended
         procedure by providing a method, *negative instead of affirmative*, and
8         *subsequent instead of precedent*, for determining their desires.  Thus,
         Congress by the 1951 amendments, accomplished its purpose of eliminating
9         the prior costly authorization elections but retaining the earlier safeguard.
         This was done by giving labor organizations a *presumptive authority to*
10        *enter into union-shop agreements and at the same time providing an escape*
         *for any unwilling majority covered by such an agreement*, through the
11        opportunity afforded by Section 9(e)(1) for an affirmative deauthorization
         vote.

12

13   (100 NLRB at 1497, emphasis added.)  The Board clearly understood the Congressional intent in

14   1952, a year after the amendment:  By removing the authorization procedure and leaving in place

15   the de-authorization procedure, Congress created a presumptive right for a union to negotiate a

16   union security provision and *retained* the procedure by which employees who objected to such an

17   agreement could sign a petition, if they numbered 30 percent of the bargaining unit covered by the

18   agreement or greater, to *rescind* the agreement.  Defendants offer no explanation for the Board's

19   departure from its own well-reasoned precedent.

20   Moreover, Defendants' attempt to contort *Atlantic* to justify the Board's action in this case

21   fails on its own logic.  The contention that Congress wanted to avoid *any* delay in implementing

22   employees' desire not to be subject to a union security clause, as the Defendants would have this

23   Court view *Atlantic* as holding, is contradicted by the fact, which Defendants do not dispute, that

24   *filing* of a de-authorization petition must wait until after a union security clause is in effect. Why

25   waste everyone's time by forcing employees to wait until the Union has negotiated such a clause

26   before they can file the petition if avoiding delay is the goal?  Yet Defendants impute to Congress a

27   sudden abhorrence to such delay when it is pointed out that the statute also requires that signatures

28   for the petition must be gathered after the agreement is in effect.  The language of the statute, cases

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

18

OPPOSITION TO MOTION(S) TO DISMISS

1  (including *Atlantic*) that have interpreted it, and its legislative history all make clear that the entire

2  de-authorization procedure, from signature gathering to filing, does not come into play unless and

3  until there is a union security clause to rescind.

### F.    THE PROPOSED INTERVENER HAS ADDED NOTHING OF SUBSTANCE TO DEFENDANTS' ARGUMENTS.

Plaintiff maintains that intervention should be denied for the reasons set forth in Plaintiff's

Opposition to Motion for Leave to Intervene.  The proposed Intervener's failure to add anything of

substance to Defendants' arguments in support of their Motion to Dismiss further demonstrates

that granting Intervention would be inappropriate.

Plaintiff further notes that proposed Intervener purports to base its Motion to Dismiss, at

least in part, on Fed.R.Civ.P. 12(c), Motion for Judgment On the Pleadings.  Per the terms of Rule

12(c), where, as here, material has been submitted in addition to the pleadings themselves, the

Motion shall be treated as one for Summary Judgment.  Accordingly, proposed Intervener would

be required to show, which it clearly cannot, that there is no genuine disputed issue of material fact

and that Defendants are entitled to Judgment as a matter of law.  Not even Defendants themselves

have moved for Summary Judgment, surely because doing so would be grossly premature.

Proposed Intervener therefore adds only make-work to this proceeding and contributes nothing to

the substantive adjudication of the merits at issue.

### IV.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Motion(s) to Dismiss should

be denied.

Dated: June 13, 2007              WEINBERG, ROGER & ROSENFELD
                                  A Professional Corporation
                                      David A. Rosenfeld
                                      Vincent A. Harrington, Jr.
                                      Eric M. Borgerson


                                  By:    /s/ Vincent Harrington
                                         VINCENT A. HARRINGTON
                                         Attorneys for Plaintiff
                                         Service Employees International Union, Local 790

116046/460101

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

OPPOSITION TO MOTION(S) TO DISMISS