W. JAMES YOUNG, Esq.
GLENN M. TAUBMAN, Esq. (*Pro Hac Vice*)
c/o National Right to Work Legal
      Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia  22160
(703) 321-8510
FACSIMILE — (703) 321-9319

SCOTT A. WILSON, Esq.
California Bar No. 073187
711 8th Avenue, Suite C
San Diego, California 92101
(619) 234-9011
FACSIMILE — (619) 234-5853

ATTORNEYS FOR PROSPECTIVE DEFENDANT-INTERVENOR

---

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790,<br><br>      Plaintiff,<br><br>v.<br><br>JOSEPH P. NORELLI, Individually, and in his capacity as REGIONAL DIRECTOR, NATIONAL LABOR RELATIONS BOARD, REGION 20; *et al.*,<br><br>      Defendants. | CASE NO. 3:07-cv-2766 PJH<br><br>**PROSPECTIVE DEFENDANT-INTERVENOR'S REPLY TO PLAINTIFF'S OPPOSITION TO HIS MOTION TO DISMISS COMPLAINT**<br><br>**HEARING DATE:**<br>**TIME:**<br>**COURTROOM OF JUDGE HAMILTON, COURTROOM 3, 17TH FLOOR** |

Plaintiff Service Employees International Union, Local 790 ("Local 790") has filed an Opposition (Clerk's Docket No. 37) to the Motions to Dismiss filed by Defendants ("the NLRB" or "Board") and Stephen J. Burke, Jr. ("Burke").  Clerk's Docket Nos. 22 & 26.  Burke hereby replies, and tracks the points raised by Local 790.

1
2
3

**A.    To The Extent That This Court Has Subject-Matter Jurisdiction Over Local 790's Complaint, It is Only To Determine Whether The NLRB Has Violated A "Clear Statutory Command" Under the Narrow *Leedom* Exception.  Once That Question Is Answered In The Negative, This Court Must Dismiss The Case.**

4    It is axiomatic that federal courts have jurisdiction to determine their own jurisdiction.  *U.S. v.*

5  *Ruiz*, 536 U.S. 622, 628 (2002), **citing** *United States v. Mine Workers*, 330 U.S. 258, 291 (1947) ("it is

6  familiar law that a federal court always has jurisdiction to determine its own jurisdiction").  Local 790

7  is correct — up to a point — in claiming that this Court has jurisdiction over this matter.

8    However, since Congress has chosen to provide the Federal courts with no direct jurisdiction

9  over NLRB election cases, this Court may only exercise its inherent equitable jurisdiction if Local 790

10  can demonstrate that the NLRB has violated a clear statutory command or prohibition by allowing

11  Burke's deauthorization election to proceed.  *Leedom v. Kyne*, 358 U.S. 184 (1958); *Local Union No.*

12  *714, International Brotherhood of Teamsters v. Madden*, 343 F.2d 497, 500 (7TH CIR. 1965).  The

13  number of cases in which Federal courts have found such egregious violations by the NLRB over the

14  past 70 years are minuscule, as demonstrated by the paucity of citations in Local 790's briefs.  Such

15  "egregious" circumstances are absent here, where the Board has done nothing more than construe a

16  silent statute to effectuate Congress' mandate that employees are entitled to petition for a

17  deauthorization election.

18    Indeed, the Federal courts have been loathe to exercise their limited, inherent power in cases

19  like this because it is axiomatic that they must defer to the Board's reasonable construction of its

20  statute, and not substitute their own judgment.  *American Hospital Ass'n v. NLRB*, 499 U.S. 606, 614

21  (1991); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council*, 485 U.S.

22  568, 574 (1988); **see also** *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

23  837, 842-43 (1984).

24    Thus, in a very similar case in which the Federal courts refused to interfere with an Board-

25  ordered deauthorization election, the Seventh Circuit stated:

26    Having found that the Board had violated no clear statutory command or prohibition, and had
       contravened no constitutional safeguards, the District Court, in our opinion, should have
27    dismissed the complaint for want of jurisdiction of the subject matter.

