UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES INTERNATIONAL
UNION, LOCAL 790,

    Plaintiff,

    v.

JOSEPH P. NORELLI, et al.

    Defendants.
_____/

No. C 07-2766 PJH

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; GRANTING MOTION TO INTERVENE AND MOTIONS TO DISMISS**

Plaintiff's motion for preliminary injunction, defendants' motion to dismiss, and prospective intervenor Stephen Burke's motion to intervene and motion to dismiss came on for hearing before this court on June 27, 2007. Plaintiff, Service Employees Int'l. Union, Local 790 ("plaintiff") appeared through its counsel, Vincent A. Harrington. Defendants, a Regional Director and various Members of the National Labor Relations Board ("NLRB")(collectively "defendants") appeared through their counsel, Dawn L. Goldstein and Kathleen Schneider. Prospective intervenor Stephen Burke appeared through his counsel, Glenn M. Taubman.

Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion for preliminary injunction, GRANTS the motions to dismiss, and GRANTS the motion to intervene, as follows, and for the reasons stated at the hearing.

## BACKGROUND

This case involves a dispute over a collective bargaining agreement. On November 18, 2005, plaintiff, who represents security employees at San Francisco International Airport, began negotiations with the employees' employer, Covenant Aviation Security, to

establish a collective bargaining agreement ("CBA") on behalf of employees. See Verified Complaint for Declaratory and Injunctive Relief ("Complaint"), ¶ 13. A tentative agreement was eventually reached, and employees subsequently ratified the agreement by a vote of 378 to 229 in December 2005. See Complaint, ¶ 15. The CBA was thereafter signed by plaintiff on January 12, 2006, and by the employer on January 13, 2006. Id. at ¶ 16.

Critically, the CBA contained a "union-security" provision. A union-security provision is a clause in a CBA that requires employees to obtain membership in the union as a condition of their employment. See 29 U.S.C. § 158(a)(3). On January 11, 2006, after the ratification vote but before final execution of the CBA on January 12-13, a member of plaintiff's bargaining unit, Stephen Burke, filed a petition with the NLRB requesting that it conduct a "de-authorization" vote among employees in order to rescind the union-security provision of the CBA. See Complaint, ¶ 17. The petition was filed pursuant to section 9(e)(1) of the National Labor Relations Act ("NLRA"), a provision that allows individuals to seek a de-authorization election in order to rescind a union-security clause in a qualifying CBA. See 29 U.S.C. § 159(e)(1).

On March 23, 2006, defendant Norelli, Regional Director for the NLRB, dismissed the de-authorization petition filed by Burke, finding in part that the petition had been filed prematurely and was furthermore supported by signatures that had been gathered prematurely, since the signatures in large part predated disclosure of the CBA's terms, the ratification vote, and the January 13, 2006 execution of the CBA. See Complaint, ¶¶ 19-24.

Burke requested review of Norelli's decision on April 6, 2006. On March 30, 2007, the NLRB issued a decision reversing Norelli's dismissal of the petition, reinstating the de-authorization petition, and remanding the matter for further consideration. The NLRB's decision was limited to the issue whether the showing of interest supporting a de-authorization petition may predate execution of a qualifying CBA, and ultimately concluded that "requiring the signatures underlying the showing of interest to postdate the effective union-security provision here would unjustly impede the right of employees to de-authorize

2

a union shop" See Complaint, Ex. B at 5.

Pursuant to the NLRB's decision, Norelli reinstated Burke's petition. The petition was refiled by Burke in April 2007, however, in order to cure any deficiency related to the fact that Burke's January 2006 petition was filed prior to the effective date of the CBA. The April 2007 petition continued to rely on the same signatures as the January 2006 petition, however, which had been filed prior to the effective date of the CBA.