28  *Madden*, 343 F.2d at 500.  The same result must occur here, for the reasons set forth by the Board in

1    *Covenant Aviation Security, LLC*, 349 N.L.R.B. No. 67 (30 Mar. 2007), when it allowed Burke's

2    deauthorization election to proceed.

3

**B. Local 790's Attempt To Distinguish Between Representation Elections And Deauthorization Elections And Claim A Broad Right of "Judicial Review" Over The Latter Is Erroneous. Congress Did Not Create Direct Judicial Review In Either Situation Because It Wanted Board Election Decisions To Be Final.**

7        In its Opposition at 10-11, Local 790 argues about the differences between representation

8    elections and deauthorization elections under Section 9 of the National Labor Relations Act ("NLRA"

9    or "Act"), 29 U.S.C. §159, and appears to claim a right to judicial review in the latter. The argument is

10   erroneous, however, because in neither case has Congress created a federal court right to overturn

11   Board election rulings. Congress intended for Board election decisions to be final. *American*

12   *Federation of Labor v. NLRB*, 308 U.S. 401, 409 (1940); *NLRB v. IBEW*, 308 U.S. 413, 414-15

13   (1940). The fact that Federal courts provide a limited indirect review in representation cases *via*

14   "refusal to bargain" unfair labor practice charges does not translate into any expanded jurisdiction

15   allowing the Federal courts to review the Board's deauthorization election decisions. To the contrary,

16   Congress in Section 9 and the Supreme Court in *Leedom* limit this Court's power in all election cases,

17   and confine it to those extraordinary situations in which the Board can be shown to be engaged in the

18   "flouting of a clear statutory command." *Teamsters Local 690 v. NLRB*, 375 F.2d 966, 971 (9th Cir.

19   1967); *Madden*, 343 F.2d at 500 (Federal court has no jurisdiction to enjoin a duly conducted

20   deauthorization election). Here, the Board has flouted no "clear statutory mandate."

21

**C. The Second Petition Filed By Burke In Case No. 20–UD–447 Is Valid Even Though Supported By The Same Showing Of Interest That Was Used to Support His Petition In Case No. 20–UD–445.**

24        In its Complaint, Local 790 insinuates that the filing of the deauthorization petition itself was

25   premature under § 159(e), in addition to being "flawed" because the "30% showing of interest" was

26   signed prior to the effective date of the compulsory unionism clause. However, what Local 790

27   studiously omits to state in its Complaint is that Burke's original Petition, filed on 11 January 2006 in

28   Case No. 20-UD-445, was voluntarily dismissed, and the actual election on which the Board is

1   proceeding is Case No. 20-UD-447, which was filed on 6 April 2007, well after the compulsory

2   unionism clause went into effect.  On 9 May 2007, Regional Director directed an election in Case No.

3   20-UD-447, the timely-filed petition, and on 11 May 2007, the Regional Director accepted the

4   withdrawal of Case No. 20-UD-445, the arguably premature petition.[1]

5       Thus, there is no issue in this case about the Board proceeding to an election on a premature

6   petition, as that technical flaw in Burke's original petition has been rectified.  Local 790 is well aware

7   of these facts, but persists in insinuating to the Court that the NLRB is processing a premature petition.

8   As the Board made clear in *Covenant Aviation Security, LLC*, 349 NLRB No. 67 (30 March 2007),  the

9   sole legal issue in that case was whether the 30% "showing of interest" needed to support a

10  deauthorization election under 29 U.S.C. § 159(e) may predate the execution of the contract containing

11  the compulsory unionism provision.  The sole issue remaining for this Court is whether the Board's

12  decision in *Covenant Aviation Security* flouts "a clear statutory command" under *Leedom*.