In May 2007, acting on the refiled petition, Norelli issued written notice that the de-authorization election would commence on June 4, 2007. See Complaint, ¶ 28. On May 25, 2007, plaintiff filed the instant complaint, alleging two causes of action against defendants: (1) for injunctive relief; and (2) for declaratory relief. By way of the former, plaintiff seeks to enjoin defendants from conducting a de-authorization election pursuant to the NLRB's decision to reinstate Burke's de-authorization petition. As grounds for this claim, plaintiff alleges that the NLRB's decision is contrary to the plain language of section 9(e)(1) of the NLRA, and in excess of the authority granted to the NLRB by Congress. By way of the latter, plaintiff seeks a declaration that section 9(e)(1) of the NLRA prohibits defendants from conducting a de-authorization election, based on a de-authorization petition supported by a showing of interest gathered prior to the effective date of a qualifying CBA.[1]

Before the court is plaintiff's motion for preliminary injunction, defendants' motion to dismiss, and prospective intervenor Burke's motion to intervene, and motion to dismiss.[2]

---

[1] Plaintiff's complaint actually challenges the NLRB's decision on the additional grounds that the Board allowed the petition to go forward even though it was also *filed* before the effective date of the CBA in question. However, plaintiff conceded in its reply, and at the hearing on this matter, that the amended petition filed by Burke in April 2007 cures the deficiency with respect to the filing date of the petition. See Reply Br. at 6:11-15. Accordingly, the only issue actually before the court is whether the gathering of signatures in support of the petition must take place after final execution of a qualifying CBA.

[2] Plaintiff has also concurrently filed a request for judicial notice of several documents relating to the legislative history of section 9(e)(1). The court hereby GRANTS plaintiff's request for judicial notice.

3

**DISCUSSION**

A.  Legal Standards

    1.  Motion for Preliminary Injunction

To prevail on a motion for preliminary injunction, plaintiff must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Alternatively, injunctive relief can be granted if the plaintiff "demonstrate[s] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in [its] favor." Rodde v. Bonta, 357 F.3d 988, 994 (9th Cir. 2004) (citation omitted; "[t]hese two alternatives represent extremes of a single continuum, rather than two separate tests"). As a result, "the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success" must be established by the party. Id. (citation omitted).

    2.  Motion to Dismiss

A court should dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. See, e.g., Broam v. Brogan, 320 F.3d 1023, 1033 (9th Cir. 2003) (citations omitted). In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000) (citations omitted).

    3.  Motion to Intervene

To intervene as a matter of right, the proposed intervenor must demonstrate that its motion is timely, that it has a "significantly protectable interest" in the subject matter of the litigation, that disposition of the underlying action may as a practical matter impair or impede its interest in the litigation, and that its interest is inadequately represented by the

4

parties to the lawsuit.  Fed. R. Civ. P. 24(a)(2); see also, e.g., Wetlands Action Network v. United States Army Corps of Eng'rs, 222 F.3d 1105, 1113-14 (9th Cir. 2000) (citation omitted).  The test should be "interpreted broadly in favor of intervention" if possible. Cabazon Band of Mission Indians v. Wilson, 124 F.3d 1050, 1061 (9th Cir. 1997).

Permissive intervention, by contrast, requires only that the proposed intervenor "have a question of law or fact in common" with the underlying action, and that the request be timely made.  Fed. R. Civ. P. 24(b); see also, e.g., Southern California Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002) (also requiring an independent basis for jurisdiction).  No showing of direct personal interest is required.  Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1109 (9th Cir. 2002).

B.      Motion for Preliminary Injunction

The principal and dispositive issue raised by the parties is whether the court has subject matter jurisdiction over plaintiff's complaint.  Specifically, the issue is whether the court may entertain plaintiff's challenge to the NLRB's decision allowing the de-authorization election to proceed pursuant to a petition supported by employee signatures gathered *prior* to the date the union-security provision took effect.

Preliminarily, the parties engage in a legal dispute over the proper lens through which to view the instant case – e.g., whether it is a representation case or not.  However, this issue is not truly relevant to the court's ultimate decision here.  For both parties agree that, regardless whether the instant case is viewed as a representation case or not, this case is subject to the general rule of non-reviewability of NLRB decisions.  As such, the parties also agree that the only means through which the court can assert subject matter jurisdiction in this case is through the exception to non-reviewability announced by the Supreme Court in Leedom v. Kyne, and adopted by the Ninth Circuit.  See 358 U.S. 184 (1958); see also, e.g., Teamsters, Chauffeurs, Helpers and Delivery Drivers, Local 690, v. NLRB, 375 F.2d 966 (9th Cir. 1967).  Accordingly, the only real question before the court is simply whether Leedom is satisfied.