13

14  **D.    Section 159(e) Is Silent On The Issue Raised Here, Concerning The Timing Of The**
        **"Showing Of Interest."  The Board Is Therefore Free To Interpret That Section In**
15      **Light Of The Congressional Purpose In Allowing Deauthorization Elections.**

16      Local 790 parses the legislative history of § 159(e), and the Act itself, to tease out arguments to

17  halt Burke's deauthorization election.  However, the union ignores several critical factors: (1) that the

18  statute is completely silent as to the timing of the "showing of interest"; (2) that almost all NLRB

19  "showings of interest" will necessarily predate the time when the actual election petition can be filed,

20  and (3) that the Board has long interpreted § 159(e) as expressing a congressional intention to allow

21  employees leeway in deauthorizing unpopular compulsory unionism clauses.

22      As to the first point, Local 790 claims that the Board "strained to find an ambiguity" in the

23

24      [1]  In Regional Director Norelli's 23 March 2006 letter dismissing Burke's deauthorization
    petition (Clerk's Docket No. 1, Exhibit 1 at 2-3 and n.7), it was pointed out that the deauthorization
25  petition filed on 11 January 2006 in Case No. 20-UD-445 was arguably premature by two days, but
    that this flaw could easily be remedied by filing a new petition.  In the NLRB's decision (*Covenant
26  Aviation Security*, 349 NLRB No. 67 at 1, n.1), the Board also recognized that the arguably premature
    filing of Burke's petition in 20-UD-445 could be remedied by the simple act of file a new petition two
27  days later.  This was done by Burke on 6 April 2007, and the Board is now proceeding to an election
    on that indisputably timely petition in Case Nos 20-UD-447.  **See** Clerk's Docket No. 17, Exs. 1- 4.
28

1  statute (Clerk's Docket No. 37 at 14).  However, the face of the statute is silent concerning the timing

2  of the "showing of interest."  This is undeniable.  Local 790 tries mightily but cannot dispute this.  No

3  amount of parsing of the legislative history changes this basic fact, that Congress did not see fit to

4  control the timing of the "showing of interest."

5  Second, it is axiomatic that the "showings of interest" needed to spark a Board election are

6  often collected well in advance of the "open dates" for that election to occur.  *Sheffield Corp.*, 108

7  NLRB 349, 350 (1954) (Board will process an election petition supported by a "showing of interest"

8  gathered prior to the time when the election could be held).  Indeed, the Board's actions in analogous

9  election cases support Burke's view that the collection of a deauthorization "showing of interest" prior

10  to the effective date of the compulsory unionism clause is permissible under the Act.

11  For example, in the context of union certification and decertification elections, the Board has

12  long held that employees' "showings of interest" can be dated significantly prior to the date the

13  petition can be filed, as long as that time is "reasonable." *Surpass Leather Company*, 21 NLRB 1258,

14  1273 (1940).  Under this "reasonableness" standard, employee signatures collected even one year prior

15  to the time they will be used are generally considered to be valid.  *Luckenbach Steamship Co.*, 12

16  NLRB 1330, 1343-1344 (1939); *Carey Mfg. Co.*, 69 NLRB 224, 224 n.4 (1946).  In this case, the

17  Board merely applied a similar "reasonableness" standard to a silent statute in order to validate

18  Burke's collection of the "30% showing of interest."  The Board's decision was eminently reasonable,

19  supported by precedent, and was not a "flouting of a statutory command" so as to allow the union to

20  invoke the narrow *Leedom* exception.

21  Third, the Board has long denied similar union objections to deauthorization elections, holding

22  that such hyper-technical challenges are neither within Congress' intent nor protective of the individual

23  employees for whom the statute was created.  **See,** *e.g.*, *Gilchrist Timber Co.*, 76 NLRB 1233 (1948)

24  (Board rejects union argument that a deauthorization election cannot be held within one year of a

25  certification election); *Monsanto Chemical Corp.*, 147 NLRB 49 (1964) (same); *Great Atlantic &*

26  *Pacific Tea Co.*, 100 NLRB 1494 (1952) (Board rejects union argument that a "contract bar" rule

27  should be applied to deauthorization elections); *Albertson's/Max Food Warehouse*, 329 NLRB 410

28  (1999) (Board rejects union argument that Colorado state law overrides employees' right to

1  deauthorize).