In <u>Leedom v. Kyne</u>, the Supreme Court considered a challenge to an NLRB decision that allowed certification of both professional and nonprofessional employees as members of a single bargaining unit. <u>See</u> 358 U.S. 184. The NLRB's decision to certify both professional and nonprofessional employees was made without first taking a vote among the professional employees to determine whether joinder of nonprofessional employees was agreeable, despite the fact that section 9(b)(1) of the NLRA expressly prohibited the Board from certifying both classes of employees without a vote. <u>See id</u>. at 185. In considering whether the district court had jurisdiction over the challenge, the court noted that final Board orders in certification proceedings under section 9 of the NLRA are not final orders ordinarily subject to judicial review (unless brought up in the context of unfair labor practice proceedings). <u>Id</u>. at 187. Notwithstanding the general rule of non-reviewability, however, the court held jurisdiction was proper. For in the court's view, the suit was "not one to 'review', in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather, [the suit was] one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." <u>See id</u>. at 188. The court then went on to note that section 9(b)(1) of the Act was "clear and mandatory" in prohibiting the Board from certifying professional and nonprofessional employees as members of the same unit, without first holding a vote. The court affirmed the district court's exercise of jurisdiction over the case.

<u>Leedom</u> has since been adopted by the various federal courts, including the Ninth Circuit. Generally speaking, the <u>Leedom</u> exception is applied narrowly, and requires an affirmative showing that "there is a violation of a clear and mandatory provision of the [NLRA]." <u>See Teamsters, Chauffeurs, Helpers and Delivery Drivers, Local 690</u>, 375 F.2d at 972; <u>see also Machinery, Scrap Iron, Metal & Steel Chauffeurs, etc. v. Madden</u>, 343 F.2d 497 (7th Cir. 1965).

In order, therefore, for the court to have jurisdiction over plaintiff's complaint here, there must be a showing that the NLRB violated a "clear and mandatory" provision of the

NLRA in allowing the instant de-authorization election to proceed, based upon a petition supported by signatures gathered prior to the effective date of the existing CBA containing the union-security clause at issue.

This brings the court to the heart of the parties' debate. Plaintiff contends that section 9(e)(1) – the NLRA's provision governing the filing of a de-authorization petition and the conduct of de-authorization elections – sets forth a "clear and mandatory" requirement that petitions be supported by the signatures of employees who are covered by an existing CBA containing a union-security clause. In other words, plaintiff asserts that at the time signatures are gathered, the union-security clause that is being contested must already be in existence and covering all employees. The NLRB defendants, by contrast, contend that the statute is ambiguous as to the actual time in which signatures must be gathered, and they remind the court that in the event of ambiguity, there can be no "clear and mandatory" violation, and no subject matter jurisdiction.

Defendants present the better argument. Section 9(e)(1) of the NLRA provides: "Upon the *filing* with the Board, by 30 per centum or more *of the employees in a bargaining unit covered by an agreement* between their employer and a labor organization made pursuant to section 158(a)(3) of this title, of a petition alleging they desire that such authority be rescinded, the Board shall take a secret ballot of the employees in such unit and certify the results thereof...". See 29 U.S.C. § 159(e)(1)(emphasis added). There is nothing in this language that even addresses the time in which petition support must be gathered. While the language does state, as plaintiff points out, that the employees must be "covered" by an agreement, this merely sets forth the requirement that a CBA containing a union-security provision must be in existence at the time that a petition under 9(e)(1) is *filed*, in view of the provision's explicit reference to the filing of a petition. It does not address the question when supporting signatures must be *gathered*.

Nor does the legislative history cited by plaintiff provide a clear answer with respect to this question of timing. Despite plaintiff's reliance on the legislative history to

7

demonstrate the differences between prior and subsequent versions of section 9(e), there is nothing plaintiff points to that specifically and clearly indicates that Congress intended for the signatures supporting a de-authorization petition to be gathered at a point in time that postdates execution of a qualifying CBA and union-security provision.