2      For these reasons, this Court must reject Local 790's claim that the Board acted wildly outside

3  of its statutory boundaries by allowing Burke's deauthorization election to proceed.

4

5  **E.    Local 790 Misinterprets And Mischaracterizes The Board's Holding In *Great***

6      ***Atlantic & Pacific Tea Co.***

7      Local 790 argues that the Board's decision in *Covenant Aviation Security, LLC*, 349 N.L.R.B.

8  No. 67 (30 Mar. 2007) is contrary to a prior decision in *Great Atlantic & Pacific Tea Co.*, 100 NLRB

9  1494 (1952) ("*A & P*"). This assertion is false. The sole issue presented in *Covenant* – the timing of

10  the "showing of interest" – was not presented in *A & P*. The sole issue in *A & P* was whether the

11  Board should apply a "contract bar" rule to deauthorization elections, so that any successful

12  deauthorization election could only apply prospectively after the contract has expired. The two cases

13  present no conflict.   To the contrary, they demonstrate that the Board has long protected employees'

14  right to deauthorize at a time and place of their choosing, subject only to Congress' restriction that

15  such deauthorization elections could only occur once per year. 29 U.S.C. § 159(e)(2). Other than that

16  single restriction, the Board has always protected employees' right to deauthorize in a broad manner to

17  enhance employee freedom of choice, rather than to thwart it.

18

19  **F.    Even Accepting Local 790's Complaint As True In All Respects, It States No**

20      **Cognizable Claim As A Matter Of Law.**

21      For purposes of these Motions to Dismiss, Burke accepts as true the allegations of Local 790's

22  Complaint. Thus, this Court can and should decide the Motions to Dismiss on that basis. The few

23  documents that have been added to the pleadings are NLRB administrative orders, matters of public

24  record, over which the Court can take judicial notice. *Transmission Agency of Northern California v.*

25  *Sierra Pacific Power Co.*, 295 F.3d 918, 924 n.3 (9TH CIR. 2002); **see also** *Lee v. City of Los Angeles*,

26  250 F.3d 668, 689 (9TH CIR. 2001) (district court can take judicial notice of "matters of public record"

27  without converting motion to dismiss into summary judgment). There is no need to convert these

28  motions into a summary judgment.

1

CONCLUSION

2        Wherefore, the Court should grant the Motions to Dismiss.

3    DATED: 20 June 2007

4

5                                        Respectfully submitted,

6                                        /s/ W. James Young

7                                        W. JAMES YOUNG, Esq.
                                         GLENN M. TAUBMAN, Esq. (*Pro Hac Vice*)
8                                        c/o National Right to Work Legal
                                              Defense Foundation, Inc.
9                                        8001 Braddock Road, Suite 600
                                         Springfield, Virginia  22160
10                                       (703) 321-8510
                                         FACSIMILE — (703) 321-9319
11
                                         SCOTT A. WILSON, Esq.
12                                       California Bar No. 073187
                                         711 8th Avenue, Suite C
13                                       San Diego, California 92101
                                         (619) 234-9011
14                                       FACSIMILE — (619) 234-5853

15                                       ATTORNEYS FOR PROSPECTIVE DEFENDANT-
                                         INTERVENOR
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I, W. James Young, counsel for Prospective Defendant-Intervenor, hereby certify that I electronically filed with the Clerk of Court the foregoing **Prospective Defendant-Intervenor's Reply to Plaintiff's Opposition to His Motion to Dismiss Complaint,** using the CM/ECF system which will send notification of such filing to Defendants' counsel, this 20th day of June, 2007.


_____/s/ W. James Young_____

W. JAMES YOUNG


E:\Reply.fin.wpd
Wednesday, 20 June 2007, 13:44:12 PM