Given, therefore, that the language of section 9(e)(1) does not facially address the question of timing regarding the signatures necessary to support a petition filed pursuant to that provision, and that legislative history also fails to provide a clear answer to the question, the court concludes that the statute fails to set forth a "clear and mandatory" provision that the Board has violated in allowing the instant petition to go forward.

Leedom itself underscores the appropriateness of this conclusion. There, the Board refused to hold a vote although the NLRA statute in question expressly required it to do so. In other words, the Board blatantly violated an affirmative duty that was clear from the face of the provision in question. Accordingly, under Leedom, the type of violation that justifies the court's jurisdiction is one that ignores an express statutory duty or prohibition. Here, the lack of an express requirement regarding the timing of the support necessary for a de-authorization petition therefore supports a decision to decline subject matter jurisdiction.

Moreover, in view of the above, the NLRB's decision appears reasonable. The NLRB's decision stated that, although it is "clear from the statutory language that, *when filed*, a de-authorization petition must be supported by at least 30 percent of employees 'covered by' a contract containing a union-security provision, section 9(e)(1) is devoid of language as to when the showing of interest must be gathered." See Complaint, Ex. 2 at 2. To that end, the NLRB looked to the legislative history in determining that Congress, in retaining employees' ability to de-authorize union-security provisions (after having repealed an earlier section of the Act that required employees to affirmatively authorize union-security clauses), would also mean to ensure employees' ability to de-authorize union-security clauses by allowing signatures to be gathered prior to the effective date of a qualifying agreement. See id. at 3.

8

In sum, given that the plain language of the statute falls short of the level of clarity required to qualify as a "clear and mandatory" statement of right regarding the timing of employee signatures, plaintiff cannot satisfy the Leedom exception, and subject matter jurisdiction is lacking over plaintiff's complaint.

Plaintiff tries to avoid this conclusion by relying on two cases in particular – the 7th Circuit's decision in Madden and the NLRB's prior decision in Great Atlantic & Pacific Tea Company. See 343 F.2d 497; 100 N.L.R.B. 1494 (1952). However, neither of these cases aid plaintiff's cause. Madden, which was the only authority relied on by both parties that addresses the de-authorization context, does not hold that signatures in support of a de-authorization petition must be gathered prior to the effective date of a CBA containing a union-security provision. Madden stated only that the court was in agreement that section 9(e)(1) "contemplates that the parties are subject to a union-security agreement at the time the de-authorization petition is *filed*." See 343 F.2d at 500 (emphasis added). As for Great Atlantic, that case is also inapposite. The NLRB considered there whether a de-authorization election, once held, can only be applied prospectively, after a current CBA has expired. The NLRB rejected that contention, and in doing so, never considered whether the signatures supporting a de-authorization petition had to be gathered while the CBA at issue was in effect. See 100 N.L.R.B. at 1495-96.

In short, for all the above reasons, the court finds that the NLRB, in issuing its decision, did not violate a clear and mandatory provision as set forth in section 9(e)(1) of the NLRA. To that end, no subject matter jurisdiction may be asserted over plaintiff's complaint.

As it is without subject matter jurisdiction to hear the complaint, the court accordingly DENIES plaintiff's motion for preliminary injunction.

C.      Motion to Intervene

Stephen Burke, the petitioner in this case, has filed a motion to intervene. Mr. Burke argues that intervention is warranted both as a matter of right, and under principles of

9

permissive intervention.

For the reasons stated at the hearing on this matter, the court hereby GRANTS Mr. Burke's motion to intervene, since the court finds that principles of permissive intervention have been satisfied. See, e.g., Fed. R. Civ. P. 24(b); Southern California Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002).

D.   Motions to Dismiss

Both the NLRB defendants and Mr. Burke have filed motions to dismiss, both of which are rooted in the same argument: that plaintiff's complaint should be dismissed because the court lacks subject matter jurisdiction over plaintiff's claims.

This issue has been discussed and resolved in connection with plaintiff's motion for preliminary injunction. Accordingly, for the same reasons as expressed therein, see above discussion, the court hereby GRANTS both parties' motions.

E.   Conclusion

For the foregoing reasons, the court hereby DENIES plaintiff's motion for preliminary injunction, GRANTS the motion to intervene, and further GRANTS both defendants' and the intervenor's motions to dismiss.

The complaint is therefore DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: June 29, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge